# United States Bankruptcy Court
## Southern District of New York

**Voluntary Petition**

| Name of Debtor (if individual, enter Last, First, Middle):<br>**WEST END FINANCIAL ADVISORS, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN(if more than one, state all): ▮1922 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN(if more than one, state all): |
| Street Address of Debtor (No. & Street, City, and State):<br>**410 PARK AVENUE**<br>**15TH FLOOR**<br>**NEW YORK, NY**<br>ZIP CODE **10022** | Street Address of Joint Debtor (No. & Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**NEW YORK** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

### Type of Debtor
(Form of Organization)
(Check one box.)

- ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*
- ☑ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☑ Other

### Tax-Exempt Entity
(Check box, if applicable)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code.)

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)

- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Nature of Debts
(Check one box.)

- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☑ Debts are primarily business debts.

### Filing Fee (Check one box.)

- ☑ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b) See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors

**Check one box:**
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

**Check if:**
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*

**Check all applicable boxes**
- ☐ A plan is being filed with this petition
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

- ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

**THIS SPACE IS FOR COURT USE ONLY**

**Estimated Number of Creditors**

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Assets**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Liabilities**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | **Name of Debtor(s):**<br>**WEST END FINANCIAL ADVISORS, LLC** |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: **NONE** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**NONE** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>❏  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual<br>whose debts are primarily consumer debts)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X  **Not Applicable** _____<br>     Signature of Attorney for Debtor(s)     Date |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

❏  Yes, and Exhibit C is attached and made a part of this petition.

☑  No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ❏  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ❏  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

    ☑  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

    ❏  There is a bankruptcy case concerning debtor's affiliate. general partner, or partnership pending in this District.

    ❏  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District. or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

    ❏  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following).

                _____
                 (Name of landlord that obtained judgment)

                 _____
                 (Address of landlord)

    ❏  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

    ❏  Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

    ❏  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**WEST END FINANCIAL ADVISORS, LLC** |
|---|---|

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  **Not Applicable**
_____
Signature of Debtor

X  **Not Applicable**
_____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐   I request relief in accordance with chapter 15 of Title 11, United States Code. Certified Copies of the documents required by § 1515 of title 11 are attached.

☐   Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the Chapter of title 11 specified in the petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X  **Not Applicable**
_____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

---

| Signature of Attorney | Signature of Non-Attorney Petition Preparer |
|---|---|

X  _____
Signature of Attorney for Debtor(s)

**A. MITCHELL GREENE  Bar No.**
_____
Printed Name of Attorney for Debtor(s) / Bar No.

**ROBINSON BROG LEINWAND GREENE ET AL.**
_____
Firm Name

**875 THIRD AVENUE 9TH FLOOR**
_____
Address

**NEW YORK, NY  10022**
_____

**212-603-6300**
_____
Telephone Number

3/15/11
_____
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

**Not Applicable**
_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X  **Not Applicable**
_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

---

| Signature of Debtor (Corporation/Partnership) | |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  _____
Signature of Authorized Individual

**RAYMOND J. HESLIN**
_____
Printed Name of Authorized Individual

**MANAGER**
_____
Title of Authorized Individual

3/15/11
_____
Date

The following list identifies all of the affiliated entities, including the Debtor filing this petition (collectively, the "Debtors"), that have filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, substantially contemporaneously with the filing of this petition. The Debtors have filed a motion requesting that their chapter 11 cases be jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

| |
|---|
| Amagansett Realty SPV 1 LLC |
| Benedek Development Group, LLC |
| L/C Family Limited Partnership |
| Sentinel Investment Management Corp. |
| SIMCO SPV 1 LP |
| West End Absolute Return Fund I, LP |
| West End Capital Management LLC |
| West End Financial Advisors, LLC |
| West End Fixed Income Partners LP |
| West End Income Strategies Fund LP |
| West End Mortgage Finance Fund I LP |
| West End Private Client Fund L.P. |
| West End Real Estate Fund 1 LP |
| West End Special Opportunity Fund II, LP |
| West End Special Opportunity Fund, LP |
| West End/Mercury Short-Term Mortgage Fund, LP |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

In re:                                                      **Chapter 11**

**WEST END FINANCIAL ADVISORS, LLC,**

      Debtor.                                     **Case No.**
--------------------------------------------------------x

## CERTIFICATION OF RESOLUTION

I, the undersigned, Manager of **West End Financial Advisors, LLC,** do hereby

certify that at a meeting of the above captioned Limited Liability Company ("Company")

duly called and held on March 15, 2011, the following resolutions were adopted and

recorded in the Minute Book of the Company, and they have not been modified or rescinded,

and are still in full force and effect:

> **"RESOLVED,** that in the judgment of the Company it is
> desirable and in the best interest of the Company, its creditors,
> members and other interested parties, that a petition be filed by
> the Company for relief under Chapter 11 of title 11 of the United
> States Code (the "Bankruptcy Code"); and it is further

> **"RESOLVED,** that the form of petition under Chapter
> 11 presented to this meeting is approved and adopted in all
> respects, and that **Raymond J. Heslin,** Manager of West End
> Financial Advisors, LLC, is authorized to execute and verify a
> petition substantially in such form and to cause the same to be
> filed with the United States Bankruptcy Court for the Southern
> District of New York at such time as he shall determine; and it is
> further

> **"RESOLVED,** that **Raymond J. Heslin,** Manager of
> West End Financial Advisors, LLC, is authorized to execute and
> file all petitions, reorganization schedules, lists and other papers
> and to take any and all other actions which he may deem
> necessary or proper in connection with such Chapter 11 case,
> and, in that connection, that the firm of Robinson Brog

Leinwand Greene Genovese & Gluck P.C. be retained and employed as legal counsel for the Company under a general retainer, in addition to such special counsel as may hereafter become necessary or proper with a view to the successful conclusion of such Chapter 11 case."

**IN WITNESS WHEREOF,** I have hereunto set my hand and seal of the Company this March 15, **2011.**

_Raymond J. Heslin_, Manager
Raymond J. Heslin, Manager

409248

A. Mitchell Greene. Esq.
ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022-0123
(212) 603-6300

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------

In re:
**WEST END FINANCIAL**      :
**ADVISORS, LLC** *et al.,*
**Debtors.**

-----------------------------------------------------------x

**Chapter 11**
**Case No.**
**(Jointly Administered)**


## CORPORATE OWNERSHIP STATEMENT PURSUANT TO
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 1007(a)(1)
## AND LOCAL RULE OF BANKRUPTCY PROCEDURE 1007-3

Pursuant to Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-3 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), West End Financial Advisors, LLC. ("WEFA") and its direct and indirect subsidiaries in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, "West End"), respectfully represent as follows:

1. A chart providing a general overview of WEFA's corporate structure is attached as Exhibit A to the Declaration of Raymond J. Heslin Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and in Support of First Day Motions filed contemporaneously herewith.

2. West End Financial Advisors, LLC owns an interest in Geneva Mortgage Company;

3. West End Real Estate Fund I LP owns an interest in Scioto LLC; Easton Ridge Apartments LLC; Ivywood 67 LLC; Burgundy 102 LLC; and 90 LLC.

4. West End Special Opportunity Fund II, LP owns 14.9% of the publicly traded common stock in Fusion Telecommunications International Inc.

5. West End Special Opportunity Fund, LP owns an interest in Southwood Court Properties and Kensington Financial Services; and 183,333 shares in Rovian.

6. West End Mortgage Finance Fund I, LP owns an interest in Century Financial.

**West End Financial Advisors, LLC**
(for itself and on behalf of its affiliated
debtors and debtors in possession)

By: /s/ Raymond J. Heslin
Name: Raymond J. Heslin
Title: Managing Member

A. Mitchell Greene. Esq.
ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022-0123
(212) 603-6300

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                          Chapter 11

WEST END FINANCIAL
ADVISORS, LLC,

Debtor.                                                         Case No.
-------------------------------------------------------x

-------------------------------------------------------x
                                                                Chapter 11
In re:

SENTINEL INVESTMENT
MANAGEMENT CORPORATION,

Debtor.                                                         Case No.
-------------------------------------------------------x

-------------------------------------------------------x
                                                                Chapter 11
In re:

WEST END CAPITAL
MANAGEMENT, LLC,

Debtor.                                                         Case No.
-------------------------------------------------------x

-------------------------------------------------------x
                                                                Chapter 11
In re:

BENEDEK DEVELOPMENT
GROUP, LLC,

Debtor.

-------------------------------------------------x

Case No.

-------------------------------------------------x

Chapter 11

In re:

**WEST END MERCURY SHORT-TERM
MORTGAGE FUND, LP,**

Debtor.

Case No.

-------------------------------------------------x

-------------------------------------------------x

Chapter 11

In re:

**SIMCO SPV 1, LP**

Debtor.

Case No.

-------------------------------------------------x

-------------------------------------------------x

Chapter 11

In re:

**WEST END FIXED INCOME
PARTNERS LP,**

Debtor.

Case No.

-------------------------------------------------x

-------------------------------------------------x

Chapter 11

In re:

**WEST END INCOME STRATEGIES
FUND LP,**

Debtor.

Case No.

-------------------------------------------------x

-------------------------------------------------x

Chapter 11

In re:

**WEST END ABSOLUTE RETURN
FUND I, LP,**

Debtor.

Case No.

-------------------------------------------------x

-----------------------------------------------------x

In re:                                              Chapter 11

WEST END MORTGAGE
FINANCE FUND I LP,

Debtor.                                             Case No.
-----------------------------------------------------x

-----------------------------------------------------x

In re:                                              Chapter 11

WEST END PRIVATE CLIENT
FUND LP,

Debtor.                                             Case No.
-----------------------------------------------------x

-----------------------------------------------------x

In re:                                              Chapter 11

WEST END REAL ESTATE
FUND I LP,

Debtor.                                             Case No.
-----------------------------------------------------x

-----------------------------------------------------x

In re:                                              Chapter 11

WEST END SPECIAL
OPPORTUNITY FUND, LP,

Debtor.                                             Case No.
-----------------------------------------------------x

-----------------------------------------------------x

In re:                                              Chapter 11

WEST END SPECIAL
OPPORTUNITY FUND II, LP,

Debtor.                                             Case No.
-----------------------------------------------------x

```
------------------------------------------x
In re:                                              Chapter 11

L/C FAMILY LIMITED PARTNERSHIP,

Debtor.                                             Case No.
------------------------------------------x

------------------------------------------x
In re:                                              Chapter 11

AMAGANSETT REALTY SPV I, LLC,

Debtor.                                             Case No.
------------------------------------------x
```

## DECLARATION OF RAYMOND J. HESLIN PURSUANT TO RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES FOR THE SOUTHERN DISTRICT OF NEW YORK AND IN SUPPORT OF FIRST-DAY MOTIONS

Raymond J. Heslin, declares, pursuant to section 1746 of title 28 of the United States Code, that:

### PERSONAL BACKGROUND

1. I am the Managing Member and General Partner of West End Financial Advisors, LLC ("WEFA"), and hold the position of Managing Member, General Partner, Manager, or Director in each of the above-captioned, debtors and debtors-in-possession, (collectively, the "Funds" or "Debtors"). Through my positions, I am familiar with the Funds' day-to-day operations, business, and financial affairs. I submit this declaration in accordance with Local Bankruptcy Rule 1007-2 and in support of the Debtors' first day pleadings as defined herein.

2. Prior to joining the Funds in the first quarter of 2009, I was a senior equity partner at SNR Denton, an international law firm with 1,800 lawyers and offices in the United States and throughout the world. Previously, I was the managing partner of Gold, Farrell & Marks,

LLP, a litigation boutique that had previously merged into SNR Denton. I have held positions as Chair of the General Litigation Section of the New York State Bar Association, Chair of the Cooperative and Condominium Committee of the New York County Lawyers Association and as a Member of the New York State Supreme Court, Appellate Division, First Department's Committee on Fee Disputes.

## PRELIMINARY STATEMENT

3. On March 15, 2011, the Debtors each filed voluntary Chapter 11 petitions pursuant to 11 USC Section 101 et seq. (the "Bankruptcy Code").

4. Concurrently with the filing of these chapter 11 cases the Debtors filed certain motions and other pleadings (the "First Day Pleadings") which will require a hearing on an emergency basis.

a. Application for an Extension of Time to File Schedules and Statement of Financial Affairs: The Debtors intend to file an application (the "Schedules Application") by which the Debtors seek an extension of sixty (60) days from the Petition Date to file their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"). As set forth in its Schedules Application, the Debtors believe they will be unable to comply with the statutory deadline due to the exigencies inherent in there chapter 11 filings. Accordingly, as more fully set forth in the Schedules Application, the Debtor respectfully request a sixty-day extension of their deadline to file their Schedules.

b. Motion to Consolidate the Cases: The Debtors intend to file an application (the "Consolidation Motion") substantially simultaneously herewith which seeks authorization for the procedural consolidation of these cases into one case for administration purposes.

c. Motion Authorizing the Filing of a Consolidated List of Top 50 Unsecured Creditors: The Debtors intend to file an application herewith which seeks authorization for the filing of a consolidated list of the top 50 unsecured creditors.

5. I am authorized by the Funds to submit this Declaration on the Funds' behalf in support of the First Day Pleadings and pursuant to Local Rule 1007-2. The First Day Pleadings are intended to enable the Funds to operate effectively and efficiently during these chapter 11 cases (the "Bankruptcy Cases"). Among other things, the First Day Pleadings seek relief aimed at maintaining the confidence of the various stakeholders, as well as the Funds' Limited Partners ("LPs"). Gaining and retaining the support of these key constituents is absolutely critical to the Funds' efforts to successfully implement a plan that will maximize the estates returns to its creditors and LPs. I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to maximize and preserve the value of the Funds chapter 11 estates.

6. To familiarize the Court with the Funds and the relief they seek in the first days of these cases, I have organized this declaration as follows: Section I of this Declaration provides an overview of the Funds' businesses and organizational structure, and the circumstances giving rise to the commencement of these Bankruptcy Cases. Section II affirms and incorporates the facts that support the relief requested in the First Day Pleadings. Section III lists the schedules of information required by Local Bankruptcy Rule 1007-2

## I

## THE FUNDS' BUSINESS AND WHAT LED TO FILING

7. William Landberg ("Landberg") created WEFA in 2000 as an investment and financial management company. Subsequently he purchased Sentinel Investment

Management Corp ("Sentinel") a boutique investment advisory company. Sentinel and WEFA targeted individual private clients for investments in fixed income funds and alternative investment products. The Funds were generally structured as limited partnerships.

8. WEFA was the general partner of many of the limited partnerships created by Landberg and received fees for its administration and management of the limited partnerships. Sentinel was an investment manager for some of the LPs and received additional fees for its role in providing investment advice to the limited partners who invested in the various Funds.

9. LPs invested in the limited partnerships created by Landberg and some LPs received monthly distributions even though the terms of the limited partnership agreements generally did not permit redemptions in the manner Landberg and WEFA administered them.

10. Some of these limited partnerships served as a partial source of funds to borrowers (generally 20% of the total loan) on either mortgage loans or loans to franchisees with the balance of the funding of the borrowers' loans (80%) made by lending banks with which Landberg entered into business arrangements.

11. Landberg created approximately forty-two limited partnership funds as investment vehicles. However, two funds in particular were the major funds in which LPs and other West End Funds were invested. These funds were West End Mortgage Finance Fund a/k/a WEMFF a/k/a the "Franchise Fund" and West End Mercury Short Term a/k/a Mercury a/k/a the "Hard Money Fund."

12. The Franchise Fund was engaged in the business of making franchise loans to commercial food service franchisees, whereas the Hard Money Fund was in the business of making short term real estate mortgage loans.

## THE FRANCHISE FUND (WEMFF)

13. WEFA was the General Partner of WEMFF as well as its Investment Manager. WEMFF was the managing member of NFA Funding, LLC ("NFA I") and the sole member of NFA Funding II, LLC ("NFA II"). NFA I was owned by WEMFF and Merrill Lynch Credit Financial Corporation ("Merrill Lynch"). NFA II was wholly owned by WEMFF. WEMFF invested in franchise loans and equipment leases made to franchisees through NFA I, NFA II and NFA Equipment Funding I LP ("NFA Equipment")(collectively referred to as the "Funding Companies"), for which WEFA was also the General Partner or Managing Member (the "Franchise Loans").

14. The limited partnership interest of NFA Equipment was held by West End Fixed Income Partners LP. The Franchise Loans were serviced through National Franchise Acceptance, LLC, which was owned by WEFA and Somerset II, LLC.

15. NFA I initially had a $500 million dollar credit line facility with Merrill Lynch through which Merrill Lynch agreed to lend NFA I funds used by NFA I to make the Franchise Loans (the "Merrill Lynch Credit Facility"). On October 26, 2007, the Merrill Lynch Credit Facility was partially paid off and DZ Bank AG Deutsche Zentral-Genossenschjaftsbank, Frankfurt Am Main, New York Branch ("DZ Bank") became the new source of funds under a Franchise Loan Origination Agreement (the "DZ Bank Credit Facility") for the Franchise Loans made by NFA II and NFA Equipment.

16. Under the DZ Bank Credit Facility, DZ Bank agreed to lend NFA II and NFA Equipment up to 80 percent of the total of funds used by these entities to make the Franchise Loans and equipment leases. Pursuant to the DZ Bank Credit Facility, the portion of the loan

not funded by DZ Bank was required to be obtained from WEMFF and/or WEFIP (i.e., from funds provided by LPs).

## THE HARD MONEY FUND (MCC)

17. WECM is a limited partnership created by Landberg and was the General Partner of Mercury. Mercury was the managing member of MCC Funding, LLC ("MCC"). Under an agreement with WECM, WEFA served as the investment manager of Mercury.

18. Mercury invested in mortgage loans made to borrowers on select real estate properties through MCC (the "Mortgage Loans"). MCC had a $200 million Revolving Credit and Security Agreement with WestLB (the "WestLB Credit Facility"). Under the WestLB Credit Facility, WestLB AG, New York Branch ("WestLB") agreed to lend MCC up to 80 percent of the total of funds used by MCC to make the Mortgage Loans. Pursuant to the WestLB Credit Facility, the portion of the mortgage loan made by MCC and not funded by WestLB was required to be obtained from Mercury (i.e., from funds provided by LPs).

19. Landberg was responsible for forming WEFA and WECM and the limited partnerships and limited liability companies in which WEFA and WECM were either a general partner, manager or managing member.

20. Landberg exercised day-to-day control over all of the activities of the limited partnerships and limited liability companies including, but not limited to, what investments each fund would make, what management and investment fees each fund would pay and what distributions each fund would make to its various LPs.

21. Most critically, Landberg controlled the flow of funds between and among the various West End Funds.

## RAYMOND J. HESLIN BACKGROUND

22. I was recruited by WEFA based upon my substantial experience in the financial services industry and my knowledge of related regulatory matters. In addition, on six separate occasions I have been appointed by the United States District Court as special counsel to SIPA Trustees. In a press release issued by WEFA in March 2009, upon my appointment, it was noted that "the current investment environment places a premium on complete transparency and measurable compliance with applicable rules and regulations. (Mr. Heslin's)background and expertise provides West End and its clients with the comfort of knowing that these twin objectives will continue to be reinforced and enhanced on a going forward basis."

23. Not long after I joined WEFA, as General Counsel and Chief Compliance Officer, I became suspicious about the source and use of funds in connection with several loan transactions in the two major funds as well as other improprieties. Through my investigation, I discovered the following:

    **a. Movement of Funds:** Landberg moved funds between and among all fund bank accounts on an almost daily basis.

    **b. WestLB Funds:** monies borrowed from West LB for hard money loans were transferred from MCC's bank account to the bank account of WEMFF and used for loans in this Fund and other unauthorized uses. In addition, monies from a reserve account set up to distribute disbursements from real estate closings to West LB were not being used as intended. Instead of remitting these monies directly to the West LB account, Landberg directed these monies to and from his various personal accounts and the accounts of other West End Funds.

    **c. The Ashley Furniture Transaction:** On or about April 20, 2009, WEMFF (NFA II) closed a franchise loan transaction with an entity known as St. Mar Enterprises, Inc. The

transaction generally involved a Franchise Loan by NFA II and WEMFF. As set forth above, the terms of the credit facility with DZ Bank required that any Franchise Loan be funded up to 80 percent from funds borrowed by NFA II from DZ Bank and the balance from WEMFF. I was aware that it had been difficult to raise WEMFF's participation for the St. Mar transaction. After that transaction closed, I learned that WEMFF supposedly contributed approximately $1.68 million as its equity stake. When I did not receive an adequate explanation from Landberg concerning the source of the $1.68 million, I began an investigation into this transaction. As a result I learned that the $1.68 million did not in fact come from funds contributed by WEMFF, but rather $1.64 million came from funds furnished by WestLB that should have been used for a hard money loan that MCC had agreed to make for real property in Alabama (Ashley Furniture) which had not closed. The balance of the funds was used for other purchases and over drafts. I determined that this use of funds obtained from WestLB was in violation with the terms of the WestLB Credit Facility.

    **d. The Fruitville Loan:** Landberg through an advanced funding request had obtained $3,080,000 from WestLB for a hard money loan to be made by MCC to "Somerset Holdings, LLC" for a property located in Florida. Through investigation, I discovered that the managing member of Somerset Holdings, LLC claimed he had no knowledge of the transaction and also learned that $1,951,384.89 of the $3,080,000 was in fact used to pay money owed to Century Bank by WEFA. In addition, I discovered that other amounts from the original $3,080,000 sum had been used to fund WEMFF's equity participation in other unspecified transactions as well as distributions to LPs and Landberg and certain of his family members. I determined that this use of the funds obtained from WestLB was not consistent with the terms of the WestLB Credit Facility.

**e. The Interest Reserve Account:** In connection with the making of the Mortgage Loans by MCC, an interest reserve account at Signature Bank was established into which disbursements from the various closings were deposited to be held in escrow for the payment of such items including interest. I discovered that Landberg frequently utilized funds from this account to pay overdrafts in other funds, personal expenses and distributions to LPs in violation of the applicable agreements with Signature Bank and WestLB.

**f. The Collection Account:** In addition to the Interest Reserve Account, a separate account at Signature Bank was maintained for the purpose of receiving payments from mortgagors. I discovered that Landberg apparently transferred funds from it into other fund accounts and his personal accounts in violation of the applicable bank agreements.

**g. The Benedek Loan:** After Landberg's resignation, I began investigating a transaction in which Landberg secured an approximately $3.948 million advance (70% of the investment funds) from WestLB for a land development project. The advance from WestLB was conditioned upon West End contributing 30% as its equity participation. I discovered evidence that Landberg apparently diverted the entire WestLB's $3.948 million advance from the West LB Credit Facility for the project and never provided West End's 30% equity participation.

24. After discovering these apparent misappropriations of funds, I caused Sentinel, WEFA and all of the Debtors to suspend their normal operations and distributions and conducted an internal investigation that led to discovery of further improprieties. I also immediately ceased Landberg's involvement in the management and operation of the West End Funds and ultimately secured his global resignation from all West End related entities effective June 2, 2009.

25. In addition to ordering an internal investigation, I engaged Jeffrey Hoffman, Esq. of Hoffman & Pollack on behalf of the Debtors to conduct a criminal investigation and I promptly met with representatives of the United States Department of Justice, the Securities and Exchange Commission, and the Federal Bureau of Investigation in order to provide full disclosure of the facts and documents. Throughout the ensuing months, I met repeatedly with the governmental authorities, answered any and all of their question, provided access to all employees of the Debtors, and have turned over documents as requested.

26. I also initiated contact with WestLB and DZ Bank to provide full disclosure of the facts discovered and took the necessary steps to protect the interests of West End limited partnerships and the investments of its LPs.

27. In May 2009, I informed the LPs of the apparent misuse of funds by Landberg and WEFA's efforts to implement a plan that would allow it to continue to function and protect the LP's investments.

28. This disclosure made to LPs was the first of numerous weekly disclosures in the form of reports labeled as "Productions" made to LPs as part of my efforts to provide transparency concerning the state of affairs of the limited partnerships and the investments of the LPs. In addition to weekly Productions providing disclosure to LP investors, I scheduled several telephone conference calls and town hall style meetings in which LPs were able to ask questions and voice their concerns. The first of such conference calls was held on May 21, 2009.

29. In addition, I formed the West End Limited Partner Advisory Committee ("WELPAC") to facilitate disclosure and to insure that the interests of the LPs were represented. The initial members of WELPAC included several LPs with diverse business

experience and substantial investments in the West End Funds including Linda Bloomfield, Dennis Fogarty, Stanley Kreitman, Philip Turits and Judith Zecher. Later, Thomas Reed, an attorney, Michael Raounas and Peter Ryan joined the WELPAC Committee after Dennis Fogarty resigned.

30. As a result of disclosure of Landberg's improprieties, at the height of the credit market freeze, MCC received a notice of default on or about May 11, 2009 from WestLB for, among other things, MCC's use of funds for purposes other than set forth in the WestLB Credit Facility. This primary default noticed by West LB preceded numerous other defaults including the following

    a.  On or about June 4, 2009, NFA I, NFA II, NFA Equipment, and WEMFF received a notice of default from DZ Bank of the DZ Bank Credit Facility as the result of WEMFF's failure to deliver audited consolidating financial statements and a change in the Debtors management.

    b.  On or about June 8, 2009, another of the West End Funds, West End Absolute Return Fund, L.P., received a notice of default from Signature Bank as a result of its failure to pay outstanding principal and interest on a promissory note.

    c.  On or about June 8, 2009, another of the West End Funds, Amagansett Realty SPV, I LLC, received a notice of default from Signature Bank for its failure to pay principal and interest in the amount of $3,536,093.73.

    d.  On or about June 9, 2009, Mercury received a notice of default from Century Bank in respect of a certain Amended and Restated Note, dated as of October 20, 2008, for failure to make payments of principal and interest.

31. These notices of default entitled the identified lenders to pursue their remedies under the various loan agreements including foreclosing on certain secured collateral.

32. The immediate effect of the default notice by DZ Bank was the suspension of the Waterfall Payments under the banking agreements with WestLB and DZ Bank to WEFA, MCC and/or WEMFF.

33. As a result of my investigation and because of the diminution of revenue, I took steps to cut WEFA's staff and expenses dramatically.

34. WEFA's main focus upon receiving the notices of default was to arrange for repayment of the funds misappropriated from WestLB and to ensure a resumption of the Waterfall Payments under the various banking agreements. In the interim, WEFA needed funding to continue its business operations until the Waterfall Payments resumed.

35. The immediate nearly impossible problem was to find a lending source in frozen credit markets which would enable WEFA to return the approximately $11 million in misappropriated funds to WestLB and to secure interim funding thereby allowing WEFA to maintain its business operations. To that end, WEFA immediately began investigating various funding alternatives and presented potential investment partners to WestLB and to arrange for the sale of the underlying collateral on the Benedek Loan. As part of this process, WEFA hired Daylight, a forensic accounting firm, as a critical step of the due diligence process required by the potential lending partner.

36. I began negotiations with DZ Bank in June 2009 with the goal of restoring the Waterfall Payments. In order to accomplish this result, we were required to obtain the consent of DZ Bank, National Franchise Acceptance LLC and Merrill Lynch, WEMFF's former banking partner in NFA I which still had equity interest in the fund. Through these

tripartite negotiations, we succeeded in obtaining a three hundred thousand dollar Waterfall Payment from DZ Bank. DZ Bank, which was the lender for the Franchise Loans made by NFA II and NFA Equipment, as a condition to indirectly restoring the Waterfall Payments, did not want WEFA to have any future involvement in future financings or servicing the Franchise Loans through National Franchise Acceptance, LLC.

37. On July 9, 2009, after substantial negotiations, Mercury entered into a letter of intent and term sheet with Northlight Financial, LLC ("Northlight") in which Northlight agreed under certain conditions to provide a secured credit loan to Mercury of up to $6 million (the "Northlight Loan"). The funds loaned by Northlight to Mercury occurred in a series of transactions that closed over the span of several months in August 2009, December 2009, January and February 2010.

38. The August closing occurred on August 6, 2009 (the "August Closing") and provided loan proceeds of $632,500 to Mercury. The proceeds of this loan were used primarily to maintain the business operations of WEFA, WECM and the West End Funds. This loan has been called the "Bridge Loan" as it was intended to serve the purpose of keeping WEFA and the West End Funds in operation until Northlight had completed its due diligence for its contemplated $6 million loan to Mercury.

39. The Northlight Loan was made in multiple stages over the course of several months because Northlight's due diligence was a time consuming process which required investigation of the inner workings of the West End Funds and the various loan programs related to the Mortgage Loans and the Franchise Loans. In addition, the closings involved complex negotiations and agreement on transaction documents with numerous parties including, but not limited to, WestLB, DZ Bank, Merrill Lynch, Somerset, Northlight,

Century Bank, Signature Bank, Perella Weinberg Capital Management LP ("Perella Weinberg") and Caplease Servicing Corp. ("Caplease").

40. Prior to the December Closing, defined below, we were able to sell two real estate properties that were used for collateral for the Benedek Loan and fully repay WestLB for this loan as well as reduce the principal owed to WestLB.

41. The transaction which funded the second tranche of the Northlight Loan occurred on December 18, 2009 (the "December Closing"). At the December Closing, loan proceeds of approximately $5.2 million were paid by Northlight directly to WestLB on behalf of MCC to cure its existing default in connection with the funds misappropriated by Landberg.

42. In the December Closing, Mercury transferred its membership interest in MCC to Northlight Distressed Real Estate Fund LP, which was a condition of the Northlight Loan. Additional conditions of the Northlight Loan were that (a) WEMFF transfer its membership interests in NFA I and NFA II and (b) West End Fixed Income Partners, LP ("WEFIP") transfer its limited partnership interest in NFA Equipment to newly formed limited partnership entities created by Northlight, namely Northlight Food Franchise Fund I LP, Northlight Food Franchise Fund II LP and Northlight Equipment Fund I LP (collectively referred to herein as the "Northlight Limited Partner Entities"). WEMFF and WEFIP received corresponding limited partnership interests in the newly formed Northlight Limited Partnership Entities.

43. These conditions with respect to the transfer of the entities involved in the Franchise Loans were not satisfied at the December Closing of the Northlight Loan as required by the Northlight Loan Agreement because additional agreements had to be negotiated and drafted and finalized with other parties involved in making the Franchise Loans in order to restore

the Waterfall Payments. These conditions were satisfied in the January Closing which occurred on January 26, 2010 (the "January Closing").

44. After the monetary default of West LB was cured with the payment of approximately $5.2 million from the December Closing, it was necessary for WEFA to satisfy the demands of DZ Bank in order to restore the Waterfall Payments. The restoration of the Waterfall Payments indirectly benefits WEMFF and WEFIP and, in turn, the LPs in the relevant West End Funds, through WEMFF and WEFIP's respective limited partnership interests in the Northlight Limited Partnership Entities. Also, a portion of the Waterfall Payments have, in the sole discretion of Northlight, been paid to WEFA for operating expenses and may continue to be paid for such expenses in the future.

45. The principal demand made by DZ Bank was that WEFA not have any future involvement with the financing and servicing of the Franchise Loans by National Franchise Acceptance, LLC, which was owned jointly by WEFA and Somerset. After a deadlock was declared by Somerset, it was demanded that National Franchise Acceptance, LLC would redeem WEFA's 45% membership interest in National Franchise Acceptance, LLC. In a transaction which occurred contemporaneously with the January Closing, Perella Weinberg is believed to have acquired an interest in National Franchise Acceptance, LLC or a successor entity thereto.

46. The January Closing accomplished, inter alia, the following: (1) the transfer of WEFA's interest in NFA I, NFA II and NFA Equipment to Northlight Food Franchise Fund I LP, Northlight Food Franchise Fund II LP and Northlight Equipment Fund I LP, respectively; (2) the redemption of WEFA's interest in National Franchise Acceptance, LLC (3) the acquisition by Perella Weinberg of an interest in National Franchise Acceptance, LLC

or a successor entity; (4) the issuance of a Second Amended Franchise Loan Origination Agreement by DZ Bank; (5) the sale by WEFA of its membership interest in Venture Restaurant Partners LLC to JBB Partners LLC and, in turn, the apparent sale of the same interest to Perella Weinberg; (6) the sale of certain defaulted franchise loans from the portfolios of NFA I and NFA II to Perella Weinberg; (7) the receipt of consents from DZ Bank and Merrill Lynch for the transfer of the NFA I, NFA II and NFA Equipment to the Northlight Limited Partnership Entities; and (8) an Amended and Restated Purchase Agreement with Merrill Lynch.

47. As the result of the complicated negotiation and agreements effectuated at the December Closing and the January Closing, the Waterfall Payments were restored in February and initially were utilized to pay expenses arising out of the transactions. Currently the Water Fall Payments are being used to pay down the Northlight Loan. Eventually, WEFA expects that the Waterfall Payments will generate revenue which will be distributed to WEMFF and WEFIP and, in turn, to the LPs of the relevant West End Funds.

48. The Debtors together with WELPAC on January 11, 2011 retained GoldinAssociates LLC, to act as an Independent Monitor to the Funds assisting in the formulation of a plan of distribution for the Funds' assets. WELPAC and I, believed Goldin to be the most qualified candidate to serve as independent monitor since Goldin has been retained by orders of courts in the Southern District of New York countless times to serve in this function and Goldin has substantial expertise in maximizing the value of assets for creditors and investors alike.

49. On January 20, 2011, the SEC filed a complaint against WEFA, WECM and Sentinel Investment Management Corporation (the "Company Defendants"). As was detailed above, I was the party who within my first 10 weeks at WEFA informed the SEC of the apparent

improprieties. For almost two years the Debtors have been actively assisting and cooperating with the SEC's investigation, the United States Attorney's investigation, and the Commodity Futures and Trade Commission's Investigation.

50. On January 26, 2011, the SEC made an *ex parte* motion for a TRO and a motion for a preliminary injunction appointing an Independent Monitor, Mark Radke, ("Mr. Radke") with few restrictions on his fees and powers. The Court in its TRO "urged [the parties] to explore a consensual resolution" of the SEC's motion for a preliminary injunction against the Company Defendants.

51. The Company Defendants filed a motion to dissolve the *ex parte* TRO, and opposed the SEC's Motion because the SEC did not have a basis for filling its motion. The Second Circuit has established that in order for the SEC to obtain a preliminary injunction, the SEC is required, at minimum, to "demonstrate that there is a substantial likelihood of future violations of illegal securities conduct." S.E.C. v. Cavanagh, 155 F.3d 129, 132 (2nd Cir. 1998); S.E.C. v. American Bd. of Trade, Inc., 791 F.2d 529, 533 (2nd Cir. 1984)(Friendly, J.).

52. The facts set forth in this Declaration demonstrate that there is and was absolutely no threat of future violations of the securities laws **as the Debtors' have not been involved in any securities transactions since May 2009.** As set forth above, I brought about Mr. Landberg's resignation, once I discovered his impropriety and Mr. Landberg has for nearly two years had no involvement in the Debtors' operations. This is not a case where a company charged with securities law violations is being operated by the party accused of fraud. From the time that I informed the Government of Mr. Landberg's conduct, for almost

two years, every action taken by me has been part of a plan crafted by the Debtors to maximize the value of the assets of the Debtors and the investments of the limited partners.

53. However, in an effort to minimize the legal costs to the Debtor and because the Company Defendants always agreed with the concept of an Independent Monitor on February 10, 2011, after weeks of negotiating with the SEC, the Company Defendants entered into a stipulation which they presented to the Court for "so ordering" whereby Mr. Radke would replace Goldin as the Company Defendants' independent monitor but where Mr. Radke's responsibilities would be limited. The court order is attached hereto as Exhibit B (the "Stipulation and Order"). Pursuant to the Stipulation and Order, the Company Defendants agreed that in the event that the Company Defendants find themselves as debtors in Bankruptcy Cases then the Company Defendants would make the appropriate application to the court for the continuance of Mr. Radke as the Independent Monitor.

54. Subsequently the Independent Monitor and the SEC requested that the District Court construe the Stipulation and Order as requiring advance notice and judicial approval before any bankruptcy filing by the Company Defendants (which includes four Debtors). Judge Castel rejected Mr. Radke and the SEC's argument and held in an Order "that is more than what the [Stipulation and Order] requires of the Company," because the Company Defendants in the Stipulation and Order specifically reserved the right "to seek relief under the Bankruptcy Code, i.e to file a bankruptcy petition."

55. Following careful consideration of all alternatives, the Company, Funds and WELPAC have determined that the commencement of the Bankruptcy Cases will maximize the return for both creditors and LPs of the Funds as the protections afforded the Funds in bankruptcy court will, offer relief, allow for the consolidation of the Funds to account for the

comingling that occurred under Landberg and ensure an equitable result for all the creditors and parties of interest including the LPs.

56. Accordingly, on the date hereof the Funds filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

## CORPORATE STRUCTURE

57. The organizational chart attached hereto as <u>Exhibit A</u> generally and to the best of my knowledge depicts the Funds corporate structure.

## II

## FACTS RELEVANT TO FIRST DAY PLEADINGS

58. Together with the filing of these Bankruptcy Cases, the Funds also filed certain First Day Pleadings, which request various types of relief. Generally, the First Day Pleadings have been designed to meet the Fund's goals of (a) continuing its operations as debtors in possession with as little disruption and loss of productivity as possible; and (b) establishing procedures for the smooth and efficient administration of these Bankruptcy Cases.

59. I have reviewed each of the First Day Pleadings filed contemporaneously herewith (including exhibits thereto and supporting memoranda) and, to the best of my knowledge, information and belief, the facts recited therein are true and correct and are hereby incorporated by reference. It is my belief that the relief sought in each First Day Pleadings is essential to the Funds' ability to achieve a successful reorganization.

## III

## INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

60. Local Bankruptcy Rule 1007-2 requires certain information related to the Funds, which is set forth below

61. In accordance with Local Bankruptcy Rule 1007-2(a)(3) and as detailed in paragraph 31 above the attached Schedule 1 lists the names of the current members of WELPAC.

62. In accordance with Local Bankruptcy Rule 1007-2(a)(4), the attached Schedule 2 is a list of the names and addresses, of the creditors holding the 50 largest unsecured claims (excluding insiders) against the Funds. Such lists includes the amount of the claim, the nature of the claim and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured, subject, however, to the reservations of rights stated in Schedule 2 regarding, among other things, the actual validity of any such claims.

63. In accordance with Local Bankruptcy Rule 1007-2(a)(5), the attached Schedule 3 is a list of the names and addresses of the creditors holdings the five largest secured claims against the Funds, as well as the names and addresses for the holders of record of such secured claims. Such list includes the amount of the claim, and estimate of the value of the collateral, and whether the claim or lien is disputed, subject however, to the reservations of rights stated in Schedule 3.

64. In accordance with Local Bankruptcy Rule 1007-2(a)(6), the attached Schedule 4 provides a summary of the Funds' assets and liabilities.

65. In accordance with Local Bankruptcy Rule 1007-2(a)(7), the attached Schedule 5 provides a summary of the Fund's issued securities publically held.

66. In accordance with Local Bankruptcy Rule 1007-2(a)(8), the attached Schedule 6 is a list of property not in the Fund's possession, including property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or agent for any such entity.

67. In accordance with Local Bankruptcy Rule 1007-2(a)(9), the attached Schedule 7 is a list of the premises owned, leased, or held under other arrangement, from which the Funds operates its businesses.

68. In accordance with Local Bankruptcy Rule 1007-2(a)(10), the attached Schedule 8 hereto provides the location of the Funds' substantial assets, and the location of their books and records. To the best of my knowledge, information, and belief the Funds do not hold any assets outside the territorial limits of the United States that have more than *de minimis* value.

69. In accordance with Local Bankruptcy Rule 1007-2(a)(11), the attached Schedule 9 is a list of litigation commenced or threatened against the Funds or its property where a judgment against the Funds or a seizure of its property may be imminent.

70. In accordance with Local Bankruptcy Rule 1007-2(a)(12), the attached Schedule 10 contains the names of the individuals who comprise the Funds existing senior management, their tenure with the funds, and a brief summary of their relevant responsibilities and experience.

71. The Funds intend to continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

72. In accordance with local Bankruptcy Rule 1007-2(b)(1)&(2)(B), the attached Schedule 11 is the estimated amount of the payroll to employees of the Funds and amounts to be paid to the General Partner for services for the 30 day period following the commencement of the Funds' chapter 11 cases.

73. In accordance with Local Bankruptcy Rule 1007-2(b)(3), the attached Schedule 12 contains the estimated cash receipts and disbursements and net cash gain or loss for the 30-day period following the commencement of the Funds' chapter 11 cases.

## CONCLUSION

74.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

75.     Accordingly, I respectfully request that the Court grant all relief requested un the first day pleading and such other further relief as may be just.

Dated   March 15, 2011
New York New York

On behalf of the Funds

By: _____
           Raymond J. Heslin

West End Organizational Chart

Exhibit A

Legend:
— Investment Manager
----- General Partner or Managing Member
═══ Limited Partnership or Membership Interest (GP or Managing Member is Northlight)

Entities shown:
- West End Capital Management LLC
- West End/Mercury Short-Term Mortgage Fund LP
- Northlight Distressed Real Estate Fund, LP
- West End Private Client Income Fund LP
- West End Special Opportunity Fund LP
- West End Special Opportunity Fund II LP
- West End Mortgage Opportunity Franchise Funding LLC
- MCC Funding LLC
- West End Absolute Return Fund I, LP
- West End Dividend Strategy Fund I, LP
- West End Real Estate Fund I LP
- West End Mortgage Opportunity Fund II LP
- West End Income Strategies Fund LP
- L/C Family Limited Partnership
- SIMCO SPV1, LP
- West End Financial Advisors LLC
- West End Fixed Income Partners LP
- Northlight Equipment Fund I, LP
- NFA Equipment Fund I LP
- Sentinel Investment Management Corp.
- West End Mortgage Finance Fund I LP
- Northlight Food Franchise Fund II, LP
- NFA Funding II LLC
- Southwood Court Properties LLC
- New Riverhead Realty Holding LLC
- Amagansett Realty SPV I LLC
- West End Sagaponak SPV I LLC
- West End Cash Liquidity Fund I LP
- West End Real Estate Group, LP
- Benedek Development Group, LLC
- Northlight Food Franchise Fund, LP
- NFA Funding LLC

Exhibit B

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-10-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,
                                          Plaintiff,

            - against -

WILLIAM LANDBERG, KEVIN KRAMER, STEVEN
GOULD, JANIS BARSUK, WEST END FINANCIAL
ADVISORS LLC, WEST END CAPITAL
MANAGEMENT LLC, and SENTINEL INVESTMENT
MANAGEMENT CORPORATION,

                                          Defendants,

                                          And

LOUISE CRANDALL and L/C FAMILY LIMITED
PARTNERSHIP,

                                          Relief Defendants.

Docket No:
11 Civ. 0404 (PKC)   (PKC)

AMENDED

STIPULATION AND ORDER

WHEREAS, the Plaintiff, Securities and Exchange Commission ("SEC"), moved

for an *ex parte* temporary and preliminary injunctive relief and for the appointment of an

Independent Monitor (the "Motion") with respect to defendants WEST END FINANCIAL

ADVISORS LLC, WEST END CAPITAL MANAGEMENT LLC, and SENTINEL

INVESTMENT MANAGEMENT CORPORATION (collectively referred to herein as the

"Company");

WHEREAS, the Court issued an *ex parte* temporary restraining order ("TRO")

on January 26, 2011, appointing an Independent Monitor for the Company pending the

determination of the SEC's motion for a preliminary injunction;

1 of 4 /KC

{00517827.DOC;3 }

{00498371.DOC;4 }28

WHEREAS, the Company filed a motion to dissolve the *ex parte* TRO, opposed the SEC's Motion, but has always agreed to the concept of an Independent Monitor;

WHEREAS, the Court "urged [the parties] to explore a consensual resolution of the motion for a preliminary injunction"; and

WHEREAS, the parties desire to resolve the SEC's motion for a preliminary injunction and the Company's motion to dissolve without further litigation and without any admission by any party concerning the relative merits of each party's motion;

IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

1. The SEC and the Company agree to the appointment by Mark S. Radke as Independent Monitor.

2. Mr. Radke shall have the following responsibilities as Independent Monitor:

(a) to review and approve the design of a plan of distribution to liquidate and distribute the Company's assets. In the event that the Company finds itself as a debtor in a Bankruptcy Case then the Company shall make the appropriate application to the court for the continuance of Mr. Radke as the Independent Monitor;

(b) to review all fees and expenses incurred by the Company since May 2009;

(c) to review investment decisions made on behalf of the Company since May 2009;

(d) to review the Company's financing and investment advisory arrangements with third parties since May 2009;

(e) to review all expenses and transactions since May 2009 engaged in by the Company;

(f) to review and approve any expense accrued by the Company subsequent to the date hereof in excess of $25,000 per item;

(g) to review all future non-incidental and official communications by the Company to investors;

(h) to review the Company's plans to identify and pursue claims against third parties; and

(i) the Company reserves its right to seek relief under the Bankruptcy Code and the SEC reserves its right to object to and/or preclude such filing.

{00517827.DOC;3 }

*2 of 4*  *PKC*

3.   Mr. Radke shall receive compensation as Independent Monitor under the

following terms:

(a) Mr. Radke will bill out his services at the rate of $525 per hour and $250 per hour for
time spent communicating with investors.

(b) Peter Unger will bill out his services at the rate of $487 per hour.

(c) Mr. Radke to the extent possible will utilize associates of his firm at rates ranging
from $258 to $343 per hour to assist him in the performance of his duties so as to limit the
expense to the Company of the Independent Monitor as much as reasonably possible.

(d) Mr. Radke shall render monthly bills to the Company and to the SEC, and such bills
shall be submitted to the court for approval when the accumulated fees reach $100,000.

(e) All fees and expenses incurred by the Independent Monitor will be governed by the
SEC's billing guidelines and instructions, except to the extent that such are explicitly
contradicted by any specific provisions herein.

4.   Mr. Radke shall have the right to retain third parties under the following terms:

(a) The Company and the Independent Monitor shall mutually agree on the selection of a
new independent accountant to perform any necessary accounting services. The Independent
Monitor shall be entitled to direct the accountant to perform tasks and to report its work directly
to the Company and the Independent Monitor.

(b) The Independent Monitor shall not retain any third-party professional without the
prior consent of the Company which consent shall not be unreasonably withheld.

(c) If the Company and the Independent Monitor do not mutually agree on the retention
of a third-party professional, the parties shall present the issue to the court to decide.

5.   Mr. Radke shall have the following reporting responsibilities:

(a) Mr. Radke shall provide an oral status report to the Court and the Company 75 days
from the Court's appointment of Mr. Radke;

(b) Mr. Radke shall provide a written report to the Court and the Company every 120
days thereafter unless extended by mutual agreement approved by the Court.

3 of 4   PKC

{00517827.DOC;1 }

Dated: February 10, 2011                ROBINSON BROG LEINWAND
       New York, New York               GREENE GENOVESE & GLUCK, P.C.

                                By:     _____
                                        A. Mitchell Greene
                                        John D. D'Ercole
                                        875 Third Ave, 9th floor
                                        New York, NY 10022-0123
                                        Tel:  (212) 603-6300
                                        Fax:  (212) 956-2164
                                        amg@robinsonbrog.com
                                        jdd@robinsonbrog.com
                                        *Attorneys for Defendants West End
                                        Financial Advisors LLC, West End
                                        Capital Management LLC, and
                                        Sentinel Investment Management
                                        Corporation*

                                        SECURITIES AND EXCHANGE
                                        COMMISSION

                                By:     _____
                                        Howard A. Fischer
                                        Senior Trial Counsel
                                        New York Regional Office
                                        3 World Financial Center
                                        New York, New York 10281
                                        Tel:   (212) 336-0113
                                        Fax:   (212) 336-1348
                                        FischerH@SEC.GOV
                                        *Attorneys for Plaintiff*

*The motion for a
preliminary injunction and
the motion to vacate
are terminated.*

SO ORDERED

_____
Hon. P. Kevin Castel, U.S.D.J.

2-10-11

4 of 4 PKC

{00517827.DOC;3 }

{00498371.DOC;4 }31

# NOTES, STATEMENT OF LIMITATIONS AND DISCLAIMER REGARDING DEBTORS' SCHEDULES

The schedules attached hereto and contained herein (the "Schedules") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") were prepared by the Debtors' management, with the assistance of the Debtors' personnel and bankruptcy professionals pursuant to 11 U.S.C. Section 521 and Federal Rule of Bankruptcy Procedure 1007 and are unaudited. While the Debtors' management has made every effort to ensure that the Schedules are accurate and complete based upon information that was available at the time of their preparation, inadvertent errors and/or omissions may have occurred. The Schedules remain subject to further review and verification by the Debtors. Subsequent information may result in material changes in financial and other data contained in the Schedules. The Debtors reserve their rights to amend the Schedules from time to time as may be necessary or appropriate without notice. This Disclaimer is incorporated by reference in, and comprises an integral part of, each of the Schedules and should be referred to and reviewed in connection with any review of the Schedules.

1. <u>The Cases</u>. On March 15, 2011 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. Unless otherwise indicated, the information provided in the Schedules is as of the close of business on the Petition Date.

2. <u>Amendment</u>. The Debtors reserve the right to amend the Schedules in all respects at any time as may be necessary or appropriate, including without limitation, to (i) assert offsets

or defenses to any claim, (ii) amend the amount, liability or classification of any claim; or (iii) otherwise designate any claim as contingent, unliquidated or disputed.

3. <u>Estimates and Assumptions</u>. The preparation of the Schedules required the Debtors to make certain estimations and assumptions with respect to the values associated with their assets and liabilities; the value of contingent assets and liabilities; and the reported amounts of income and expenses. The actual amounts could differ from these estimates.

4. <u>Unaudited Financial Information</u>. The Schedules are unaudited and reflect the Debtors' best efforts to report the assets and liabilities of the Debtors on a consolidated basis. The Schedules neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP") nor are they intended to fully reconcile the Debtors' financial statements. Given the difference between the financial information required by the Schedules and financial information prepared in accordance with GAAP, the aggregate asset values and claim amounts set forth in the Schedules may not reflect the amounts that would be set forth in a balance sheet prepared in accordance with GAAP.

5. <u>Causes of Action</u>. Debtors reserve all of their causes of action. Nothing contained in the Schedules shall constitute a waiver of any claim or cause of action that may be asserted, including, but not limited to, equitable subordination, causes of action arising under Chapter 5 of the Bankruptcy Code and any other causes of action arising in these cases or under applicable non-bankruptcy law.

6. <u>Reporting Policies</u>. The Schedules were signed by Raymond J. Heslin. In reviewing and signing the Schedules, Mr. Heslin necessarily relied upon the efforts, statements and representations of the Debtors' accounting and non-accounting personnel. Mr. Heslin has

not personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors. Each of the Debtors made its best effort to accurately report asset, liability, disbursement and other information on its Schedules. However, the following qualifications and limitations apply to the Schedules:

a. Personal Information. The Debtors have not included the addresses and contact information of the members of WELPAC.

b. For the preparation of the Schedules, it would be prohibitively costly and time consuming to obtain current appraisals and market valuations of the Debtors' property interests. Accordingly, unless otherwise noted, the Schedules reflect the Debtors' estimations of assets and liabilities as of the Petition Date.

c. In the ordinary course of its business, the Debtors lease real and personal property, including office space and equipment from third –party lessors. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease, whether a true lease or financing arrangement, and the Debtors' reserve all rights with respect to such issues.

d. Claims. The Debtors may designate certain claims as disputed, contingent and /or unliquidated, as applicable. Any failure to designate a claim on the Schedules as disputed, contingent and/or unliquidated does not constitute an admission that such claim is not disputed, contingent and/or unliquidated. Debtors reserve the right to dispute, or assert offsets or defenses to, any claim reflected on the Schedules as to amount, liability or status.

7. **General Disclaimer.** While those members of Debtors' management responsible for the preparation of the Schedules have made a reasonable effort to ensure that the Schedules are accurate and complete based on the information known to them at the time of preparation after reasonable inquires, inadvertent errors may exist or the subsequent receipt of information may result in material changes in financial and other data contained in the Schedules that may warrant amendment.

Schedule 1

Mr. Raymond J. Heslin

Ms. Linda Bloomfield

Mr. Stanley Kreitman

Mr. Michael Raounas

Mr. Thomas Reed

Mr. Peter Ryan

Mr. Philip Turits

Ms. Judith Zecher

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re :

West End Financial Advisors LLC., et al.,

                              Debtors.
-------------------------------------------------------x

Chapter 11
Case Nos. _____ through _____
Jointly Administered

### LIST OF CREDITORS HOLDING FIFTY (50) LARGEST UNSECURED CLAIMS

Attached is the consolidated list of the creditors holding the fifty (50) largest unsecured claims of West Financial Advisors LLC, and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and each a "Debtor"). The list reflects amounts as of March 1, 2011. The list has been prepared in accordance with rule 1007(d) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 1007-2(a)(4). The list does not include (i) persons who come within the definition of "insider" as that term is defined in 11 U.S.C. Section 101(31); and/or (ii) secured creditors unless the value of the collateral is such that a creditor's unsecured deficiency claim places the creditor among the holders of the fifty (50) largest unsecured claims. Any amounts listed herein are estimated, subject to verification and later dispute. Without limiting the foregoing, the Debtors reserve their rights to dispute or challenge any claim on this list for any reason.

## Schedule 2

| Unsecured Creditors | Balance Total | Street1 | Street2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Signature Bank | 2,600,000.00 | 565 Fifth Avenue | | New York | NY | 10017 |
| Becker, Glynn, Melamed & Muffly LLP | 288,668.27 | 299 Park Avenue | | New York | NY | 10171 |
| Daylight Forensic & Advisory LLC | 272,177.34 | 1 Rockefeller Plaza | | New York | NY | 10020 |
| Kramer, Kevin | 200,000.00 | 12 Mozart Dr | | Wilmington | DE | 19807 |
| Citrin Cooperman & Company | 178,046.00 | 529 Fifth Avenue | | New York | NY | 10017 |
| Sonnenschein, Nath & Rosenthal, LLP | 177,395.61 | 1221 Avenue of the Americas | | New York | NY | 10020 |
| Seyfarth Shaw LLP | 143,083.98 | 131 S. Dearborn Street | Suite 2400 | Chicago | IL | 60603 |
| Marks, Paneth & Shron | 97,500.00 | 622 Third Avenue | | New York | NY | 10017 |
| Tannenbaum, Helpern, Syracuse & Hirschtritt | 87,803.25 | 900 Third Avenue | | New York | NY | 10022 |
| American Express ( W. Landberg) | 82,666.68 | P.O. Box 360002 | | Ft. Lauderdale | FL | 33336-0002 |
| Hoffman & Pollok LLP | 50,433.34 | 260 Madison Avenue | | New York | NY | 10016 |
| Moore, Thomas | 50,000.00 | 260 Madison Avenue | | New York | NY | 10016 |
| Interactive Data Real-Time Services | 38,529.84 | P.O. Box 98616 | | Chicago | IL | 60693 |
| Smallberg, Sorkin & Co. LLP | 30,911.16 | 450 Seventh Ave, Suite 2710 | | New York | NY | 10123 |
| Davis, Jonathan | 25,219.16 | 99 Park Avenue, 16th Floor | | New York | NY | 10016-1503 |
| Canon Financial Services Inc | 21,000.00 | 14904 Collections Center Dr | | Chicago | IL | 60693-0149 |
| Clayman & Rosenberg | 18,387.44 | 305 Madison Avenue | Suite 1301 | New York | NY | 10165 |
| Ferber, Chan, Essner & Coller, LLP | 14,106.50 | 530 Fifth Avenue | | New York | NY | 10036-5101 |
| Esseks, Hefter & Angel, LLP | 10,265.32 | 108 East Main Street | P.O. Box 279 | Riverhead | NY | 11901 |
| Thomson Financial LLC | 9,083.00 | P.O. Box 5136 | | Carol Stream | IL | 60197-5136 |
| William O'Neil+Co. | 6,250.00 | 12655 Beatrice Street | | Los Angeles | CA | 90066 |
| Risk Metrics Group | 6,047.32 | 2099 Gaither Road Suite #501 | | Rockville | MD | 20850 |
| Abrams, Fensterman, Fensterman, etal | 5,000.00 | 1111 Marcus Avenue, | Suite 107 Attn: Suzanne Gresick | Lake Success | NY | 11042 |
| Time Warner Cable | 4,804.35 | 5120 Broadway 2nd floor | | New York | NY | 10034 |
| Pitney Bowes Global Financial Service LLC | 4,560.74 | P.O. Box 856460 | | Louisville | KY | 40285-6460 |
| Becker, Glynn, Melamed & Muffly LLP | 4,293.00 | 299 Park Avenue | | New York | NY | 10171 |
| Live Office | 3,125.00 | 2780 Skypark Drive | Suite 300 | Torrance | CA | 90505 |
| Imperial Credit Corporation | 3,117.36 | 1001 Winstead Drive | Suite 500 | Cary | NC | 27513 |
| Staples Business Adventage | 2,600.74 | Dept NY | PO Box 415256 | Boston | MA | 02241-5256 |
| Data Mining Technologies | 2,558.49 | 25 Redan Drive | | Smithtown | NY | 11787 |
| Kramer, Kevin | 2,500.00 | 12 Mozart Dr | | Wilmington | DE | 19807 |
| Travelers | 2,399.36 | c/o Kingsbrook Brokerage | 32 Broadway, Ste 214 | New York | NY | 10004 |
| De Lange Landen | 2,227.50 | PO Box 41602 | | Phila | PA | 19101-1602 |
| Atzlan, Lynn, CPA | 1,920.00 | 69-10 108 Street | Apt. 8C | Forest Hills | NY | 11375 |
| Ford & Harrison LLP | 1,865.50 | P.O. Box 101423 | | Atlanta | GA | 30392-1423 |

| Name | Amount | Address | | City | State | Zip |
|---|---|---|---|---|---|---|
| United Corporate Service | 1,835.00 | 10 Bank Street | | White Plains | NY | 10606 |
| Brecher, Daniel | 1,826.32 | 99 Park Avenue, 16th Floor | | New York | NY | 10016 |
| Saul Ewing | 1,760.00 | Centre Square West | 1500 Market Street, 38th Fl | Philadelphia | PA | 19102 |
| SeamlessWeb Professional Solutions, Inc. | 1,448.63 | P.O. Box 48098 | | Newark | NJ | 07101-4898 |
| Superior Resource Printing & Graphics | 1,257.15 | 255 West 36th Street Suite 202 | | New York | NY | 10018 |
| Town Clerk - Town of East Hampton | 1,130.00 | 159 Pantigo Rd | | East Hampton | NY | 11937 |
| Avenue Magazine | 1,000.00 | 237 West 35th Street | 14th Floor | New YOrk | NY | 10001 |
| Guardian Service Industries, Inc. | 587.66 | 8005 Expedite Way | | Chicago | IL | 60695-0005 |
| Pitney Bowes Purchase Power | 572.50 | PO Box 856042 | | Louisville | KY | 40285-6042 |
| Interior Foliage Design, Inc. | 514.80 | 32-14 36th Avenue | | Long Island City | NY | 11106 |
| ATA Corporate Service, LLC | 450.00 | P.O. Box 849 | | Wilmington | DE | 19899 |
| Active Irrigation, Inc. | 380.19 | PO Box 34 | | West Sayville | NY | 11796 |
| Poland Spring | 348.37 | P.O. Box 856192 | | Louisville | KY | 40285-6192 |
| CSC | 284.00 | 2711 Centerville Rd | | Wilmington | DE | 19808 |
| Johnson, Kenneth A. | 277.96 | PO Box 1771 | | Bridgehampton | NY | 11932 |
| Alliance Distributors & Services, LLC | 250.00 | 51 Sycamore Dr. | | East Stroudsburg | PA | 18301 |
| American Stock Exchange LLC | 216.75 | P.O. Box 757510 | | Philadelphia | PA | 19175-7510 |
| Broadview Networks | 200.00 | PO Box 9259 | | Uniondale | NY | 11555 |
| City Market | 195.19 | 551 Madison Avenue | | New York | NY | 10022 |
| JG Graphics | 82.37 | 5 Newcastle Court | | Riverhead | NY | 11901-3202 |
| Federal Express | 15.35 | P.O. Box 371461 | | Pittsburgh | PA | 15250 |
| Conte Consulting | Unknown | 311 East 71st Street | Apt 5f | New York | NY | 10021 |

**CONTINGENT CREDITORS**

| Name | Amount | Address | | City | State | Zip |
|---|---|---|---|---|---|---|
| William Landberg | | c/o Michael Bachner, Esq. | 26 Broadway, Suite 2310 | New York | NY | 10004 |
| | | c/o Syndey Platzer. Platzer Swergold, Karlin, Levine, Goldberg & Jaslow, LLP | 1065 Avenue of the Americas | New York | NY | 10018 |
| Kevin Kramer | | Fox Rothschild LLP | 100 Park Avenue #1500 | New York | NY | 878-7900 |
| Janis Barsuk | | 65 Floral Terrace | | Tenafly | NJ | 07671 |
| Louise Crandall | | Andrew G. Celli, Esq., Emery Celli Brinckerhoff & Abady, LLP | 75 Rockefeller Plaza, 20th Floor | New York | NY | 10019 |
| Steven Gould | | c/o Paul Rooney, Esq. | 708 Third Avenue, 5th Floor | New York | NY | 10017 |

## Schedule 3

| Creditor Name / Location of Collateral | Nature | Amount of Claim | Collateral Value | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|
| DZ Bank | Secured | 118,114,558.06 | | 609 Fifth Avenue . | New York | NY | 10017 |
| Iberia Bank<br>West End Mortgage Finance Fund<br>West End Mercury Short Term<br>3 Calf Creek & 5 Calf Creek (25 Whalers Lane) | Disputed | 11,298,903.24 | | PO Box 12440 | New Iberia | LA | 70562-2440 |
| Suffolk County National Bank<br>Southwood Court Properties<br>Amagansett, NY 11930, 15 Southwood Ct, Amagansett, NY 11930,<br>5 Southwood Ct Amagansett, NY 11930, 6 Southwood Ct, Amagansett, NY 11930<br>9 Southwood Ct, 411 Town Lane, Amagansett, NY 11930 | Secured | 8,275,000.00 | | PO Box 9000 | Riverhead | NY | 11901-9000 |
| Signature Bank<br>New Riverhead  1074 Pulaski, 1074 Pulaski #2, 1044 Parkway, Kroemer Rte 25, Roneck Ct | Secured | 4,439,917.85 | | 585 Fifth Avenue | New York | NY | 10017 |
| Northlight Financial LLC (approx. amt.) | Secured | 5,300,000.00 | | 24 West 40th Street, 12th fl | New York | NY | 10018 |
| Caplease Debt Funding LP | Secured | 1,443,806.23 | | 1065 Avenue of the Americas | New York | NY | 10018 |
| West LB (approx. amt.) | Secured | 40,986,286.00 | | 1211 Avenue of the Americas | New York | NY | 10036 |

Schedule 4

| West End Financial Advisors LLC | | |
|---|---|---|
| **Consolidated List of Assets**[1] | | |
| | | **Assets** |
| **Cash - Chase** | | **389,500.00** |
| **Cash - HSBC** | | **88.01** |
| **Cash - CD - Iberia Bank** | | **4,653.33** |
| **Cash - Iberia Bank** | | **16,569.73** |
| **Cash – Escrow account of Sidney Plazter, Esq.** | | **6000** |
| **Brokerage Acct - Dominick & Dominick** | | **141.62** |
| **Brokerage Acct - RF Lafferty** | | **2,115.06** |
| **Receivable of WEMFF against NFA** | | **97,000 (approx)** |
| **Loan Receivable - Geneva** | | **Unknown** |
| **Mortgage Receivable - Southwood Court Properties** | | **2,558,000.00** |
| **Loan Receivable - SJ Foods** | | **122,193.06** |
| **Loan Receivable - Raymond O'Dell** | | **111,401.96** |
| **Mortgage Receivable - Chicago Diverisified Foods** | | **218,071.26** |
| **Mortgage Receivable - Janette Goodstein** | | **50,000.00** |
| **Note Receivable - Robert Beller** | | **250,000.00** |
| **Employee Receivable - Kevin Kramer** | | **107,729.93** |
| **Property - 25 Whalers Lane** | | **2,000,000.00** |
| **Investment - 90 LLC** | | **590,000.00** |
| **Investment - Burgundy 102 LLC** | | **750,000.00** |
| **Investment - Easton Ridge** | | |

[1] This list does not include a contingent claim of Sentinel

| | | |
|---|---|---|
| **Apartment** | | **270,000.00** |
| **Investment - Ivywood 67 LLC** | | **265,000.00** |
| **Investment - Scioto LLC** | | **337,500.00** |
| **Investment - Geneva** | | **Unknown** |
| **Investment - West End Mercury Short Term Mortgage Fund** | | **17,199,848.00** |
| **Investment - West End Mortgage Finance Fund** | | **26,733,089.00** |
| **Investment - West End Cash Liquidity Fund** | | **357,216.03** |
| **Investment - Southwood Court Properties** | | **1,055,000.00** |
| **Investment - Rovion (183,333 shares)** | | **Unknown** |
| **Investment - Kenisington Financial Services** | | **36,500.00** |
| **Investment - Century Financial** | | **Unknown** |
| **Investment - Fusion Telecommunications International** | | **1,900,000.00** |
| **Total Assets** | | **$ 55,421,616.99** |

| West End Financial Advisors LLC | |
|---|---|
| Consolidated List of Liabilities | |
| **Vendors** | **Liabilities** |
| **Unsecured Creditors** | |
| Abrams, Fensterman, Fensterman, etal | 5,000.00 |
| Active Irrigation, Inc. | 380.19 |
| Alliance Distributors & Services, LLC | 250.00 |
| American Express ( W. Landberg) | 82,666.68 |
| American Stock Exchange LLC | 216.75 |
| ATA Corporate Service, LLC | 450.00 |
| Atzlan, Lynn, CPA | 1,920.00 |
| Avenue Magazine | 1,000.00 |
| Becker, Glynn, Melamed & Muffly LLP | 288,668.27 |

| | | |
|---|---|---|
| Becker, Glynn, Melamed & Muffly LLP | | 4,293.00 |
| Broadview Networks | | 200.00 |
| Brecher, Daniel | | 1,826.32 |
| Canon Financial Services Inc | | 21,000.00 |
| Conte Consulting | | Unknown |
| Citrin Cooperman & Company | | 178,046.00 |
| City Market | | 195.19 |
| Clayman & Rosenberg | | 18,387.44 |
| CSC | | 284.00 |
| Data Mining Technologies | | 2,558.49 |
| Davis, Jonathan | | 25,219.16 |
| De Lange Landen | | 2,227.50 |
| Daylight Forensic & Advisory LLC | | 272,177.34 |
| Esseks, Hefter & Angel, LLP | | 10,265.32 |
| Federal Express | | 15.35 |
| Ferber, Chan, Essner & Coller, LLP | | 14,106.50 |
| Ford & Harrison LLP | | 1,865.50 |
| Guardian Service Industries, Inc. | | 587.66 |
| Heslin, Raymond | | Undetermined |
| Hoffman & Pollok LLP | | 50,433.34 |
| Imperial Credit Corporation | | 3,117.36 |
| Interactive Data Real-Time Services | | 38,529.84 |
| Interior Foliage Design, Inc. | | 514.80 |
| JG Graphics | | 82.37 |
| Johnson, Kenneth A. | | 277.96 |

| | | |
|---|---|---:|
| Kramer, Kevin | | 200,000.00 |
| Kramer, Kevin | | 2,500.00 |
| Live Office | | 3,125.00 |
| Marks, Paneth & Shron | | 97,500.00 |
| Moore, Thomas | | 50,000.00 |
| Pitney Bowes Global Financial Service LLC | | 4,560.74 |
| Pitney Bowes Purchase Power | | 572.50 |
| Poland Spring | | 348.37 |
| Risk Metrics Group | | 6,047.32 |
| Saul Ewing | | 1,760.00 |
| SeamlessWeb Professional Solutions, Inc. | | 1,448.63 |
| Seyfarth Shaw LLP | | 143,083.98 |
| Signature Bank | | 2,600,000.00 |
| Smallberg, Sorkin & Co. LLP | | 30,911.16 |
| Sonnenschein, Nath & Rosenthal, LLP | | 177,395.61 |
| Staples Business Adventage | | 2,600.74 |
| Superior Resource Printing & Graphics | | 1,257.15 |
| Tannenbaum, Helpern, Syracuse & Hirschtritt | | 87,803.25 |
| Thomson Financial LLC | | 9,083.00 |
| Time Warner Cable | | 4,804.35 |
| Town Clerk - Town of East Hampton | | 1,130.00 |
| Travelers | | 2,399.36 |
| United Corporate Services | | 1,835.00 |
| William O'Neil+Co. | | 6,250.00 |
| | $ | 4,463,178.49 |

| West End Financial Advisors LLC | | |
|---|---|---|
| Consolidated List of Liabilities | | |
| **Secured Loans** | | |
| Cap Lease Debt Funding LP | | 1,443,806.23 |
| DZ Bank | | 118,114,558.06 |
| Iberia Bank<br>3 Calf Creek & 5 Calf Creek<br>25 Whalers Lane | | 1,901,381.48 |
| Iberia Bank<br>West End Mortgage Finance Fund | | 5,000,000.00 |
| Iberia Bank<br>West End Mercury Short Term | | 4,397,521.76 |
| Norhtlight Financial LLC | | 5,300,000.00 |
| Signature Bank<br>New Riverhead<br>1074 Pulaski, 1074 Pulaski #2,<br>1044 Parkway, Kroemer Rte 25,<br>Roneck Ct. | | 4,439,917.85 |
| Suffolk County National Bank<br>Southwood Court Properties<br>15 Southwood Ct,<br>5 Southwood Ct, 6 Southwood Ct,<br>9 Southwood Ct, 411 Town Lane, | | 8,275,000.00 |
| West LB | | 40,980,286.00 |
| TOTAL | | **$189,852,471.38** |

Schedule 5
The Debtors have not issued any publicly traded securities.

Schedule 6
The Debtors are not aware of any of property held by another party.

Schedule 7

The Debtors lease fractionalized office space in a business center located at 410 Park Avenue, 15th Floor, New York, NY 10022, from which the Debtors operate their businesses.

Schedule 8

The Debtors lease fractionalized office space in a business center located at 410 Park Avenue, 15th Floor, New York, NY 10022, from which the Debtors operate their businesses. The Debtors also owns real property in the Hamptons, New York. The vast majority of the Debtors assets are Limited Partnership interests in properties and/or franchises located throughout the United States. The Debtors' books and records are located at 410 Park Avenue, 15th Floor, New York, NY 10022.

Schedule 9

Signature Bank v. West End Absolute Return Fund I, LP, William Landberg. Supreme Court of the State of New York, County of Nassau. Index No. 13841/09

Diamond Point Enterprises, LLC v. Mercury Capital U.S.A., LLC, West End/Mercury Short Term Mortgage Fund, LP and MCC Funding, LLC. Supreme Court of the State of New York, County of Kings. Index No. 28021/09

Florescue Family Foundation, Inc. v. West End Financial Management, LLC, West End/Mercury Short-Term Mortgage Fund, LP, West End Absolute Return Fund I, LP, West End Private Client Income Fund, LP, and Raymond J. Heslin. Court of Chancery, State of Delaware. No. 5351-VCN

Interactive Data v. West End Financial Advisors, LLC. Supreme Court of the State of New York, County of New York. Index No. 100071/10

Citrin Cooperman & Company, LLP v. West End Mercury Short Term Mortgage Fund, LP, West End Mortgage Finance Fund, LP, and NFA Equipment Funding I, LP. Supreme Court of the State of New York, County of New York. Index No. 111643/10.

Century Bank FSB a/k/a Century Bank F.S.B., a Florida Savings Bank v. 3 Calf Creek, LLC, Richard J. Gherardi, Benedek Development Corp., and "John Doe and Jane Doe," numbers 1 through 10. Supreme Court of the State of New York, County of Suffolk. Index No. 09/37791.

Securities and Exchange Commission v. William Landberg, Kevin Kramer, Steven Gould, Janis Barsuk, West End Financial Advisors LLC, West End Capital Management LLC, Sentinel Investment Management Corporation, Defendants and Louise Crandall and L/C Family Limited Partnership, Relief Defendants. United States District Court for the Southern District of New York. Index No. 1:11 Civ. No. 00404-PKC

Clayman & Rosenberg LLP v. West End Financial Advisors LLP and Janis Barsuk, Civil Court of the New York City, County of New York, Index No. 66620/10

Iberia Bank v. Kevin Kramer; Kevin Kramer (Third Party Plaintiff) v. William Landberg, West End Mercury Short Term Mortgage Fund, LP and West End Financial Advisors (Third Party Defendants), Supreme Court of the State of New York, Count of New York. Index No. 650800/2010

Manhattan Media LLC v. West End Financial Advisors LLC, Civil Court of the New York City, County of New York, Index No. 34273/2009.

Amtad Property, Inc., (Petitioner-Landlord) against West End Special Opportunity Fund, LP, 70 East 55th Street, 17th floor, New York, NY 10022, (Respondent-Tenant)

The Debtors' are involved in miscellaneous foreclosure actions which will be provided upon request to the Debtors.

Raymond J. Heslin: Prior to joining the Funds in the first quarter of 2009, Raymond Heslin was a senior equity partner at SNR Denton, an international law firm with 1,800 lawyers and offices in the United States and throughout the world. Previously, Raymond Heslin was the managing partner of Gold, Farrell & Marks, LLP, a litigation boutique that had previously merged into SNR Denton. Mr. Heslin has held positions as Chair of the General Litigation Section of the New York State Bar Association, Chair of the Cooperative and Condominium Committee of the New York County Lawyers Association and as a Member of the New York State Supreme Court, Appellate Division, First Department's Committee on Fee Disputes.

Currently Raymond J. Heslin holds the position of Managing Member and General Counsel of West End Financial Advisors, LLC, and holds the position of Managing Member, Manager, General Partner or Director in each of the above-captioned, debtors and debtors-in-possession.

Schedule 11
Payroll for March 2011

|  | Gross |
|---|---|
| Raymond Heslin | $38,750.00 |
| Other | $14,077.25 |
|  | $52,827.25 |

Schedule 12

| | |
|---|---|
| Salary, Payroll, Taxes and Benefits | 64,000 |
| Oxford Health Plans | 6,500 |
| Statutory Fees | 500 |
| IT Consultants | 1,300 |
| Office Expense | 1,000 |
| Telephone | 830 |
| Travel & Meals | 1,000 |
| Northlight Interest | 72,500 |
| Miscellaneous | 1,000 |
| Hedge Fund Insurance | 3,750 |
| Rent and Overhead - | |
| 1. Rent - 410 Park Avenue | 9,500 |
| 2. Canon Financial | 400.67 |
| Navisite & MBC | 835 |
| American General Life Co. | 3,500 |
| D & O Insurance | 3,275 |
| Champion Courier, Inc. | 50 |
| The Time Record Storage Co. | 45 |
| Federal Express | 75 |
| Total | $170,061 |

In re:   **WEST END FINANCIAL ADVISORS, LLC**

Case No._____

Debtor

Chapter  **11**_____

# VERIFICATION OF CREDITOR MATRIX

The above named debtor(s), or debtor's attorney if applicable, do hereby certify under penalty of perjury that the attached Master Mailing List of creditors,  consisting of  sheet(s) is complete, correct and consistent with the debtor's schedules pursuant to Local Bankruptcy Rules and I/we assume all responsibility for errors and omissions.

Dated:   **3/15/11**_____

Signed:_____
RAYMOND J. HESLIN

Signed:_____
A. MITCHELL GREENE
Attorney for Debtor(s)
Bar no.:
ROBINSON BROG LEINWAND GREENE ET AL.
875 THIRD AVENUE
9TH FLOOR
NEW YORK, NY
10022
Telephone No.:   **212-603-6300**
Fax No.:
E-mail address:   **AMG@ROBINSONBROG.COM**

LIVE OFFICE
2780 SKYPARK DRIVE
SUITE 300
TORRANCE, CA 90505

SEAMLESSWEB PROFESSIONAL SOLUTIONS, INC.
P.O. BOX 48098
NEWARK, NJ 07101-4898

GUARDIAN SERVICE INDUSTRIES, INC.
8005 EXPEDITE WAY
CHICAGO, IL 60695-0005

HESLIN, RAYMOND
333 EAST 66TH STREET
APT 3E
NEW YORK, NY 10021

HOFFMAN & POLLOK LLP
260 MADISON AVENUE
NEW YORK, NY 10016

IMPERIAL CREDIT CORPORATION
1001 WINSTEAD DRIVE
SUITE 500
CARY, NC  27513

INTERACTIVE DATA REAL-TIME SERVICES
P.O. BOX 98616
CHICAGO, IL 60693

INTERIOR FOLIAGE DESIGN, INC.
32-14 36TH AVENUE
LONG ISLAND CITY, NY 11106

FERBER, CHAN, ESSNER & COLLER, LLP
530 FIFTH AVENUE
NEW YORK, NY 10036-5101

JOHNSON, KENNETH A.
PO BOX 1771
BRIDGEHAMPTON, NY 11932

ESSEKS, HEFTER & ANGEL, LLP
108 EAST MAIN STREET
P.O. BOX 279
RIVERHEAD, NY 11901

MARKS, PANETH & SHRON
622 THIRD AVENUE
NEW YORK, NY 10017

MOORE, THOMAS
260 MADISON AVENUE
NEW YORK, NY 10016

PITNEY BOWES GLOBAL FINANCIAL SERVICE LLC
P.O. BOX 856460
LOUISVILLE, KY 40285-6460

POLAND SPRING
P.O. BOX 856192
LOUISVILLE, KY 40285-6192

```
SAUL EWING
CENTRE SQUARE WEST
1500 MARKET STREET, 38TH FL
PHILADELPHIA, PA 19102

JG GRAPHICS
5 NEWCASTLE COURT
RIVERHEAD, NY 11901-3202

CITRIN COOPERMAN & COMPANY
529 FIFTH AVENUE
NEW YORK, NY 10017

ABRAMS, FENSTERMAN, FENSTERMAN, ETAL
1111 MARCUS AVENUE,
SUITE 107
LAKE SUCCESS, NY 11042

ACTIVE IRRIGATION, INC.
PO BOX 34
WEST SAYVILLE, NY 11796

ALLIANCE DISTRIBUTORS & SERVICES, LLC
51 SYCAMORE DR.
EAST STROUDSBURG, PA 18301

ATA CORPORATE SERVICE, LLC
P.O. BOX 849
WILMINGTON, DE 19899

ATZLAN, LYNN, CPA
69-10 108 STREET
APT. 8C
FOREST HILLS, NY 11375

AVENUE MAGAZINE
237 WEST 35TH STREET
14TH FLOOR
NEW YORK, NY 10001

FORD & HARRISON LLP
P.O. BOX 101423
ATLANTA, GA 30392-1423

CANON FINANCIAL SERVICES INC
14904 COLLECTIONS CENTER DR
CHICAGO, IL 60693-0149

RISK METRICS GROUP
2099 GAITHER ROAD SUITE #501
ROCKVILLE, MD 20850

CITY MARKET
551 MADISON AVENUE
NEW YORK, NY 10022

CLAYMAN & ROSENBERG
305 MADISON AVENUE
SUITE 1301
NEW YORK, NY 10165

CSC
```

2711 CENTERVILLE RD
WILMINGTON, DE 19808

DATA MINING TECHNOLOGIES
25 REDAN DRIVE
SMITHTOWN, NY 11787

DAVIS, JONATHAN
99 PARK AVENUE, 16TH FLOOR
NEW YORK, NY 10016-1503

DE LANGE LANDEN
PO BOX 41602
PHILA, PA 19101-1602

DAYLIGHT FORENSIC & ADVISORY LLC
1 ROCKEFELLER PLAZA
NEW YORK, NY 10020

BROADVIEW NETWORKS
PO BOX 9259
UNIONDALE, NY 11555

SIGNATURE BANK
565 FIFTH AVENUE
NEW YORK, NY 10017

SEYFARTH SHAW LLP
131 S. DEARBORN STREET
SUITE 2400
CHICAGO, IL 60603

PITNEY BOWES PURCHASE POWER
PO BOX 856042
LOUISVILLE, KY 40285-6042

CAP LEASE DEBT FUNDING LP
1065 AVENUE OF THE AMERICAS
19TH FL
NEW YORK, NY 10036

DZ BANK
609 FIFTH AVENUE
NEW YORK, NY 10017

IBERIA BANK
PO BOX 12440
NEW IBERIA, LA 70562-2440

IBERIA BANK
 PO BOX 12440
NEW IBERIA, LA 70562-2440

NORHTLIGHT FINANCIAL LLC
24 WEST 40TH STREET
12TH FL
NEW YORK, NY 10018

SUFFOLK COUNTY NATIONAL BANK
PO BOX 9000
RIVERHEAD, NY 11901-9000

WEST LB

1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

IBERIA BANK
PO BOX 12440
NEW IBERIA, LA 70562-2440

TRAVELERS
C/O KINGSBROOK BROKERAGE
32 BROADWAY, STE 214
NEW YORK, NY 10004

SUPERIOR RESOURCE PRINTING & GRAPHICS
255 WEST 36TH STREET SUITE 202
NEW YORK, NY 10018

STAPLES BUSINESS ADVENTAGE
DEPT NY
PO BOX 415256
BOSTON, MA 02241-5256

SONNENSCHEIN, NATH & ROSENTHAL, LLP
1221 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

TANNENBAUM, HELPERN, SYRACUSE & HIRSCHTRITT
900 THIRD AVENUE
NEW YORK, NY 10022

TOWN CLERK - TOWN OF EAST HAMPTON
159 PANTIGO RD
EAST HAMPTON, NY 11937

TIME WARNER CABLE
5120 BROADWAY 2ND FLOOR
ATTN: SUZANNE GRESICK
NEW YORK, NY 10034

WILLIAM O'NEIL+CO.
12655 BEATRICE STREET
LOS ANGELES, CA 90066

SIGNATURE BANK
565 FIFTH AVENUE
NEW YORK, NY 10017

SMALLBERG, SORKIN & CO. LLP
450 SEVENTH AVE, SUITE 2710
NEW YORK, NY 10123

BRECHER, DANIEL
99 PARK AVENUE, 16TH FLOOR
NEW YORK, NY 10016

KRAMER, KEVIN
12 MOZART DR
WILMINGTON, DE 19807

BECKER, GLYNN, MELAMED & MUFFLY LLP
299 PARK AVENUE
NEW YORK, NY 10171

THOMSON FINANCIAL LLC

P.O. BOX 5136
CAROL STREAM, IL 60197-5136

AMERICAN EXPRESS
P.O. BOX 360002
FT. LAUDERDALE, FL 33336-0002

BECKER, GLYNN, MELAMED & MUFFLY LLP
299 PARK AVENUE
NEW YORK, NY 10171

KRAMER, KEVIN
12 MOZART DR
WILMINGTON, DE 19807

MARK RADKE
C/O ARENT FOX
1675 BROADWAY
NEW YORK, NY 10019

WILLIAM LANDBERG
C/O MICHAEL SCHNER, ESQ.
26 BROADWAY, SUITE 2310
NEW YORK, NY 10004

KEVIN KRAMER
C/O SYNDEY PLATZER. PLATZER SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW, LLP
1065 AVENUE OF THE AMERICAS
NEW YORK, NY 10018

JANIS BARSUK
65 FLORAL TERRACE
TENAFLY, NJ 07671

LOUISE CRANDALL
C/O ANDREW G. CELLI, ESQ.
EMERY CELLI BRINCKERHOFF & ABADY, LLP
75 ROCKEFELLER PLAZA
20TH FLOOR
NEW YORK, NY 10019

STEVEN GOULD
C/O PAUL ROONEY, ESQ.
708 THIRD AVENUE
5TH FLOOR
NEW YORK, NY 10017

GEORGE S. CANELLOS, ESQ.
SECURITIES & EXCHANGE COMMISSION
3 WORLD FINANCIAL CENTER
ROOM 4300
NEW YORK, NY 10281

FEDERAL EXPRESS
PO BOX 371461
PITTSBURGH, PA 15250-7461

UNITED CORPORATE SERVICES
10 BANK STREET
WHITE PLAINS, NY 10606

CAPLEASE DEBT FUNDING LP
1065 AVENUE OF THE AMERICAS

NEW YORK, NY 10018

CONTE CONSULTING
311 EAST 71ST STREET
APT 5F
NEW YORK, NY 10021