**RBLGGG - DRAFT NOT REVIEWED OR APPROVED BY INDEPENDENT MONITOR APPOINTED PURSUANT TO AMENDED STIPULATION AND ORDER APPROVED BY DISTRICT COURT JUDGE CASTEL—NOT FOR DISTRIBUTION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re:

WEST END FINANCIAL
ADVISORS, LLC, et al.

                           **Debtors.**

------------------------------------------------------x

Chapter 11
Case No. 11-11152 through
11-11167 (SMB)
(Jointly Administered)

# JOINT PLAN OF LIQUIDATION OF WEST END FINANCIAL ADVISORS, LLC AND AFFILIATES

**ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.**
**Proposed Attorneys for the Debtors**
875 Third Avenue, 9th Floor
New York, New York 10022
212-603-6300

**Of Counsel:** A. Mitchell Greene, Esq.
**Of Counsel:** Robert R. Leinwand, Esq.

**Dated:** New York, New York
       May __, 2011

{00526730.DOC;5 }

The debtors and debtors in possession herein, **West End Financial Advisors.**

**LLC** and its jointly administered affiliates[1] (collectively, the "Debtors"), propose the following

plan of reorganization (the "Plan") for the substantively consolidated estates of the Debtors

pursuant to Sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following

meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in

this article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the

meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv)

pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the

feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective

section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or

other agreement or document being in a particular form or on particular terms and conditions, means

that such document shall be substantially in such form or substantially on such terms and conditions

except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or

to be filed means such document or exhibit, as it may have been or may be amended, modified or

supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of

---

1 The Debtors are the following entities: West End Financial Advisors LLC (Case No. 11-11152); Amagansett Realty SPV 1 LLC (Case No. 11-11167); Benedek Development Group, LLC (Case No. 11-11155); L/C Family Limited Partnership (Case No. 11-11157); Sentinel Investment Management Corp.(Case No. 11-11153); SIMCO SPV 1 LP (Case No. 11-11158); West End Absolute Return Fund I, LP (Case No. 11-11161); West End Capital Management LLC (Case No. 11-11154); West End Fixed Income Partners LP (Case No. 11-11159); West End Income Strategies Fund LP (Case No. 11-11160); West End Mortgage Finance Fund I LP (Case No. 11-11162); West End Private Client Fund L.P.(Case No. 11-11163); West End Real Estate Fund 1 LP (Case No. 11-11164); West End Special Opportunity Fund II, LP (Case No. 11-11166); West End Special Opportunity Fund, LP (Case No. 11-11165); West End/Mercury Short-Term Mortgage Fund, LP. (Case No. 11-11156).

2

similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1 **"Administrative Claim"** means a claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

1.2 **"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under Sections 503(b), 330 or 331 of the Bankruptcy Code.

1.3 **"Administrative Tax Claim"** means an Administrative Claim for a tax due to a Governmental Unit.

1.4 **"Adversary Proceedings"** means the adversary proceedings commenced by the Debtors in the Bankruptcy Court and pending on the Effective Date against the Redeemer Defendants pursuant to Bankruptcy Code §§ 544(b), 547(a), 548(a)(1), and 550 and Sections 273, 274, 275, and 276 of the New York Debtor and Creditor Law.

1.5 **"Allowed"** means, with reference to a Claim: (a) any Claim against the

Debtors that has been listed by the Debtors in the Schedules filed thereby as liquidated in an amount greater than zero dollars and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no timely objection has been interposed; (b) except as otherwise provided in the Plan, any Claim (including any Administrative Expense Claim that is not based upon Professional Fees) as to which a Proof of Claim has been timely filed by the applicable deadline and (i) no objection to the allowance thereof has been timely interposed on or before the Claims Objection Bar Date and (ii) such Claim has not (as applicable) been withdrawn, paid in full (pursuant to a prior order of the Bankruptcy Court or otherwise), or otherwise deemed satisfied in full; (c) any Claim as to which (i) any objection thereto or other motion to disallow, estimate, or expunge, in whole or in part, or (ii) any Adversary Proceeding against the holder thereof, was filed or commenced (as applicable) but is no longer pending and instead has been determined by a Final Order in favor of the respective Claim holder (but solely to the extent and amount such Claim has been so determined in the applicable Final Order), or any such objection, motion to disallow, estimate, or expunge, or Adversary Proceeding (as applicable) has been settled, waived through payment, or withdrawn; (d) any Claim that has otherwise been resolved, settled, or otherwise deemed allowed by a Final Order; (e) any Claim as to which, upon the lifting of the automatic stay pursuant to Bankruptcy Code § 362, the liability of a Debtor, allowance, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (f) any Claim that is expressly deemed an Allowed Claim under the Plan (in the Class and amount as set forth in the Plan). Unless otherwise ordered by the Bankruptcy Court prior to the entry of the Confirmation Order, or as specifically provided to the contrary in this Plan with respect to any particular Claim, an "Allowed" Claim shall not include (i) any interest on such Claim to the extent accruing or

4

maturing on or after the Petition Date, (ii) any punitive or exemplary damages, or (iii) any claims for any fine, penalty, or forfeiture. Nothing in this Plan shall prevent the Debtors from objecting to Claims after the Confirmation Date.

     1.6   **"Allowed Equity Interest"** means the equity interests in the substantively consolidated Debtors held by L/C Family Limited Partnership, a New York Limited Partnership.

     1.7   **"Avoidance Actions"** means all of the Debtors' and the Estates' remaining Causes of Action against Persons arising under any of Bankruptcy Code § 544, 545, 547, 548, 549, 550, 553(b), or 724 or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and Causes of Action, whether or not litigation has been commenced as of the Effective Date to prosecute any such Avoidance Actions.

     1.8   **"Bankruptcy Causes of Action"** means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims (including, but not limited to, Director and Officer Actions, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions held by any of the Debtors, the Debtors in Possession, and/or the Post Confirmation Estate that are or may be pending on the Effective Date or instituted by the Plan Administrator, on behalf of the Post Confirmation Estate, after the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

1.9 **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.10 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to Section 157(d) of title 28 of the United States Code.

1.11 **"Bankruptcy Fees"** mean all fees and charges assessed against the estate under Section 1930 of title 28 of the United States Code.

1.12 **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.13 **"Bar Date"** means _____, 2011, the date fixed by Order of the Bankruptcy Court subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

1.14 **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.15 **"Case"** means the substantially consolidated case commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled In re West End Financial Advisors, LLC, Case No-11-11152 (SMB), Jointly Administered, currently pending before the Bankruptcy Court.

1.16 **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

6

1.17    **"Chapter 11 Cases"** means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled <u>West End Financial Advisors, LLC,</u> Case No-11-11152 (SMB), jointly administered and as substantively consolidated, and currently pending before the Bankruptcy Court.

1.18    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

1.19    **"Confirmation"** means the entry of the Confirmation Order.

1.20    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.21    **"Confirmation Order"** means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtors.

1.22    **"Creditor"** means a holder of an Allowed Claim.

1.23    **"Cure Amount"** means any amount required, pursuant to Sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.24    **"Debtor"** means an individual debtor listed on Exhibit A annexed hereto, and, as the context requires, may refer to any individual debtor by name.

1.25    **"Debtors"** means, collectively, the Debtors whose Chapter 11 Cases were substantially consolidated under chapter 11 Case No. 11-11152 (SMB) by the Bankruptcy Court as listed in Exhibit A annexed hereto.

1.26    **"Director and Officer Action"** means any action or lawsuit against any of the Debtors' prepetition directors, officers and shareholders for acts or omissions occurring prior to the Petition

7

Date.

1.27 **"Disclosure Statement"** means the *Disclosure Statement for the Joint Plan of Liquidation of West End Financial Advisors and affiliates,* including all exhibits, attachments or amendments thereto, approved by the Bankruptcy Court.

1.28 **"Disputed"** means, with respect to any Claim or portion thereof which has not otherwise been or is not otherwise Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court,

    **a.**    if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors, either of the Litigation Trusts, or any other party-in-interest has either (1) interposed an objection, in whole or in part, or request for estimation, (2) filed a motion to disallow or expunge, in whole or in part, which has not been withdrawn or determined by a Final Order or otherwise resolved or settled by the parties thereto or (3) commenced an Adversary Proceeding or other Cause of Action against the holder of such Claim that has not yet been resolved, withdrawn, or settled; or

    **b.**    if a Proof of Claim has been filed by the applicable deadline: (i) a Claim for which a timely objection, in whole or in part, request for estimation, or motion to disallow or expunge, in whole or in part, is interposed which has not been withdrawn or determined by a Final Order of the Bankruptcy Court; or (ii) a Claim whose holder is a defendant in an Adversary Proceeding (including, without limitation, any Defendant) or other Cause of Action that has not yet been resolved, withdrawn, or settled; or

{00526730.DOC;5 }

c.    if a request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Debtors' books and records; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Debtors' books and records, but the nature or amount of the Claim as asserted in the request for payment varies from the nature or amount of such Claim as listed on the Debtors' books and records; or (iii) a Claim for which either (1) a timely objection, in whole or in part, or request for estimation or (2) a motion to disallow or expunge, in whole or in part, or an Adversary Proceeding is interposed against the holder of such Claim which has not been withdrawn or determined by a Final Order of the Bankruptcy Court or otherwise resolved or settled by the parties thereto.

1.29   **"Disputed Claim Reserve"** means the segregated account or accounts established by the Plan Administrator pursuant to Section 8.7 of the Plan and the Post Confirmation Estate Agreement.

1.30   **"Distribution Date"** means the Effective Date, or as soon as practicable thereafter as determined by the Debtors or the Plan Administrator, as applicable, in their sole discretion, or otherwise required under the Plan.

1.31   **"DZ Bank"** means DZ Bank AG Deutsche Zentral-Genossenschjaftsbank, Frankfurt Am Main, New York Branch

1.32   **"Effective Date"** means the first Business Day after the Confirmation Order.

1.33   **"Entity"** means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a Governmental Unit or any subdivision thereof or any other entity.

9

1.34 **"Estates"** means the estates created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

1.35 **"Executory Contract"** means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

1.36 **"Defendant"** means any Redeemer Defendant, Adversary Proceeding Defendant, or any other Investor or Person that is or becomes a defendant in an Adversary Proceeding or other Cause of Action commenced by the Debtors, the Creditors Committee on behalf of the Estates or Post Confirmation Estate (as the case may be) that has not been resolved, withdrawn, or settled.

1.37 **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.38 **"Governmental Unit"** means an Entity that is a "governmental unit" as defined in 11 U.S.C. § 101(27).

1.39 **"Investor Creditors"** means those Investors who (a) have not received or retained Redemption Payment(s) in an aggregate amount equal to or greater than their Investment from any of the West End Funds, and (b) (i) have asserted a claim against the West End Funds in connection with their Investment and/or (ii) have otherwise asserted a Claim for the amount of their respective Investments in the West End Funds.

10

1.40. **"Investor Creditor Unsecured Claim"** means and includes, unless otherwise specified in this Plan, (1) any and all Claims of an Investor Creditor against one or more of the Debtors, including (i) any and all Claims of the Investor Creditors for the unredeemed amount (which shall include any redeemed but returned amount that has been allowed pursuant to a stipulation approved by the Bankruptcy Court) of their respective Investments in the West End Funds or otherwise; and (ii) any and all Claims of any Defendants in Adversary Proceedings or other Causes of Action that are resolved, settled, or otherwise withdrawn and who thus have become Investor Creditors, in each instance solely in an amount and to the extent so resolved or settled; and (2) any and all Contingent Defendant Claims, to the extent such Claim must be subordinated to Non-Investor General Unsecured Claims pursuant to Bankruptcy Code §510(b), that, in each instance are not (A) Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, or Non-Investor General Unsecured Claims, and (B) otherwise entitled to distributive priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court.

1.41 **"Investors"** means, collectively, those Persons who made an investment in the West End Funds, including the Investor Creditors and the Redeemer Defendants.

1.42 **"Interest"** means an equity interest in any of the Debtors.

1.43 **"Interest Holder"** means the holder of an Allowed Interest in any of the Debtors.

1.44 **"Investors"** means, collectively, those Persons who made an investment in the West End Funds, including the Investor Creditors, the holders of RADs and the Redeemer Defendants.

1.45    **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.46    **"L/C Family Limited Partnership"** means a New York Limited Partnership in which William Landsberg or an entity he controls is the general partner and one (1%) percent owner of such entity and Louise Crandall is the limited partner and ninety-nine (99%) owner of such entity.

1.47    **"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.48    **Non-Investor General Unsecured Claim** means, unless otherwise specified in this Plan, all Claims against one or more of the Debtors (including (i) any and all Rejection Claims, (ii) any Claims of Vendors, and (iii) Fees, that, in each case are (A) not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, or Investor Creditor Unsecured Claims, and (B) not otherwise entitled to distributive priority under the Bankruptcy Code or an order of the Bankruptcy Court.  Except as may otherwise be set forth in the Plan, for purposes of the Plan, the Redeemer Defendants, any other Defendant, and any Investor Creditor are not deemed to hold a Non-Investor General Unsecured Claim against any of the Debtors.

1.49    **"Northlight"** means Northlight Financial LLC.

1.50    **"Northlight Agreement"** means the Agreement by and between Northlight and the Debtors and/or the Plan Administrator, dated April __, 2011 regarding post-confirmation funding and related matters.

1.51    **"Person"** means a "person" as defined in 11 U.S.C. § 101(41).

12

1.52     **"Petition Date"** means March 15, 2011, the date on which the Debtors' Chapter 11 Cases were commenced by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

1.53     **"Plan"** means this *Joint Plan of Liquidation,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.54     **"Plan Administrator"** means the person designated by the Debtors under the Post Confirmation Estate Agreement, as the employee or fiduciary responsible for, among other things, the matters described in Article 7 herein and in the Post Confirmation Estate Agreement. When the context requires, any reference to the Plan Administrator or the Post Confirmation Estate shall mean the Plan Administrator on behalf of the Post Confirmation Estate.

1.55     **"Post Confirmation Estate"** means the grantor trust to be created on the Effective Date in accordance with the provisions of Article 7 of the Plan and the Post Confirmation Estate Agreement, for the benefit of Holders of certain Allowed Claims.

1.56     **"Post Confirmation Estate Agreement"** means the trust agreement, substantially in the form annexed hereto, that documents the Post Confirmation Estate, describes the powers, duties and responsibilities of the Plan Administrator and the liquidation and distribution of proceeds of the Post Confirmation Estate Assets.

1.57     **"Post Confirmation Estate Assets"** means all assets of all of the Debtors' Estates (including without limitation, any and all rights to any insurance recoveries and any and all rights relating to insurance policies or proceeds thereof), all of which are being transferred under the Post-Confirmation Estate Agreement for distribution to holders of Allowed Claims and Allowed Interests.

13

1.58    **"Priority Claim"** means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority under Section 507 of the Bankruptcy Code.

1.59    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.60    **"Professional"** means any professional employed by the Debtors or a Committee under Section 327 of the Bankruptcy Code in the Debtors' chapter 11 case pursuant to a Final Order.

1.61    **"Professionals' Fees"** means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with Sections 330 and 331 of the Bankruptcy Code.

1.62    **"Proof of Claim"** means a proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.63    **"Proof of Interest"** means a proof of an Interest filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.64    **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.65    **"RAD"** means the Risk Adjusted Debt Instruments issued by West End Income Strategies Fund L.P. in accordance with a Confidential Private Offering Memorandum dated January 2008, constituting securities issued to accredited investors in accordance with the terms of such offering memorandum and evidencing investments in the substantively consolidated Debtors estates.

1.66 **"Redeemer Defendants"** means those Investors who received Redemption Payments from the West End Funds and are defendants in the Adversary Proceedings.

1.67 **"Redemption Payment(s)"** means the redemption payment(s) (either complete or partial) made by any of the West End Funds to an Investor prior to the Petition Date in connection with such Investors' Investment in any of the West End Funds.

1.68 **"Rejection Claims"** means all Claims arising as a result of a Debtor's rejection of an Executory Contract pursuant to Bankruptcy Code §§ 365 and 1123, subject to the limitations provided in Bankruptcy Code § 502(b), pursuant to this Plan or otherwise.

1.69 **"Reorganized Debtors"** means the Debtors from and after entry of the Confirmation Order.

1.70 **"Schedules"** mean the schedules of assets and liabilities and the *Statement of Financial Affairs* to be filed by the Debtors with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.71 **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estates have an interest or that is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.72 **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit.

{00526730.DOC;5 }

1.73 **"Subordinated Claims"** means all claims which are subordinate in priority to Administrative Claims, Secured Claims, Bankruptcy Fees, Priority Claims and Unsecured Claims under the provisions of the Bankruptcy Code or which have been subordinated to Unsecured Claims pursuant to section 510(c) of the Bankruptcy Code.

1.74 **"Unsecured Claim"** means an Allowed Claim that is not an Administrative Claim, a Bankruptcy Fee, a Priority Claim, a Secured Claim or a Subordinated Claim.

1.75 **"Unexpired Lease"** means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

1.76 **"Vendor"** means any Person who supplied or provided goods, supplies, parts, materials, other tangible objects, or services to any of the Debtors prior to the Petition Date.

1.77 **"West LB"** means WestLB AG, New York Branch.

1.78 **"West End Funds"** means, collectively, the substantively consolidated Debtors.

1.79 **"Other Definitions"** means, unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

16

**ARTICLE 2**

**TREATMENT OF UNCLASSIFIED CLAIMS**

Pursuant to Section 1123(a) (1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.1 **Administrative Expense Claims.** Except to the extent such holder has otherwise agreed to a different or less favorable treatment of its Allowed Claim, each holder of an Allowed Administrative Expense Claim shall receive from the Debtors, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, Cash equal to the Allowed amount of such Administrative Expense Claim either (a) on the Effective Date or (b) if the Administrative Expense Claim is not Allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order or a stipulation of amount and nature of such Administrative Expense Claim is executed by the Litigation Trust and the holder of the Administrative Expense Claim, including the Unofficial Committee Fees; provided, however, that any Allowed Administrative Expense Claim representing obligations incurred in the ordinary course during the pendency of these Cases, if any, shall be paid in accordance with the terms and conditions of the particular transactions and any agreements related thereto.

2.2 **Professionals' Fees.** All Persons seeking an award by the Bankruptcy Court of Professional Fees shall file their respective final applications for allowance of Professional Fees for services rendered and reimbursement of expenses incurred by the date that is ninety (90) days after the Confirmation Date, and shall receive from the Debtors, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such amount as are allowed by the Bankruptcy

17

Court by the Debtors (A) within thirty (30) days of the date upon which the order relating to any such Professional Fee Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such a Claim for Professional Fees and the Debtors and/or the Litigation Trust.

2.3    **Bankruptcy Fees.** All fees and charges assessed against the Debtors under Section 1930 of title 28 of the United States Code shall be paid by the Debtors, in Cash in full as required by statute and until the closing of this Case, the Debtors shall continue to be responsible for the payment of any such fees and charges.

2.4    **Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim, if any, shall receive from the Debtors, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, Cash equal to the amount of such Allowed Claim on the later of (a) the Effective Date and (b) the date that is 10 days after the Allowance Date, except to the extent such holder has agreed to a less favorable treatment of such Allowed Claim.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the West End Funds and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or to reject the Plan in accordance with Bankruptcy Code § 1126, or (iii) deemed to reject the Plan are thus not entitled to vote to accept or to reject the Plan pursuant to Bankruptcy Code § 1126:

| West End Funds | | | |
|---|---|---|---|
| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |

| | | | |
|---|---|---|---|
| Class 2(a) | DZ Bank Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 2(b) | West LB Bank Secured Claim | Unimpaired | Not Entitled to Vote |
| Class 2(c) | Northlight Secured Claim | Impaired | Entitled to Vote |
| | | | |
| Class 3 | Non-Investor General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Other Unsecured Claims | Impaired | Entitled to Vote |
| | | | |
| Class 5 | Equity Interests | Impaired | Deemed To Reject |

**3.1.** **Class 1 – Priority Non-Tax Claims.** Class 1 consists of all Allowed Priority Non-Tax Claims, if any, against any of the Debtors. Class 1 Claims shall be Allowed Claims as and to the extent set forth in Section 4.1(a), 4.2(a), or 4.3(a) hereof (as applicable).

**3.2.** **Class 2 – Secured Claims.**

(i) *Class 2(a) – DZ Bank Secured Claim.* Class 2(a) consists of the Allowed DZ Bank Secured Claim, if any, against all of the Debtors.

(ii) *Class 2(b) – West LB Bank Secured Claim.* Class 2(b) consists of the Allowed West LB Bank Secured Claim, if any, against all of the Debtors.

(iii) *Class 2(c) – Northlight Secured Claim.* Class 2(c) consists of the Allowed Northlight Secured Claim, if any, against all of the Debtors.

**3.3.** **Class 3 – Non-Investor General Unsecured Claims**. Class 3 consists of all Allowed Non-Investor General Unsecured Claims. Thus, Class 3 consists of all Allowed Claims of Vendors and any and all Rejection Claims against any of the Debtors, in each instance that are not otherwise classified in this Plan. Class 3 does not consist of any Claims of any of the Investor Creditors. Class 3 Claims shall be Allowed Claims as and to the extent set forth in Section 4.1(b), 4.2(b), or 4.3(b) hereof (as applicable).

**3.4.** **Class 4 – Other Unsecured Claims**. Class 4 consists of all Allowed

19

Investor Creditor Unsecured Claims. With respect to any Defendant whose Adversary Proceeding or other Cause of Action is resolved, settled, or determined by a Final Order of the Bankruptcy Court, such Person shall have an Allowed Class 4 Claim solely in an amount and to the extent such Adversary Proceeding or other Cause of Action has been so resolved, settled, or determined. Class 4 does not consist of any Claims of Vendors or Rejection Claims, or any other Non-Investor General Unsecured Claims (if any). Except as otherwise set forth in this Plan or any other order of the Bankruptcy Court, Class 4 Claims shall be Allowed Claims as and to the extent set forth in Sections 4.1(c), 4.2(c), or 4.3(c) hereof (as applicable).

3.5. **Class 5 – Equity Interests**. Class 5 consists of all Equity Interests in any of the Debtors. Class 5 Equity Interests shall be treated solely as and to the limited extent set forth in Section 4.1(d), 4.2(d), or 4.3(d) hereof (as applicable).

## ARTICLE 4.

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1.** Treatment of Claims and Equity Interests Against the West End Funds.

a. **Class 1 – Priority Non-Tax Claims**. If not paid in full pursuant to a Final Order of the Bankruptcy Court prior to the Confirmation Date, and except to the extent such holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Priority Non-Tax Claim, if any, against any of the West End Funds shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, Cash equal to the amount of such Allowed Claim on the later of (a) the Effective Date and (b) the date that is 10 days after the Allowance Date.

b. **Class 2 – Secured Claims**

20

(i) **Class 2(a) - <u>DZ Bank Secured Claim</u>.** DZ Bank shall retain its lien securing its Allowed Class 2(a) secured claim with the same priority as existed on the Petition Date and the Plan shall not alter the legal, equitable, and contractual rights to which such claim was entitled to as of the Petition Date and DZ Bank shall receive payments of principal and interest from the Plan Administrator in accordance with the DZ Bank Loan and Security Agreement until such claim is paid in full.

(ii) **Class 2(b) - <u>West LB Secured Claim</u>.** West LB shall retain its lien securing its Allowed Class 2(b) secured claim with the same priority as existed on the Petition Date and the Plan shall not alter the legal, equitable, and contractual rights to which such claim was entitled to as of the Petition Date and West LB shall receive payments of principal and interest from the Plan Administrator in accordance with the West LB Loan and Security Agreement until such claim is paid in full.

(iii)     **<u>Class 2(c) - Northlight Secured Claim</u>.**: Northlight shall retain its lien securing its Allowed Class 2(c) secured claim with the same priority as existed on the Petition Date and the Plan shall not alter the legal, equitable, and contractual rights to which such claim was entitled to as of the Petition Date <u>except that</u> the maturity date of the Northlight Secured Claim shall be extended for an additional eighteen (18) months and Northlight shall receive payments of principal and interest from the Plan Administrator in accordance with the Northlight Loan and Security Agreement until such claim is paid in full.

b.     **<u>Class 3 – Non-Investor General Unsecured Claims</u>**. Except to the

{00526730.DOC;5 }

extent a holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Non-Investor General Unsecured Claim against any of the West End Funds, if any, shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such holder's Pro Rata Share of the Cash distributed by the Post Confirmation Estate in the time and manner set forth in this Plan and the Post Confirmation Estate Agreement, until such Allowed Claim is paid in full.

      c.     **Class 4 – Other Unsecured Claims**. Subject to the payment in full of, or reserve for, all Allowed Non-Investor General Unsecured Claims against any of the West End Funds, and except to the extent such holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Investor Creditor Unsecured Claim against any of the West End Funds shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such holder's Pro Rata Share of the Cash distributed by the Post Confirmation Estate in the time and manner as set forth in this Plan and the Post Confirmation Estate Agreement, subject to the amounts placed in reserve pursuant to the terms of the Post Confirmation Estate Agreement in the manner set forth therein. However, no distributions shall be made to holders of Allowed Investor Creditor Unsecured Claims against any of the West End Funds until all holders of Allowed Non-Investor General Unsecured Claims (if any) against any of the West End Funds have been reserved for or paid, in full, in the manner set forth in Section 4.1(b) hereof.

      d.     **Class 5 – Equity Interests**. Except as otherwise provided in the Plan, on the Effective Date, all outstanding Equity Interests in any of the West End Funds shall be

22

canceled and deemed terminated and of no force and effect and the Holders of such Equity Interests shall not be entitled to retain or receive any property on account of such Equity Interest.

## ARTICLE 5

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Assumption and Assignments of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party, which have not previously been assumed or rejected pursuant to an order of the Bankruptcy Court, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code.

5.2     **Rejection Claims.**  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of any of the Debtors pursuant to Section 5.1 of the Plan shall be treated as Rejection Claims.

5.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Rejection Claim shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtors within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Confirmation Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtors or their successors or their respective properties.

## Article 6

23

## IMPLEMENTATION OF THE PLAN

6.1    **Cancellation of Intercompany Claims.** On the Effective Date, all claims by any of the Debtors against any of the other Debtors shall be extinguished.

6.2    **Establishment of the Post Confirmation Estate.** On the Effective Date, the Debtors, on their own behalf and on behalf of Holders of Allowed Claims, shall execute the Post Confirmation Estate Agreement and shall take all other steps necessary to establish the Post Confirmation Estate. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors shall assign and transfer to the Post Confirmation Estate all of the assets of the Debtors and their Estates (including without limitation all property of their estates, all rights as a trustee or debtor in possession to assert Bankruptcy Causes of Action, and all rights as a trustee or debtor in possession to assert a Director and Officer Action) and all of their right, title, and interest in and to all of the Post Confirmation Estate Assets, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. In connection with the transfer of these assets, including rights and causes of action (including Bankruptcy Causes of Action), any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post Confirmation Estate shall vest in the Post Confirmation Estate and its representatives, and the Debtors and the Post Confirmation Estate are authorized to take all necessary actions to effectuate the transfer of such privileges.

6.3    **Funding Expenses of the Post Confirmation Estate.** As more fully described in the Northlight Agreement and the Post-Confirmation Estate Agreement, any Cash in

the Post Confirmation Estate shall be applied <u>first</u>, to the fees, costs, expenses and liabilities of the Plan Administrator, and its professionals; <u>second</u>, to satisfy any other administrative and wind down expenses of the Post Confirmation Estate and the Debtors' estates; and third, to the distributions provided for pursuant to the Plan.

6.4 **Corporate Action.** Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' limited partners, members and shareholders or the Debtors' boards of managers, members or directors. The Debtors (and their boards of members, managers, or directors) shall dissolve or otherwise terminate their existence following the Effective Date and are authorized to liquidate and dissolve or terminate the existence of wholly-owned non-Debtor subsidiaries following the Effective Date.

6.5 **Preservation of Causes of Action**. (iv) The Debtors are currently investigating whether to pursue potential Bankruptcy Causes of Action against other Entities. The investigation has not been completed to date, and under the Plan, the Plan Administrator, on behalf of the Post Confirmation Estate, retains all rights on behalf of the Debtors and the Post Confirmation Estate to commence and pursue any and all Bankruptcy Causes of Action (under any theory of law or equity, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases) discovered in such an investigation (other than the claims exculpated under the Plan) to the extent the Plan Administrator, on behalf of the Post Confirmation Estate, deems appropriate, in accordance with and

25

subject to the terms of the Post Confirmation Estate Agreement. Potential Bankruptcy Causes of Action currently being investigated by the Debtors, which may but need not (if at all) be pursued by the Debtors prior to the Effective Date and by the Plan Administrator, on behalf of Post Confirmation Estate, after the Effective Date to the extent warranted, include, without limitation, the following Bankruptcy Causes of Action set forth below:

(a) Any lawsuits for, or in any way involving, the collection of accounts receivable or any matter related thereto;

(b) Any Directors and Officers Action;

(c) Any and all potential claims for prepetition breaches of fiduciary duty, negligent management and wasting of corporate assets and corporate opportunity and/or arising under the Debtors' directors and officers insurance policies against the Debtors' prepetition directors and officers, among others;

(d) Any and all potential claims against the prepetition members of the Debtors' boards of directors, boards of managers, boards of members, officers, managers, members, general partners, limited partners and/or shareholders, for acts or omissions occurring prior to the Petition Date, including, without limitation, the right to equitably subordinate claims held by such directors, officers, or shareholders pursuant to Section 510(c) of the Bankruptcy Code;

(e) Claims arising out of, and in connection with, the prepetition management, operation and/or reporting of financial and other information against all persons and entities having any responsibility with respect thereto, whether such claims are legal, equitable or statutory in nature;

(f) Claims to recover amounts improperly awarded to employees under the terms of any prepetition employment or change in control agreement;

(g) All violations against third parties with respect to prepetition violations of applicable federal or state securities laws;

(h) All claims or causes of action arising out of or that relate to

26

prepetition acquisitions or financings;

(i) All claims, counterclaims, cross-claims, third party claims, and affirmative defenses asserted or that could be asserted in any litigation involving the Debtors, whether arising before or after the Petition Date; and

(j) All claims or causes of action for credits; overpayments; overcharges; prepaid deposits and other amounts; adjustments; disgorgement rights; recoupment; setoffs; and other rights to payment from those Entities who have received payments or other transfers of property of the Estate during the course of the Chapter 11 Cases.

(b) In addition, potential Bankruptcy Causes of Action which may be pursued by the Debtors prior to the Effective Date and by the Plan Administrator, on behalf of the Post Confirmation Estate after the Effective Date, also include, without limitation the following:

(i) Any other actual or potential Bankruptcy Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses or operations, including, without limitation, the following possible claims against vendors, landlords, sublessees, assignees, customers or suppliers for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections /accounts receivable matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other entity; employee, management or operational matters; claims against landlords, sublessees and assignees arising from various leases, subleases and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance and other similar charges; financial reporting; actions against insurance carriers relating to coverage, indemnity or other matters; counterclaims and defenses relating to notes or other obligations; contract or tort claims which may exist or subsequently arise; and

(ii) Except for the express waiver of certain claims in the Plan, any and all actual or potential avoidance claims pursuant to any applicable section of the Bankruptcy Code, including, without limitation Sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, arising from any transaction involving or concerning the Debtors.

(a) The Debtors are currently investigating whether Director and Officer Actions should be pursued to recover from certain of the Debtors' directors and officers for acts or omissions,

27

including breaches of fiduciary duty, negligent management and wasting of corporate assets and corporate opportunity and/or arising under the Debtors' directors and officers insurance policies. The investigation although far along has not been completed to date, and under this Plan and the Post Confirmation Estate Agreement, the Plan Administrator shall have primary responsibility with respect to any such Director and Officer Action.

(b)     In addition, there may be numerous other Bankruptcy Causes of Action which currently exist or may subsequently arise that are not set forth herein because the facts upon which such Bankruptcy Causes of Action are based are not fully or currently known by the Debtors, and, as a result, cannot be raised during the pendency of the Chapter 11 Cases (collectively, the "Unknown Causes of Action"). The failure to list any such Unknown Cause of Action herein is not intended to limit the rights of the Plan Administrator, on behalf of the Post Confirmation Estate, to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action become fully known to the Debtors.

(c)     The potential net proceeds from the Bankruptcy Causes of Action identified herein or which may subsequently arise or be pursued, are presently speculative and uncertain and therefore no value has been assigned to such recoveries. The Debtors and the Plan Administrator do not intend, and it should not be assumed that because any existing or potential Bankruptcy Causes of Action have not yet been pursued or are not set forth herein have been waived.

(d)     Unless Bankruptcy Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or any Final Order, this Plan expressly reserves all Bankruptcy Causes of Action and Unknown Causes of Action, including the

28

Bankruptcy Causes of Action described herein, as well as any other Bankruptcy Causes of Action or Unknown Causes of Action, for later adjudication, and therefore no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such actions upon or after the confirmation or consummation of the Plan. In addition, this Plan expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, including the lawsuits described herein and in the List of Retained Bankruptcy Causes of Action, against any Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

  (e)  Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Bankruptcy Causes of Action that the respective Debtors or the Post Confirmation Estate may hold against any Entity, including but not limited to those Bankruptcy Causes of Action listed herein shall vest in the Post Confirmation Estate, and the Plan Administrator, on behalf of the Post Confirmation Estate, shall retain and may exclusively enforce, as the authorized representative of the Post Confirmation Estate, any and all such claims, rights, or Bankruptcy Causes of Action, as appropriate, in accordance with the best interests of the Post Confirmation Estate and the Holders of Allowed Claims entitled to distributions under the Plan, and the terms of the Post Confirmation Estate Agreement. The Plan Administrator, on behalf of the Post Confirmation Estate, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights,

and Bankruptcy Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court or any other court except as otherwise provided in the Post Confirmation Estate Agreement.

(f)     The Debtors have preserved and continue to reserve their rights to contest the validity, priority, extent and amount of any asserted liens and security interests of any Holder of secured Claims in Assets, including without limitation, security deposits; letter of credit or bond proceeds; Cash and equivalents; contracts; and securities.

6.6     **Cancellation of Notes, Instruments, Debentures and Equity securities.** On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and all Interests in any of the Debtors shall be canceled and deemed terminated and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for a cancellation to the appropriate indenture trustee or other such person), except for purposes of distribution in accordance with the terms of this Plan.  On the Effective Date, the indentures shall be deemed canceled as permitted by Section 1123(a)(5) of the Bankruptcy Code.

6.7     **Reserves.** Any reserves maintained by the Debtors or the Plan Administrator, as the case may be, in connection with the distribution of funds on account of Allowed Claims, may be maintained by bookkeeping entries alone; the Debtors or the Plan Administrator, as the case may be, need not (but may) establish separate bank accounts for such purposes.

6.8     **Termination of Post Confirmation Estate**. The Post Confirmation Estate

{00526730.DOC;5 }

will terminate no later than the tenth (10th) anniversary of the Effective Date; provided, however, that, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Post Confirmation Estate for a finite period, if such extension is necessary for the liquidation of the Post Confirmation Estate Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least six (6) months prior to the expiration of each extended term; provided, however, that the Plan Administrator receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Post Confirmation Estate as a grantor trust for federal income tax purposes.

6.9     **Termination of Plan Administrator**. The duties, responsibilities and powers of the Plan Administrator shall terminate in accordance with the terms of the Post Confirmation Estate Agreement.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1     **Plan Administrator.** The Plan Administrator shall distribute all Cash or other property to be distributed under the Plan through and in accordance with the terms and conditions set forth in the Post Confirmation Estate Agreement. The powers and duties of the Plan Administrator and its compensation shall be governed by the Post-Confirmation Estate Agreement. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtors of unclaimed distributions pursuant to Section 7.12 of the Plan), the Plan

{00526730.DOC;5 }

Administrator shall be deemed to be an officer of the Debtors with full authority to sign checks on any bank account of the Debtors to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2 **Timing of Distributions Under the Plan.** Subject to Sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim or (iii) such other times provided in the Plan.

7.3 **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4 **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) 90 days after the Effective Date or (ii) 90 days after the date proof of such Claim or Interest is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

7.5 **Prosecution of Objections.** After the Confirmation Date, only the Debtors and the Plan Administrator shall have authority to file, settle, compromise, withdraw or litigate to

32

judgment objections to Disputed Claims. The Debtors and the Plan Administrator shall have the right to litigate to judgment, settle or withdraw any objection to any Claim or Interest.

7.6     **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7     **Distributions After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Plan Administrator shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.8     **Distribution After Disallowance.** Subject to Section 8.7 of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall revert to the Debtors.

7.9     **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a) Notwithstanding any other provision of the Plan, no Creditor, that holds a note or other instrument evidencing such Creditor's Unsecured Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Plan Administrator at the sole cost and expense of such Creditor.

(b)     Any Cash or property to be distributed pursuant to the Plan on account of any

33

such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to Section 7.11 of the Plan.

(c)     In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against the Debtors that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Plan Administrator, in a form acceptable to the Plan Administrator: (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Plan Administrator and all other Entities deemed appropriate by the Plan Administrator from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(d)     All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Debtors nor the Plan Administrator shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

7.10     **Delivery of Distributions.**  Except as provided in Sections 8.11, 8.12 and 8.13 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Plan Administrator has not received a written notice of a change of address.

34

7.11 **Undeliverable Distributions.**

(a) If the distribution to the holder of any Claim or Interest is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.12 of the Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.12 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Plan Administrator shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in the Plan shall require the Debtors or the Plan Administrator to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

7.12 **Unclaimed Distributions.** Any Cash or other property to be distributed under the Plan shall revert to the Post-Confirmation Estate if it is not claimed by the Entity entitled thereto before the later of (i) one year after the Effective Date or (ii) one year after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

35

7.13 **Set-offs.** The Plan Administrator may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtors may hold against the holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claims, obligations, rights, causes of action and liabilities that the Debtors or the Plan Administrator has or may have against such holder.

7.14 **Estimation of Claims for Purposes of Distribution.** The Debtors or the Plan Administrator, as the case may be, for cause shown, shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property, that must be segregated or escrowed on account of any Disputed Claim. Any Creditors whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim or any other Entity or property if the Allowed Claim of such creditor, as determined in a Final Order, exceeds the amount segregated or escrowed for such claim.

7.15 **Allocation of Plan Distribution Between Principal and Interest**. To the extent applicable to a particular Claim, all distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

7.16 **Interest on Claims**. Except as otherwise expressly set forth in a Final

{00526730.DOC;5 }

Order of the Bankruptcy Court, pursuant to Bankruptcy Code § 726, as made applicable in these Cases pursuant to Bankruptcy Code § 1129, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

7.17 **Minimum Distributions**. No payment of Cash less than $100.00 shall be made by the Plan Administrator or the Debtors to any holder of a Claim. Any Post Confirmation Estate Assets or Cash of the Debtors which is undistributable in accordance with this Section shall be paid into the Bankruptcy Court, and the holders of Allowed Claims who will not receive a payment from the Post Confirmation Estate or the Debtors as a result of this Section 7.17 may seek a recovery therefrom of any such amount in accordance with any applicable bankruptcy laws, rules, or procedures.

## ARTICLE 8

### INJUNCTION AND EXCULPATION

8.1 **Injunction.** Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, or interests in, the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the Estates which is to be transferred to Post Confirmation Estate or distributed to creditors under this Plan.

{00526730.DOC;5 }

8.2 **Limitation of Liability.** Neither the Debtors, or its professionals, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Case or the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 8.2 shall limit the liability of the Debtors' or its professionals pursuant to DR 6-102 of the Code of Professional Responsibility.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1 **Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2 **Compliance with Tax Requirements.** In connection with the Plan, the Debtors and, where applicable the Plan Administrator, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *providing, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

38

9.3 **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4 **Amendments.** The Plan may be altered, amended or modified by the Debtors, in writing, signed by the Debtors, at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.5 **Revocation.** The Debtors may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors; or (ii) prejudice in any manner the rights of the Debtors or any other party in any further proceedings involving the Debtors or their Estates.

9.6 **Request for Relief Under Section 1129(b).** If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtors may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

3.2 **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtors may file with the Court such agreements and other

{00526730.DOC;5 }

documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtors shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree. The Debtors shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.7 **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.8 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.9 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.10 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtors at Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 875 Third Avenue, 9th Floor, New York, New York 10022, Attn: A. Mitchell Greene, Esq.;

(b) if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any

related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Plan Administrator has not received a written notice of a change of address.

(c)     if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.11    **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York. without giving effect to the principles of conflict of laws thereof.

9.12    **Other Actions.**  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.13    **Severability.**  In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.14    **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 10

### RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

41

(a)     Insure that the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel any of the Debtors, the Plan Administrator and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)     Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which any of the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)     Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(g)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions (including, but not limited to any injunction with respect to Guaranty Claims), and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

(h)     To determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Plan Administrator or the Post Confirmation Estate after the Effective Date including but not limited to all claims and causes of action preserved for the Estates under Section 7.7 of this Plan; provided, however, that the Plan Administrator and the Post Confirmation Estate shall reserve the right to commence collection actions, actions to recover receivables and other similar actions in all appropriate jurisdictions;

{00526730.DOC;5 }

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(j)    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)    To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(p)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(q)    To hear and determine any matters that may arise in connection with any sales of assets approved by the Bankruptcy Court prior to the Confirmation Date or any order of the Bankruptcy Court with respect thereto; and

(r)    Enter an Order or Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order, the

{00526730.DOC;5 }

Post-Confirmation Estate Agreement and any final decree, including, without limitation, the enforcement of any rights of the Debtors.

## ARTICLE 11

### CONDITION TO CONFIRMATION HEARING AND EFFECTIVE DATE.

**11.1    Condition Precedent to Confirmation Hearing.**

Unless the following conditions are either satisfied or waived by the Debtors, the Plan shall not be confirmed:

(a)    **Confirmation Order.**    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors.

(b)    **Substantive Consolidation.** The Bankruptcy Court shall have entered a Final Order providing for the substantive consolidation of the Debtors' estates, which provides for, *inter alia,* that the assets and liabilities of the Debtors shall be pooled and all claims shall be satisfied from the assets of a single consolidated estate. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under the Plan only with respect to such single Claim.

12.2    **Condition Precedent to Effectiveness**. The Plan shall not become effective unless and until it has been confirmed and the following condition has been satisfied in full or jointly waived in writing executed by the Debtor and Eastern and filed with this Court:

(a). The approval of the Plan by the Independent Monitor pursuant to the Amended Stipulation and order dated February 10, 2011 entered by Judge P. Kevin Castel 1:11-cv-00404-PKC.

(b) The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

(c) The Northlight Agreement has been fully executed and, to the extent necessary, approved by the Bankruptcy Court.

12.3 **Failure of Conditions to Confirmation.** In the event that the conditions precedent to the Confirmation Date set forth in this article 12 have not been satisfied or waived in writing by the Debtor, on or before the Confirmation Date, upon the filing with the Bankruptcy Court of written notice, signed by the Debtor, the Plan shall be deemed to be withdrawn without further Order of the Bankruptcy Court, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against, or any Interest in, the Debtor or the Released Entities; or (ii) constitute a waiver or release of any claims of the Debtor or its Estate against any Entity.

12.4 **Failure of Conditions to Effective Date.** In the event that the condition precedent to the Effective Date set forth in this article 12 have not been satisfied or waived in writing by the Debtor on or before the Effective Date, upon the filing with the Bankruptcy Court of written notice, signed by the Debtor, the Plan shall be deemed to be withdrawn without further Order of the Bankruptcy Court, the Plan shall be null and void, the Confirmation Order shall be vacated, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against, or any Interest in, the Debtor or the Released Entities; or (ii) constitute a waiver or release of any claims of the Debtor or its Estate against any Entity.

{00526730.DOC;5 }

# ARTICLE 13

## CLOSING THE CASE

13.1    **Substantial Consummation.** Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtors, their property and their Creditors shall be subject to further Orders of the Bankruptcy Court.

13.2    **Closing the Case.** Upon the Substantial Consummation of the Plan, the Debtors shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**DATED:**  New York, New York
May ___, 2011

Amagansett Realty SPV 1 LLC
Benedek Development Group, LLC
L/C Family Limited Partnership
Sentinel Investment Management Corp.
SIMCO SPV 1 LP
West End Absolute Return Fund I, LP
West End Capital Management LLC
West End Financial Advisors, LLC
West End Fixed Income Partners LP
West End Income Strategies Fund LP
West End Mortgage Finance Fund I LP
West End Private Client Fund L.P.
West End Real Estate Fund 1 LP
West End Special Opportunity Fund II, LP
West End Special Opportunity Fund, LP
West End/Mercury Short-Term Mortgage Fund, LP


By:_____
    **Raymond J. Heslin, Managing Member,**
    **General partner and Director**

46