**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
In re: : Chapter 11
:
WEST END FINANCIAL :
ADVISORS, LLC, *et al.*, : Case No. 11-11152 (SMB)
:
Debtors. : Substantively Consolidated
:
---------------------------------------------------------x

**THIRD INTERIM CONSENT ORDER *NUNC PRO TUNC* TO AUGUST 1, 2011**
**(I) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE**
**AUTOMATIC STAY AND (IV) GRANTING RELATED RELIEF**

THIS MATTER having come before the Court upon presentment by West End Financial

Advisors, LLC and its affiliated debtors and debtors-in-possession (the "Debtors") in the above-

captioned chapter 11 cases (the "Cases"), seeking entry of an order pursuant to sections 105, 361,

362, 363, and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended,

the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the

Southern District of New York:

(a) authorizing the Debtors to use Cash Collateral (as defined herein) during the Cash
Collateral Period (as defined herein) in accordance with the expenditures budget attached
hereto as Exhibit A (the "Budget");

(b) providing Northlight Fund LP (the "Lender") adequate protection for any diminution
in value of its interest in the Collateral (as defined herein) and the Cash Collateral;

(c) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy
Code to the extent necessary to implement and effectuate the terms and provisions of this
Order; and

(d) granting related relief; and

the Court having considered the relief requested; and it appearing that the Court has jurisdiction to grant the relief requested in accordance with 28 U.S.C. §§ 157 and 1334; and the Official Committee of Unsecured Creditors and Northlight Fund, LP having consented to relief requested; and it appearing to the Court that granting the relief requested is necessary and appropriate and in the best interests of the Debtors, their estates, and their creditors, and good and sufficient cause appearing therefor;

NOW, THEREFORE, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

 A. <u>Petition Date</u>.  On March 15, 2011 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court (the "<u>Court</u>").

 B. <u>Debtors in Possession</u>.  The Debtors are continuing in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

 C. <u>Committee</u>.  On May 3, 2011, the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>").

 D. <u>Lender's Prepetition Loan to West End/Mercury Short Term Mortgage Fund, LP</u>. The Debtors admit, stipulate and agree as follows (collectively, sub-paragraphs 1 through 9 of this Recital D, the "<u>Debtors' Northlight Stipulations</u>"):

 1. <u>Original Loan</u>.  Pursuant to a certain Loan Agreement dated as of August 6, 2009 (the "<u>Original Loan Agreement</u>") between West End/Mercury Short Term Mortgage Fund, LP (the "<u>Borrower</u>") (a Debtor herein) and Northlight Financial LLC (the "<u>Original</u>

Lender"), the Original Lender made a loan (the "Original Loan") to the Borrower evidenced by that certain Secured Promissory Note dated August 6, 2009 (the "Original Note") issued by the Borrower to the Original Lender in the original principal amount of $632,500. Concurrently with the closing of the Original Loan, the Original Lender, pursuant to a certain Assignment and Acceptance Agreement dated as of August 6, 2009 between the Original Lender, as assignor, and Northlight Fund, LP, a Delaware limited partnership, as assignee (the "Lender"), assigned to the Lender, and the Lender purchased and assumed, the Original Lender's rights and obligations under the Original Loan Agreement.

2. **MCC Funding and WestLB Credit Agreement**. MCC Funding, LLC ("MCC Funding"), a special purpose entity, wholly-owned at the time by the Borrower, established to purchase from the Borrower, from time to time, mortgage loans made by the Borrower, was a party to a certain Credit and Security Agreement dated as of September 21, 2007 by and among MCC Funding, as borrower, WestLB AG, New York Branch ("WestLB"), as lender and agent, and Wells Fargo National Association, as custodian (the "WestLB Credit Agreement"). Pursuant to the WestLB Credit Agreement, WestLB made advances to provide a portion of the funds necessary to enable MCC Funding to purchase the mortgage loans from the Borrower. By the end of 2009, certain issues had arisen under the WestLB Credit Agreement as the result of the funding by WestLB of an advance of $5,200,000 (the "WestLB Repayment Amount"), the proceeds of which advance were misdirected for purposes other than as permitted under the terms of the WestLB Credit Agreement. WestLB, upon being informed by Raymond J. Heslin, then General Counsel to the Debtors, discovered that such funds had been improperly misdirected, sought to have the Borrower repay, or cause to be repaid on MCC Funding's behalf, the WestLB Repayment Amount. Under the terms of the Original Loan Agreement, the Lender

had agreed, subject to the satisfaction of certain conditions precedent, to provide the funds necessary to enable the Borrower to cause the WestLB Repayment Amount to be repaid. Consequently, the Lender agreed to purchase from WestLB a portion of the existing outstanding balance due under the West LB Credit Agreement, in the amount of the WestLB Repayment Amount, which interest (the "WestLB Interest") was to be subordinate to the repayment of the amounts due WestLB under the WestLB Credit Agreement.  In consideration of the Lender acquiring the WestLB Interest, the parties agreed that the Borrower and certain other parties, including the Guarantor, would provide additional financial assurances to the Lender in the form of pledges and security interests to secure all of the Obligations under the Loan Agreement, including the $5,200,000 advanced by the Lender to acquire the WestLB Interest.

3.     Northlight Loan Agreement.  Accordingly, on or about December 18, 2009, the Original Loan Agreement was amended and restated pursuant to that certain Amended and Restated Loan Agreement, dated as of December 18, 2009 (the "Northlight Loan Agreement"), by and among the Borrower, West End Mortgage Finance Fund, LP ("WEMFF") (a Debtor), as Guarantor, the Lender and Northlight Financial LLC, as Agent (the "Agent"), in order to, among other things, increase the amount of, and extend the term of, the Original Loan to reflect the advance by the Lender to the Borrower of an additional $5,200,000 (the Original Loan, as increased and otherwise modified pursuant to the Northlight Loan Agreement, the "Northlight Loan").  Additionally, in connection with the closing of the Northlight Loan Agreement, the Original Note was amended pursuant to that certain Allonge to Secured Promissory Note (the "Allonge") executed by the Borrower, the Original Lender and the Lender. The Original Note, as amended by the Allonge, is referred to herein as the "Note."

4.      Lender's Prepetition Liens.  The obligations of the Borrower under the Note and the Northlight Loan Agreement are secured by, among other things, liens, security interests and pledges (collectively, the "Prepetition Liens") granted to the Lender pursuant to the following instruments:

(a)      that certain Security Agreement, dated as of December 18, 2009, by and between the Borrower and the Lender;

(b)      that certain Pledge Agreement dated as of December 18, 2009 by and among the Borrower, WEMFF and West End Fixed Income Partners, LP ("WEFIP"), as pledgors, and the Lender, as pledgee;

(c)      that certain Security Agreement dated as of December 18, 2009 by and among WEFIP and WEMFF, as grantors, and the Lender (the Security Agreements and the Pledge Agreement described in this Recital D.4, collectively, the "Security Agreements," and the collateral and interests in property granted pursuant to the Security Agreements, the "Prepetition Collateral");

5.      Guaranty Agreement.  The full and prompt payment and performance of all obligations of the Borrower under the Note and the Northlight Loan Agreement are guaranteed by WEMFF and WEFIP, jointly and severally, pursuant to that certain Guaranty of Payment and Performance, dated as of December 18, 2009 (the "Guaranty Agreement" and together with the Note, the Northlight Loan Agreement, the Security Agreements, and any other and all other agreements, instruments and documents executed by, in favor of or for the benefit of the Lender in connection with the Northlight Loan, collectively, the "Northlight Loan Documents").

6. _Validity of Northlight Claim_.  Subject to the provisions of paragraph 13 hereof, pursuant to the Northlight Loan Documents, as of the Petition Date, the Lender holds a valid claim (the "_Northlight Claim_") against each of the Borrower, WEMFF, WEFIP, West End Capital Management LLC (a Debtor and the general partner of the Borrower) and West End Financial Advisors LLC (a Debtor and the general partner of each of WEMFF and WEFIP) in the outstanding principal amount of $5,200,000, plus (x) accrued and unpaid interest thereon in accordance with the Northlight Loan Documents and (y) all fees, costs and expenses, including, without limitation, attorneys' fees, incurred by the Lender that are chargeable or reimbursable under the Northlight Loan Documents.  As of the Petition Date, the Northlight Claim was a fully-secured claim under section 506(a) of the Bankruptcy Code.

7. _Waiver of Challenges to Northlight Claim_.  Subject to entry of a final order with respect to the use of Cash Collateral, and subject further to the provisions of paragraph 13 hereof, the Northlight Claim is not, and shall not be, subject to, and the Debtors are hereby deemed to have waived and released any right to contest or assert any objection or challenge to the Northlight Claim in the nature of, avoidance, recovery, reduction, recovery, setoff, recoupment, disallowance, recharacterization, subordination (whether pursuant to section 510 of the Bankruptcy Code or otherwise), counterclaims, cross-claims, defenses, impairment or any other objections or challenges of any kind under the Bankruptcy Code or any other applicable law, including, without limitation, any objections or challenges to the validity, amount, allowability, enforceability, extent, priority, perfection or avoidability of the Northlight Claim, whether asserted by any Debtor, the Committee, if any, or any other person or entity;

8. _Validity and Perfection of Prepetition Liens and Waiver of Challenges Thereto_.  Subject to the provisions of paragraph 13 hereof, the Prepetition Liens constitute valid,

binding, enforceable, properly perfected, first-priority liens on and security interests in the

Prepetition Collateral and, subject to the entry of a final order with respect to the use of Cash

Collateral, shall not be subject to, and the Debtors shall be deemed to have waived and released

any right to contest or assert any objection or challenge to the Prepetition Liens in the nature of,

avoidance, recovery, reduction, setoff, recoupment, disallowance, recharacterization,

subordination (whether pursuant to section 510 of the Bankruptcy Code or otherwise),

counterclaims, cross-claims, defenses, impairment or any other objections or challenges of any

kind under the Bankruptcy Code or any other applicable law, including, without limitation, any

objections or challenges to the validity, amount, allowability, enforceability, extent, priority,

perfection or avoidability of the Prepetition Liens or any other rights, claims, liens, security

interests, collateral or other interests held or asserted by or on behalf of the Lender, whether

asserted by any Debtor, the Committee, if any, or any other person or entity.  As of the Petition

Date, the Prepetition Liens were senior in priority over any and all other liens encumbering the

Prepetition Collateral, other than certain liens otherwise expressly permitted pursuant to section

5.7 of the Northlight Loan Agreement and identified in Schedule 1.1(a) to the Northlight Loan

Agreement (to the extent any such permitted liens were valid, properly perfected, non-avoidable

and senior in priority to the Prepetition Liens as of the Petition Date, the "Permitted

Encumbrance").[1]

       9.     The Franchise Funds.  Pursuant to certain Transfer and Exchange

Agreements dated as of January 26, 2010, Northlight GP II, LLC ("Northlight GP II"), an

affiliate of the Lender, is the general partner of three limited partnerships:  Northlight Food

---

[1] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Encumbrances are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the Lender, or any Committee to challenge the validity, priority, enforceability, avoidability, perfection to the extent of any such Permitted Encumbrance and/or security interest.

Franchise Fund, LP, Northlight Food Franchise Fund II, LP and Northlight Equipment Fund I, LP (collectively, the "Northlight Franchise Funds"). Debtor, West End Mortgage Finance Fund I, LP holds the limited partnership interests in Northlight Food Franchise Fund, LP and Northlight Food Franchise Fund II, LP, respectively. Debtor, West End Fixed Income Partners LP holds the limited partnership interests in Northlight Equipment Fund I, LP. Currently, Northlight GP II is in possession of funds (the "NFA Funds") arising from the Northlight Franchise Funds' respective interests in NFA Funding LLC, NFA Funding II LLC, and NFA Equipment Fund I, LP.[2] Northlight GP II has not made any distribution since the Petition Date of the NFA Funds received by it as a result of its interest in the Northligh Franchise Funds.

10. Cash Collateral. All of the cash in which the Borrower, WEMFF and/or WEFIP have an interest, including, without limitation, the cash in their respective deposit accounts, collateral accounts, interest reserve accounts, the Borrower Depository Account (as defined in the Northlight Loan Agreement), wherever located, are rents, income, proceeds and/or profits from the Prepetition Collateral and, as such, constitute the Lender's cash collateral (the "Cash Collateral") within the purview of section 363(a) of the Bankruptcy Code.

E. Adequate Protection. Pursuant to sections 361 and 363 of the Bankruptcy Code, the Lender is entitled to receive adequate protection, as set forth herein, to the extent of the diminution, if any, in value of its interest in the Prepetition Collateral and the Cash Collateral resulting from the use, sale or lease of the Prepetition Collateral and the Cash Collateral (whether such use of the Cash Collateral shall be pursuant to the First Interim Cash Collateral Order (as defined herein), the Second Interim Cash Collateral Order (as defined herein) or this Order) or

---

[2] Northlight Food Franchise Fund, LP holds a 50.10% percent of the Class A Limited Liability Company Membership Interests and 100% of the Class C Limited Liability Company Membership Interests in NFA Funding, LLC. Northlight Food Franchise Fund II, LLC holds 100% of the Limited Liability Company Membership Interests

the imposition of the automatic stay (collectively the "Diminution in Value"), as such

Diminution in Value, if any, may be determined by this Court.

F.      Necessity of Cash Collateral Relief Requested.  The Debtors require the use of the

Cash Collateral to manage, maintain and preserve the Debtors' assets.  The relief requested is

therefore necessary, essential and appropriate for the continued management, operation and

preservation of the Debtors' property.  The Lender and the Debtors have negotiated at arms'

length and in good faith regarding the use of Cash Collateral during the Cash Collateral Period.

The Lender has agreed to permit the Debtors to use its Cash Collateral for the Cash Collateral

Period, subject to the terms and conditions set forth herein.  Entry of this Order is in the best

interests of the Debtors, their estates and their creditors.

G.      First Interim Cash Collateral Order.  On June 1, 2011, this Court entered its

*Interim Order (I) Authorizing the Use of Cash Collateral Nunc Pro Tunc to the Petition Date,*

*(II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting*

*Related Relief* [Docket No. 142] (the "First Interim Cash Collateral Order"), providing

authorization, among other things, for the Debtors to use Cash Collateral during the period from

the Petition Date through and including May 31, 2011 (subject to earlier termination as therein

set forth) in accordance with a budget annexed to the Interim Cash Collateral Order as Exhibit A.

H.      Second Interim Cash Collateral Order.  On June 17, 2011, this Court entered its

Second *Interim Order (I) Authorizing the Use of Cash Collateral Nunc Pro Tunc to the Petition*

*Date, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting*

*Related Relief* [Docket No. 156] (the "Second Interim Cash Collateral Order"), providing

authorization, among other things, for the Debtors to use Cash Collateral during the period from

---

in NFA Funding II, LLC.  Northlight Equipment Fund I, LP holds 100% of the Limited Liability Company
Membership Interests in NFA Equipment Fund I, LP.

June 1, 2011 through and including July 31, 2011 (subject to earlier termination as therein set forth) in accordance with a budget annexed to the Second Interim Cash Collateral Order as Exhibit A.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.  <u>Relief Granted</u>.  The use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Order.

2.  <u>Authorization to Use Cash Collateral and Certain Prohibited Uses</u>.

(a)  <u>Authorization to Use</u>.  Subject to the terms and conditions of this Order, and in accordance with the Budget, the use of Cash Collateral is authorized solely for the period (the "<u>Cash Collateral Period</u>") from August 1, 2011 through the earlier to occur of (a) the entry of the Court of an order terminating the Debtors' use of Cash Collateral pursuant to paragraph 11(a) hereof or (b) October 31, 2011.  The Debtors' use of Cash Collateral in accordance with the Budget during the period from and including August 1, 2011 through and including the date of this Order is ratified, authorized and approved *nunc pro tunc* as of the August 1, 2011.  Except as otherwise expressly provided herein, Cash Collateral may be used during the Cash Collateral Period only as follows: (i) solely up to the amounts and for the purposes identified in the Budget; and (ii) to pay the quarterly fees (and interest thereon, if any) of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) (the "<u>U.S. Trustee Carve-Out</u>").  For the avoidance of doubt, during the Cash Collateral Period, the Debtors may not use Cash Collateral to commence or prosecute any contested matters, adversary proceeding or other causes of actions or proceedings against the Lender in the Cases or in any Successor Cases (as defined herein).  The authorization for the Debtors to use Cash Collateral shall terminate at the expiration of the Cash Collateral

Period unless otherwise agreed to in writing by the Lender in its sole discretion.  The Budget may only be amended or modified in writing and with the written consent of the Lender in its sole discretion.

        (b)    <u>Prohibited Use</u>.  None of the Cash Collateral may be used to (a) object to, contest or challenge in any way any rights, claims, liens, security interests, collateral or other interests held or asserted by or on behalf of the Lender, including, without limitation, the Prepetition Liens and any rights or interests granted or provided to the Lender under the Northlight Loan Documents, (b) assert any claim or cause of action, including, without limitation, any claim or action under chapter 5 of the Bankruptcy Code, against the Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, members or employees, or (c) assert or prosecute an objection to, or contest or challenge in any manner, or raise any defenses to, the Northlight Claim, the Prepetition Liens and/or the Northlight Loan Documents (whether such objection or challenge is in the nature of avoidance, recovery, reduction, setoff, recoupment, disallowance, recharacterization, subordination (whether pursuant to section 510 of the Bankruptcy Code or otherwise), counterclaim, cross-claim, defenses, impairment or any other objections or challenges of any kind under the Bankruptcy Code or any other applicable law, including, without limitation, any objections or challenges to the validity, amount, allowability, enforceability, extent, priority, perfection or avoidability of the Northlight Claim, the Prepetition Liens, the Northlight Loan Documents or any other rights, claims, liens, security interests, collateral or other interests held or asserted by or on behalf of the Lender); <u>provided</u>, <u>however</u>, that the Cash Collateral may be used by the Committee to pay the allowed fees and expenses of the Committee's Professional Persons (as defined herein) incurred directly in connection with investigating the validity, extent, amount, perfection, priority, enforceability,

allowability and/or avoidability of the Northlight Claim and the Prepetition Liens but only during the sixty (60)-day period immediately following the date of entry of the order approving the appointment of counsel for the Committee, and only to the extent of a maximum aggregate amount of $25,000 as specified in paragraph 2 of the Second Interim Cash Collateral Order.

      3.    Adequate Protection Liens.

      (a)    Adequate Protection Liens.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, for the sole purpose of securing the Diminution in Value, if any, as may be determined by this Court, the Lender is hereby granted additional, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "Adequate Protection Liens") any and all real and personal property of the Debtors, whether tangible or intangible, whether existing on the Petition Date or thereafter created, acquired or arising, wherever located, including, without limitation, all cash, deposit accounts, accounts receivable and other rights to payment, books and records, contract rights, causes of action, inventory, deposit accounts, equipment, machinery, interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names and other intellectual property, goods, general intangibles, chattel paper, instruments, promissory notes, drafts and documents, investments, investment property, capital and the Debtors' equity interest in any other entities (including, without limitation, subsidiaries and/or affiliates), securities, commercial tort claims, instruments, letters of credit and rights under letters of credit, life insurance policies, licenses, insurance proceeds and tort claims, together with the income, products, proceeds, offspring, rents and profits thereof, (collectively, including the Prepetition Collateral, the "Collateral") having the priority set forth in paragraph 3(b) below; provided, however, that, notwithstanding anything herein to the contrary, for purposes of this Order, the "Collateral" shall not include any causes of

action under sections 544, 547, 548, 549 and/or 550 of the Bankruptcy Code or the proceeds thereof; provided further, however, that the parcel of real property located at 25 Whalers Lane, South Amagansett, New York; the insurance policy issued by Illinois National Insurance Company under Liability Policy 04-188-13-86 to Sentinel Investment Management Corporation and any proceeds from such policy; the claims held by West End Cash Liquidity LP aka West End Cash Liquidity Fund I LP and West End Special Opportunity Fund LP against Pacific Investment Management Company LLC ("PIMCO"), PIMCO Commodities Litigation Settlement or any subsidiary of PIMCO for the manipulation of the June 2005 ten-year Treasury note futures contract; and the Fusion Telecommunications International Inc. stock held by the Debtors, and the proceeds of any of the foregoing  are specifically excluded from the Collateral pending entry of a final order in respect of the use of Cash Collateral; provided further, however, that nothing herein shall constitute a waiver by Northlight of its alleged security interest in the assets described in the immediately preceding proviso, and nothing herein shall constitute a determination by this Court whether Northlight had, or did  not have, as of the Petition Date, a valid, perfected security interest in any or all of such assets.

(b)     Priority and Enforceability of Adequate Protection Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral, with the exception of (i) the U.S. Trustee Carve-Out and (ii) in the event that the Cases are converted to cases under chapter 7 of the Bankruptcy Code, the costs and fees of the chapter 7 trustee in an amount not to exceed $25,000 in the aggregate (the "Chapter 7 Carve-Out"); provided, however, that the Adequate Protection Liens shall be junior to valid, duly perfected, non-avoidable security interests in and liens on the Prepetition Collateral that were in existence on the Petition Date, that are senior in priority to the Prepetition Liens and that are not

subject to avoidance, recharacterization, subordination (whether equitable, contractual or otherwise) or disallowance. The Adequate Protection Liens shall be valid and enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Cases, or any cases under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (a "Successor Case") and shall survive any dismissal of the Cases or any Successor Case. The Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this Case or any Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

4.    Adequate Protection Superpriority Claims.

(a)    Adequate Protection Superpriority Claim.  As further adequate protection against any Diminution in Value, the Lender is hereby granted, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Case (the "Superpriority Claim") to the extent of the Diminution in Value, if any, determined by this Court.

(b)    Priority of Superpriority Claim.  With the exception of the U.S. Trustee Carve-Out and the Chapter 7 Carve-Out, the Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, whether such claims arise in the Cases or in Successor Cases, whether now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the

kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, respectively, of the Bankruptcy Code.

5. <u>Adequate Protection Payments</u>.

(a) <u>Payments to Lender</u>. As further adequate protection of the Lender's interest in the Prepetition Collateral, the Debtors are hereby authorized and directed to provide adequate protection payments (the "<u>Adequate Protection Payments</u>") to the Lender in the manner, at the time and in the amount as set forth as follows: no later than the second (2nd) business day after each of August 31, 2011, September 30, 2011 and October 31, 2011, Northlight GP II shall deliver to the Lender from the NFA Funds a payment in the amount of $65,913.75, representing interest accrued at the non-default rate during the months of August, September and October, respectively, in accordance with the provisions of the Northlight Loan Agreement; <u>provided</u>, <u>however</u>, that the respective rights of the Debtors, the Committee and the Lender are reserved with respect to the Lender's entitlement to the Default Rate of Interest (as defined in the Northlight Loan Agreement).

(b) <u>Application of Adequate Protection Payments</u>. The Adequate Protection Payments shall be applied to accrued and unpaid interest under the Note and the Lender's reasonable fees, costs and charges provided for under the Northlight Loan Documents, and any excess shall be allocated and applied to reduce outstanding principal. To the extent that the Court determines, pursuant to sections 506(a) and (b) of the Bankruptcy Code, that the Lender's claim against the Debtors does not include such interest (or any portion thereof) and/or such fees, costs or charges (or any portion thereof), the Adequate Protection Payments, or any portion thereof, not properly allocable to interest and to such fees, costs or charges shall be reallocated

and applied to reduce the amount of the Northlight Claim.

6. <u>Maintenance and Insurance</u>.  The Debtors shall operate, maintain and preserve the Collateral and shall cause the Collateral to be insured pursuant to the same policy or policies of insurance under which the Collateral currently is insured.

7. <u>Modification of Automatic Stay</u>.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim, (b) permit the Lender to perform such acts as the Lender reasonably may deem necessary to assure the perfection and priority of the liens granted herein and (c) permit the Debtors to pay, and the Lender to apply in the manner provided herein, the Adequate Protection Payments.

8. <u>Perfection of Adequate Protection Liens</u>.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Lender to the priorities granted herein.  The Lender may, in its sole discretion, but is not required to, file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office.

9. <u>Debtors' Obligations</u>.  The Debtors, as applicable, shall take the following actions:

(a) <u>Limited Use</u>.  The Debtors shall use the Cash Collateral solely for the limited purposes provided in the Budget and this Order;

(b) <u>Accountings</u>.  No later than the third (3rd) business day following the entry

of this Order, the Debtors shall deliver to the Lender's counsel, the U.S. Trustee and the Committee an accounting of all of the Debtors' receipts and disbursements during the period from August 1, 2011 through and including the date of this Order, and thereafter, on each Monday, shall deliver to the Lender's counsel, the U.S. Trustee and the Committee an accounting of all of the Debtors' receipts and disbursements during the immediately preceding calendar week, identifying in each such accounting (i) for each discrete receipt, the source of such receipt (*i.e.*, the payor) and the amount thereof and (ii) for each discrete disbursement, the payee of such disbursement and the amount thereof. Each such accounting shall be accompanied or supplemented by such supporting information and documentation as the Lender reasonably may request;;

      (c)    <u>Reconciliations</u>. No later than the third (3rd) business day following entry of this Order, the Debtors shall deliver to the Lender's counsel, the U.S. Trustee and the Committee a reconciliation that compares, for the period from July 1, 2011 through July 31, 2011 (x) the budgeted line-item expenditures projected by the Debtors in the Budget (as defined in the Interim Cash Collateral Order) for such period with (y) the actual expenditures made by the Debtors during such period in respect of such budgeted line-items. No later than the third (3rd) business day following the last day of August, September and October, respectively, the Debtors shall deliver to the Lender's counsel a similar reconciliation for the months of August, September and October, respectively, comparing for each applicable month the budgeted line-item expenditures projected by the Debtors in the Budget (as defined herein) for such month with the actual expenditures made by the Debtors during such month in respect of such budgeted line-items. Each such reconciliation shall be accompanied or supplemented by such supporting information and documentation as the Lender reasonably may request;

(d)     <u>Monthly Operating Reports</u>.  The Debtors shall serve the Lender, the U.S. Trustee and Committee with a copy of each monthly operating report filed by the Debtor in the Case pursuant to Bankruptcy Rule 2015(a)(3) no later than the business day immediately following the date on which such report is filed with the Court.

10.   <u>Preservation of Rights Granted under Order</u>.  Unless the Lender has provided its prior written consent, which consent may be withheld or denied in the Lender's sole discretion, or the Northlight Claim has been indefeasibly paid in full in cash (or will be indefeasibly paid in full in cash upon entry of an order approving indebtedness described in this Paragraph 10), the Debtors shall not seek the entry of, and there shall not be entered, in the Cases, or in any Successor Case, any order that authorizes or provides for any of the following:

(a)     the obtaining of credit or the incurring of indebtedness by the Debtors that is (i) secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or is entitled to priority status that is senior to or *pari passu* with the priority of the Prepetition Liens or the Adequate Protection Liens or (ii) granted priority status that is senior to or *pari passu* with the priority of the Superpriority Claim, in each instance, except to the extent such indebtedness is used to repay all or any portion of the Northlight Claim and the Diminution in Value, if any; and

(b)     dismissal of the Debtors' Cases; <u>provided</u>, <u>however</u>, that, upon entry of an order dismissing any of the Debtors' Cases under sections 305 or 1112 of the Bankruptcy Code, (i) the Superpriority Claims and the Adequate Protection Liens granted to the Lender pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until the Northlight Claim shall have been paid and satisfied in full (and that the Superpriority Claim and Adequate Protection Liens shall, notwithstanding such dismissal,

remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and the Adequate Protection Liens.

11. <u>Events of Default</u>. The occurrence of any of the following events during the Cash Collateral Period, unless waived by the Lender in writing, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a) the failure by the Debtors to perform, in any material respect, any of their respective obligations under this Order;

(b) the procurement by the Debtors of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or is entitled to priority status that is senior to or *pari passu* with the priority of the Prepetition Liens or the Adequate Protection Liens or (ii) granted priority status that is senior to or *pari passu* with the priority of the Superpriority Claim;

(c) the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in the Collateral, or any portion thereof, where such execution or enforcement would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors; <u>provided</u>, <u>however</u>, that in no event shall entry of order granting Iberiabank relief from the automatic stay for the purpose of (i) foreclosing its lien on that certain real property located at 25 Whalers Lane, South Amagansett, New York or (ii) effecting a setoff, in the approximate amount of $16,569.73 against funds of WEMFF held by Iberiabank constitute an Event of Default under this paragraph

11(c);

(d)     reversal, vacatur or modification (without the express prior written consent of the Lender) of this Order, whether by reconsideration, appeal or otherwise;

(e)     dismissal of any of the Cases, transfer of the Cases to another venue without the Lender's consent in its sole discretion, conversion of the Cases to a chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(f)     the sale of the Collateral, or any material portion thereof, outside the ordinary course of business without the prior written consent of the Lender in its sole discretion;

(g)     the entry by this Court of an order granting a security interest, lien, claim, or encumbrance that is senior to, or *pari passu* with, the Adequate Protection Liens and/or the Superpriority Claim (other than the U.S. Trustee Carve-Out or the Chapter 7 Carve-Out).

12.     <u>Rights and Remedies Upon Event of Default</u>.

(a)     Upon the occurrence and during the continuation of an alleged Event of Default, the Lender may deliver a written notice (a "<u>Default Notice</u>") of the occurrence of an alleged Event of Default, which notice shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to the Committee and the U.S. Trustee.  Within five (5) business days after the Lender delivers a Default Notice as aforesaid, the Debtors shall be entitled to seek an emergency hearing with the Court for the purpose of seeking the Court's determination that (i) the alleged Event of Default did not occur or, if, in fact, it did occur, is no longer continuing, (ii) the alleged Event of Default has been cured, (iii) the alleged Event of Default reasonably cannot be cured within such five (5) business-day period, but the Debtors, reasonably can cure

such Event of Default in an additional period of time to be determined by the Court and/or (iv) the alleged Event of Default is not material. In the event that, following such hearing, the Court determines that (x) an Event of Default has occurred, (y)(i) the Debtors have not cured such Event of Default within such five (5) business-day period or such longer cure period, if any, as the Court may determine or (ii) such Event of Default is not curable, and (z) such Event of Default is material, the Debtors no longer shall have the right to use Cash Collateral under this Order.

(b)     The Debtors' right to use Cash Collateral pursuant to this Order shall automatically terminate upon the entry of a final order granting to the Lender relief from the automatic stay to exercise and enforce its remedies under the Northlight Loan Documents and applicable non-bankruptcy law.

13.  <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)     Nothing in this Interim Order shall prejudice the rights of the Committee, and, solely in the event of inaction by the Committee, any other party in interest other than the Debtors (such party in interest, a "<u>Party in Interest</u>") to seek to object to or challenge the substance of Debtors' Northlight Stipulations; <u>provided</u>, <u>however</u>, that, unless (a) the Committee commences an adversary proceeding pursuant to Bankruptcy Rule 7001 by the filing and service of a complaint raising such objection or challenge to the Debtors' Northlight Stipulations (including, without limitation, any objection or challenge in any way relating to the Northlight Claim, the Prepetition Liens or the Northlight Loan Documents), whether such objection or challenge is in the nature of avoidance, recovery, reduction, setoff, recoupment, disallowance, recharacterization, subordination (whether pursuant to section 510 of the Bankruptcy Code or

otherwise), counterclaim, cross-claim, defenses, impairment or any other objections or

challenges of any kind under the Bankruptcy Code or any other applicable law, including,

without limitation, any objections or challenges to the validity, amount, allowability,

enforceability, extent, priority or perfection of the Northlight Claim, the Prepetition Liens and

the Northlight Loan Documents (any such adversary proceeding asserting such an objection or

challenge, a "<u>Challenge</u>"), within sixty (60) days after the date of entry of the order approving

the appointment of counsel for the Committee (the "<u>Committee Challenge Period</u>"), or (b) a

Party in Interest files, on or before August 16, 2011 (the "<u>Challenge Standing Motion Period</u>"), a

motion (a "<u>Challenge Standing Motion</u>") seeking standing and authority to commence and

prosecute a Challenge, any and all Challenges shall be forever and irrevocably waived, released,

barred and discharged, and the Debtors' Northlight Stipulations (each, respectively, to the extent

it was not made subject to a timely Challenge) shall be deemed law of the case with respect to

the matters so stipulated and shall be binding on all Parties in Interest and the Committee;

<u>provided further</u>, <u>however</u>, that, for purposes of the Committee only, the term "Challenge" shall

not include any objection or challenge to the value of Lender's collateral for the purposes of

contesting the substance of the final sentence of Recital D.6 above.

      (b)    <u>Failure to Commence Challenge or Challenge Standing Motion</u>.  If the

Committee fails to commence a Challenge during the Committee Challenge Period, the

Committee forever and irrevocably shall be barred from commencing a Challenge on behalf of

itself, the Debtors and their estates, and the Committee shall be deemed forever and irrevocably

to have waived, released and discharged any and all Challenges.  If the Committee commences a

Challenge during the Committee Challenge Period, the Committee forever and irrevocably shall

be barred from asserting on behalf of itself, the Debtors and their estates any claim, objection, challenge or cause of action that is not asserted in such Challenge.  If any Party in Interest fails to file a Challenge Standing Motion during the Challenge Standing Motion Period, such Party in Interest forever and irrevocably shall be barred from commencing a Challenge on behalf of the Debtors and their estates, and such Party in Interest shall be deemed forever and irrevocably to have waived, released and discharged any and all Challenges.  If a Party in Interest files a Challenge Standing Motion during the Challenge Standing Motion Period, such Party in Interest forever and irrevocably shall be barred from asserting on behalf of itself, the Debtors and their estates any claim, objection, challenge or cause of action for which standing is not sought.

(c)     Standing.  Nothing contained in this Order shall be deemed to constitute a grant of standing to any Party in Interest (other than the Committee) to commence a Challenge on behalf of the Debtors or their estates, and any such grant of standing shall only be conferred pursuant to a further order of this Court.  In the event that the Committee determines that there exists a good faith basis for a Challenge, the Committee shall have and is hereby granted standing to commence and prosecute such Challenge in accordance with the provisions of this paragraph 13.

14.  No Third Party Rights.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

15.  Right to Inspect and Audit.  The Lender shall have the right, and the Debtors shall permit the Lender, to (i) visit and inspect any of the Collateral during business hours upon reasonable advance notice and (ii) inspect and audit the books, records and account statements of

the Debtors (including, without limitation, discuss the affairs, finances and accounts of the Debtors with Raymond J. Heslin, the managing member, general partner, manager and/or director of each of the Debtor's), and the Debtors shall cooperate with and provide to the Lender and its representatives such information as the Lender or such representatives reasonably may request.

16. <u>Right to Credit Bid</u>. The Lender shall have the unqualified right, subject to applicable law, to credit bid up to the full amount of the Northlight Claim, plus any interest accrued thereon, and any fees, costs and charges (including, without limitation, reasonable attorneys' fees), incurred by the Lender on and after the Petition Date, plus the amount of the Lender's Superpriority Claim, if any, in connection with any sale, auction or other disposition of all or a portion of the Collateral.

17. <u>Section 506(c) Claims</u>. Except to the extent of the U.S. Trustee Carve-Out and the Chapter 7 Carve-Out, and subject to the entry of a final order with respect to the use of Cash Collateral, no expenses of administration incurred in any of the Cases or any Successor Cases shall be charged against or recovered from the Collateral or the Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the Lender, and nothing contained in this Order shall be deemed to constitute consent by the Lender to any charge, lien, assessment, or claim against, or recovery from, the Collateral or the Lender under section 506(c) of the Bankruptcy Code or otherwise on account of any expenses of administration incurred in the Cases or in any Successor Cases, nor shall any such consent be implied from any action, inaction or acquiescence by the Lender.

18. <u>No Marshaling/Applications of Proceeds</u>. The Lender shall not be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

19.  Section 552(b).  Subject to the entry of a final order with respect to the use of Cash Collateral, the Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Lender with respect to proceeds, product, offspring or profits of any of the Collateral.

20.  Rights Preserved.  Notwithstanding anything contained in this Order to the contrary, the entry of this Order is without prejudice to, does not constitute a waiver of, expressly or implicitly, and does not otherwise impair:  (a) the Lender's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); (b) any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) credit bid on any of the Debtors' assets; (iii) request dismissal of the Cases or any Successor Case, conversion of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers (subject to the right of the U.S. Trustee to object to such relief), or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or (c) the respective rights of the Debtors and the Lender concerning the determination of the allowed amount of the Lender's claim as of the Petition Date, or at any time thereafter, all of which rights are reserved.

21.  No Waiver by Failure to Seek Relief.  The failure of the Lender to seek relief or

otherwise exercise its rights and remedies under this Order, the Northlight Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the Lender's rights hereunder, thereunder, or otherwise.

22. <u>Good Faith</u>.  The Lender has acted in good faith in connection with all negotiations and proceedings relating to this Order, and its reliance on the provisions of this Order is in good faith.

23. <u>Binding Effect of Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lender, all other creditors of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Cases or any Successor Case.  In the event of any inconsistency between the provisions of this Order and any other order entered in these Cases (other than an order confirming a plan of reorganization) or any Successor Case, the provisions of this Order shall govern and control.

24. <u>No Modification of Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Order without the prior written consent of the Lender, which consent may be granted or denied in the Lender's sole discretion, and no such consent shall be implied by any other action, inaction or acquiescence of the Lender.  In the event that any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of, any payments, or lien, claim or priority authorized or created hereby.  Any payments, liens or

claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

25.  Survival.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered (a) converting the Cases to cases under chapter 7 of the Bankruptcy Code or (b) pursuant to which this Court abstains from hearing these Cases or a Successor Case.  The terms and provisions of this Order, including the provisions granting claims, liens, security interests and other protections to the Lender, notwithstanding the entry of any such order, shall continue in any Successor Case, and such claims, liens, security interests and other protections granted to the Lender hereunder shall maintain their priority in such Successor Case as provided by this Order until all Prepetition Obligations have been indefeasibly paid in full in cash, notwithstanding the expiration of the Cash Collateral Period or any earlier termination of the Debtors' authorization to use Cash Collateral.

26.  Effect of this Order; Waiver of Rule 6004(h) Stay.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* as of August 1, 2011 immediately upon execution thereof. This Order shall take effect and be fully enforceable immediately upon entry, notwithstanding the provisions of Bankruptcy Rule 6004(h), which, to the extent applicable, are waived and shall not apply to this Order.

27.  Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

28.  <u>Final Hearing</u>.  A final hearing in respect of the Debtors' request to use Cash

Collateral shall be held on **September 8, 2011 at 10:00 a.m.** (prevailing Eastern time).


Dated:  New York, New York

     August 9, 2011


                            **<u>/s/  STUART M. BERNSTEIN</u>**
                            UNITED STATES BANKRUPTCY JUDGE

**THE RELIEF SET FORTH IN THIS ORDER**
**IS HEREBY CONSENTED TO:**

**Kasowitz Benson, Torres & Friedman LLC**


By: <u>/s/ Mathew B. Stein</u>
     **Mathew B. Stein**
Counsel to Northlight Fund LP


**Klestadt & Winters, LLP**

By: <u>/s/ Fred Stevens</u>
    **Fred Stevens**
Counsel to the Official Committee of Unsecured Creditors

**Robinson Brog Leinwand Greene Genovese and Gluck P.C.**

By: <u>/s/ A. Mitchell Greene</u>
     **A. Mitchell Greene**
Counsel to the Debtor West End Financial Advisors LLC.

**EXHIBIT A**

**Budget**