**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re:                                                          Chapter 11
                                                                Case No. 11-11152 (SMB)
**WEST END FINANCIAL**                                          **(Substantively Consolidated)**
**ADVISORS LLC,**
                                                    Debtors.
----------------------------------------------------------x

# PLAN OF LIQUIDATION OF WEST END FINANCIAL ADVISORS, LLC

**ROBINSON BROG LEINWAND**
**GREENE GENOVESE & GLUCK P.C.**
Attorneys for the Debtor
875 Third Avenue, 9th Floor
New York, New York 10022
212-603-6300
    A.  Mitchell Greene

**Dated:**  New York, New York
       August 31, 2011

The estate of the partially substantively consolidated debtor and debtor in possession herein, **West End Financial Advisors LLC**[1] (as partially substantively consolidated, the "Debtor"), proposes the following plan of liquidation (the "Plan") pursuant to Sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or

---

1 The Debtors, whose estates have been partially substantively consolidated below the level of secured claims by order of the Bankruptcy Court dated July 25, 2011 are the following entities: West End Financial Advisors LLC (Case No. 11-11152); Amagansett Realty SPV 1 LLC (Case No. 11-11167); Benedek Development Group, LLC (Case No. 11-11155); L/C Family Limited Partnership (Case No. 11-11157); Sentinel Investment Management Corp.(Case No. 11-11153); SIMCO SPV 1 LP (Case No. 11-11158); West End Absolute Return Fund I, LP (Case No. 11-11161); West End Capital Management LLC (Case No. 11-11154); West End Fixed Income Partners LP (Case No. 11-11159); West End Income Strategies Fund LP (Case No. 11-11160); West End Mortgage Finance Fund I LP (Case No. 11-11162); West End Private Client Fund L.P.(Case No. 11-11163); West End Real Estate Fund 1 LP (Case No. 11-11164); West End Special Opportunity Fund II, LP (Case No. 11-11166); West End Special Opportunity Fund, LP (Case No. 11-11165); West End/Mercury Short-Term Mortgage Fund, LP. (Case No. 11-11156); West End Cash Liquidity Fund I L.P. (Case No. 11-12774) and West End Dividend Strategy Fund I L.P. (Case No. 11-13247). As a result, the claims in Class 2 (and the respective subclasses) are not impacted by the substantive consolidation of the Debtors' estates.

to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1    "**Administrative Claim**" means a claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

1.2    "**Administrative Expense**" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under Sections 503(b), 330 or 331 of the Bankruptcy Code.

1.3    "**Administrative Tax Claim**" means an Administrative Claim for a tax due to a Governmental Unit.

1.4    "**Adversary Proceedings**" means the adversary proceedings commenced by the Debtor in the Bankruptcy Court prior to the Effective Date.

1.5 **"Allowance Date"** means the date on which an order Allowing a claim or interest becomes a Final Order.

1.6 "**Allowed**" means, with reference to a Claim: (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules filed thereby as liquidated in an amount greater than zero dollars and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no timely objection has been interposed; (b) except as otherwise provided in the Plan, any Claim (including any Administrative Expense Claim that is not based upon Professional Fees) as to which a Proof of Claim has been timely filed by the applicable deadline and (i) no objection to the allowance thereof has been timely interposed on or before the Claims Objection Deadline and (ii) such Claim has not (as applicable) been withdrawn, paid in full (pursuant to a prior order of the Bankruptcy Court or otherwise), or otherwise deemed satisfied in full; (c) any Claim as to which (i) any objection thereto or other motion to disallow, estimate, or expunge, in whole or in part, or (ii) any Adversary Proceeding against the holder thereof, was filed or commenced (as applicable) but is no longer pending and instead has been determined by a Final Order in favor of the respective Claim holder (but solely to the extent and amount such Claim has been so determined in the applicable Final Order); (d) any Claim that has otherwise been resolved, settled, or otherwise deemed allowed by a Final Order; or (e) any Claim that is expressly deemed an Allowed Claim under the Plan (in the Class and amount as set forth in the Plan). Unless otherwise ordered by the Bankruptcy Court prior to the entry of the Confirmation Order, or as specifically provided to the contrary in this Plan with respect to any particular Claim, an "Allowed" Claim shall not include (i) any interest on such Claim to the extent accruing or maturing on or after the Petition Date, (ii) any punitive or exemplary damages, or (iii) any claims for any fine, penalty, or forfeiture.

{00543543.DOC;2 }

Nothing in this Plan shall prevent the Debtor or the Plan Administrator from objecting to Claims after the Confirmation Date.

1.7     "**Allowed Equity Interest**" means the equity interests in the substantively consolidated Debtor held by (i) L/C Family Limited Partnership, a New York Limited Partnership and/or (ii) William Landberg.

1.8     "**Apartment Collateral**" means all right, title and interest of West End Real Estate Fund I LP in and to the 8.33% Class A membership interest and 37.5% Class B membership interest in each of 90 LLC, Easton Ridge Apartments LLC, Burgundy 102 LLC, Ivywood 67 LLC and Scioto LLC which entities own apartment buildings in Ohio, Michigan and Connecticut.

1.9     "**Avoidance Actions**" means all of the Debtor's and the Estate's causes of action against Persons arising under any of Bankruptcy Code § 544, 545, 547, 548, 549, 550, 553(b), or 724 or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute any such Avoidance Actions.

1.10     "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.11     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to Section 157(d) of title 28 of the United States Code.

1.12     "**Bankruptcy Fees**" mean all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

5

1.13    "**Bankruptcy Rules**" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.14    "**Bar Date**" means _____, 2011, the date fixed by Order of the Bankruptcy Court subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

1.15    "**Basile Insurance Policy**" means that certain term life insurance policy in the face amount of $5,000,000 issued to West End Mortgage Finance Fund I LP insuring the life of Anthony P. Basile.

1.16    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.17    "**CapLease**" means CapLease, Inc. and its affiliates and subsidiaries, including, but not limited to Caplease Debt Funding, LP and Caplease Services Corp.

1.18    "**Caplease Collateral**" means the Apartment Collateral.

1.19    "**Caplease Loan and Security Agreement**" means that certain Loan and Security Agreement, dated as of the Effective Date, to be executed by the Post Confirmation Estate, as borrower, and Caplease, as lender, which, among other things, shall provide for the terms and conditions governing the repayment of the obligations evidenced by the New Caplease Note, shall provide for the grant of a first priority lien upon the Apartment Collateral to secure the obligations evidenced by the New Caplease Note and in all other respects shall be reasonably satisfactory, in form and substance, to Caplease. The term and provisions of such Loan and Security Agreement shall be more particularly set forth in, and shall be substantially in the form of, the form of the "New Caplease Loan and Security Agreement" to be included in the Plan Supplement.

1.20    "**CapLease Secured Claim**" means the Secured Claim of CapLease, which for all purposes of this Plan shall be deemed an Allowed Secured Claim in an amount equal to $1,762,068.80 as of July 31, 2011 plus accrued and unpaid interest allowed under the CapLease Loan and Security Agreement from July 31, 2011 to the Effective Date, provided however, that in the event CapLease is paid the sum of $1,000,000 on or before March 1, 2012, the CapLease Secured Claim shall be deemed paid in full.

1.21    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.22    "**Chapter 11 Case**" means the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled <u>West End Financial Advisors, LLC</u>, Case No. 11-11152 (SMB), as substantively consolidated, and currently pending before the Bankruptcy Court.

1.23    "**Chicago Diversified Note**" means that certain promissory note, made by Chicago Diversified Foods Corp. to the order of West End Special Opportunity Fund I in the original principal amount of $250,000.

1.24    "**Claim**" shall have the meaning ascribed to "claim" in Bankruptcy Code § 101(5).

1.25    "**Claims Objection Deadline**" means the later of (i) 90 days after the Effective Date or (ii) 90 days after the date any Proof of Claim or Proof of Interest is filed.

1.26    "**Class**" means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

1.27 **"Committee"** means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee for Region 2 in this Case pursuant to Bankruptcy Code § 1102.

1.28 "**Confirmation**" means the entry of the Confirmation Order.

1.29 "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.30 "**Confirmation Order**" means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.31 "**Creditor**" means a holder of an Allowed Claim.

1.32 "**Cure Amount**" means any amount required, pursuant to Sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.33 "**Debtor**" means West End Financial Advisors LLC, as substantively consolidated pursuant to the Substantive Consolidation Order.

1.34 "**Defendant**" means any Person that is or becomes a defendant in an Adversary Proceeding or other claim or cause of action commenced by the Debtor, the Creditors Committee on behalf of the Estate, or the Post-Confirmation Estate, that has not been resolved, withdrawn, or settled.

1.35 **"Disclosure Statement"** means the *Disclosure Statement for the Plan of Liquidation of West End Financial Advisors, LLC,* including all exhibits, attachments or amendments thereto, approved by the Bankruptcy Court.

1.36 "**Disputed**" means, with respect to any Claim or portion thereof which has not otherwise been or is not otherwise Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court:

a. if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Post-Confirmation Estate, or any other party-in-interest has either (1) interposed an objection, in whole or in part, or request for estimation, (2) filed a motion to disallow or expunge, in whole or in part, which has not been withdrawn or determined by a Final Order or otherwise resolved or settled by the parties thereto or (3) commenced an Adversary Proceeding or other Cause of Action against the holder of such Claim that has not yet been resolved, withdrawn, or settled; or

b. if a Proof of Claim has been filed by the applicable deadline: (i) a Claim for which a timely objection, in whole or in part, request for estimation, or motion to disallow or expunge, in whole or in part, is interposed which has not been withdrawn or determined by a Final Order of the Bankruptcy Court; or (ii) a Claim whose holder is a defendant in an Adversary Proceeding that has not yet been resolved, withdrawn, or settled; or

c. if a request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Debtor's books and records; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Debtor's books and records, but the nature or amount of the Claim as asserted in the request for payment varies from the nature or amount of such Claim as listed on the Debtor's books and records; or (iii) a Claim for which either (1) a timely

objection, in whole or in part, or request for estimation or (2) a motion to disallow or expunge, in whole or in part, or an Adversary Proceeding is interposed against the holder of such Claim which has not been withdrawn or determined by a Final Order of the Bankruptcy Court or otherwise resolved or settled by the parties thereto.

1.37    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Plan Administrator pursuant to the Plan and/or the Post Confirmation Estate Agreement.

1.38    **"Distribution Date"** means a date that is (a) 90 days after the Effective Date or (b) sooner at the sole discretion of the Plan Administrator.

1.39    "**DZ Bank**" means DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main, New York Branch.

1.40    **"DZ Bank Franchise Loan"** means the Loan extended by DZ Bank to Autobahn Funding Company LLC, NFA Funding LLC, NFA Funding II LLC, NFA Equipment Fund I LP, Northlight Food Franchise Fund, LP, Northlight Food Franchise Fund II, LP, Northlight Equipment Fund I, LP, DZ Bank and National Finance Associates, LLC pursuant to the DZ Bank Franchise Loan Agreement.

1.41    "**DZ Bank Franchise Loan Agreement**" means that certain Second Amended and Restated Franchise Loan Origination Agreement by and among Autobahn Funding Company LLC, NFA Funding LLC, NFA Funding II LLC, NFA Equipment Fund I LP, Northlight Food Franchise Fund, LP, Northlight Food Franchise Fund II, LP, Northlight Equipment Fund I, LP, DZ Bank and National Finance Associates, LLC, dated as of January 26, 2010.

1.42    "**DZ Bank Franchise Loan Agreement Waterfall**" means the provisions of Section 2.8(d) of the DZ Bank Franchise Loan Agreement, which provide for a distribution scheme

10

for the distribution of Available Funds in the Collection Accounts on each Settlement Date. Capitalized terms used in this definition and not otherwise defined in this Plan have the respective meanings assigned to such terms in the DZ Bank Franchise Loan Agreement.

1.43    "**Effective Date**" means the first Business Day that is 30 days after the Confirmation Order becomes a Final Order.

1.44    "**Entity**" means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a Governmental Unit or any subdivision thereof or any other entity.

1.45    "**Estate**" means, collectively, the estates created on the respective Petition Dates pursuant to Section 541 of the Bankruptcy Code, as substantively consolidated under the Substantive Consolidation Order.

1.46    "**Executory Contract**" means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

1.47    "**Estate Professional**" means any professional employed in the Case in accordance with a Final Order of the Bankruptcy Court.

1.48    "**Estate Professional Fees**" means the compensation for services rendered, and reimbursement of expenses incurred, by Estate Professionals during the period from and including the Petition Date and up to (but not including) the Effective Date, as awarded by one or more Final Orders.

1.49    "**Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not

11

been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.50    "**Fusion Stock**" means 1,900,000 shares of capital stock beneficially owned by the Debtor.

1.51    "**Governmental Unit**" means an Entity that is a "governmental unit" as defined in 11 U.S.C. § 101(27).

1.52    "**Iberia**" means Iberia Bank.

1.53    "**Iberia Secured Claim**" means the claim held by Iberia to the extent it is determined by Final Order to be a Secured Claim,  determined as of the Petition Date (including all interest thereon to the Petition Date plus costs, expenses and reasonable attorneys fees to the extent the same are permitted under the prepetition loan documents held by Iberia), plus all accrued and unpaid interest during the period from and including the Petition Date through and including the date immediately preceding the Effective Date.

1.54    "**Investment**" means the total principal amount actually invested by an Investor in any of the Debtor less the amounts withdrawn by such Investor.

1.55    "**Investor Creditors**" means those Investors who (a) have not received or retained Redemption Payment(s) in an aggregate amount equal to or greater than their Investment from the Debtor, and (b) (i) have asserted a claim against the Debtor in connection with their Investment and/or (ii) have otherwise asserted a Claim for the amount of their respective Investments in the Debtor irrespective of the form of such Investment.

1.56    "**Investor Creditor Unsecured Claim**" means and includes, unless otherwise specified in this Plan, any and all Claims of an Investor Creditor against the Debtor,

including (i) any and all Claims of the Investor Creditors for the unredeemed amount of their respective Investments in the Debtor or otherwise; and (ii) any and all Claims of any Defendants in Adversary Proceedings that are resolved, settled, or otherwise withdrawn and who thus have become Investor Creditors, in each instance solely in an amount and to the extent so resolved or settled.

1.57 **"Investors"** means, collectively, those Persons who made an investment in the Debtor irrespective of the form of such investment, including the Investor Creditors but does not include Non-Investor Unsecured Claims.

1.58 **"Interest"** means an equity interest in the Debtor.

1.59 **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

1.60 **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.61 **"L/C Family Limited Partnership"** means a New York Limited Partnership in which William Landberg or an entity he controls is the general partner and the one (1%) percent owner of such entity and Louise Crandall is the limited partner and ninety-nine (99%) owner of such entity.

1.62 **"Lien"** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.63 **"New Caplease Note"** means that certain promissory note, dated as of the Effective Date, to be executed by the Post-Confirmation Estate and made payable to the order of Caplease in the principal amount of the Caplease Secured Claim, which promissory note shall mature on the fifth (5th) anniversary of the Effective Date and contain the provisions provided for in this Plan.

1.64    "**New Iberia Note**" means that certain promissory note, dated as of the Effective Date, to be executed by the Post-Confirmation Estate and made payable to the order of Iberia in the principal amount of the Iberia Secured Claim, which promissory note shall bear interest at the rate of 5% per annum and shall mature on the fifth anniversary of the Effective Date.

1.65    "**New Northlight Note**" means that certain promissory note, dated as of the Effective Date, to be executed by the Post-Confirmation Estate and made payable to the order of Northlight in the principal amount of the Northlight Secured Claim, which promissory note shall mature on the fifth (5th) anniversary of the Effective Date. The New Northlight Loan shall bear interest at the rate of ten (10%) percent per annum, which shall be payable monthly in arrears, with a balloon payment consisting of the unpaid principal balance of the New Northlight Note due on the maturity date.

1.66    "**Non-Investor Unsecured Claim**" means, unless otherwise specified in this Plan, all Unsecured Claims against the Debtor (including (i) any and all Rejection Claims, (ii) any deficiency claims; (iii) any Claims of Vendors, and (iv) claims for goods delivered or services rendered in the ordinary course of the Debtor's business, that, in each case are (A) not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, or Investor Unsecured Claims, and (B) not otherwise entitled to distributive priority under the Bankruptcy Code or an order of the Bankruptcy Court.  Except as may otherwise be set forth in the Plan, for purposes of the Plan, Investor Creditors are not deemed to hold a Non-Investor Unsecured Claim against the Debtor.

1.67    "**Northlight**" means Northlight Fund L.P.

1.68    "**Northlight Collateral**" means the collateral held by Northlight on the Petition Date securing the secured Claim under the Northlight Loan Agreement.

14

1.69    "**Northlight Companies**" means, collectively, Northlight Food Franchise Fund, LP, Northlight Food Franchise Fund II, LP and Northlight Equipment Fund I, LP, each in their capacity as a party to the DZ Bank Franchise Loan Agreement.

1.70    "**Northlight Loan Agreement**" means that certain Amended and Restated Loan Agreement, dated as of December 18, 2009, by and among West End/Mercury Short Term Mortgage Fund, LP, as Borrower, West End Mortgage Finance Fund, LP, as Guarantor, Northlight, as Lender, and Northlight Financial LLC, as Agent.

1.71    "**Northlight Loan and Security Agreement**" means that certain Loan and Security Agreement, dated as of the Effective Date, to be executed by the Post Confirmation Estate, as borrower, and Northlight, as lender, which, among other things, shall provide for the terms and conditions governing the repayment of the obligations evidenced by the New Northlight Note, shall provide for the grant of the liens and security interests that will secure the obligations evidenced by the New Northlight Note.  The term and provisions of such Loan and Security Agreement shall be more particularly set forth in, and shall be substantially in the form of, the form of the "New Northlight Loan and Security Agreement" to be included in the Plan Supplement.

1.72    "**Northlight Secured Claim**" means the Secured Claim of Northlight, which for all purposes of this Plan shall be deemed an Allowed Secured Claim in an amount equal to the sum of (a) $5,200,000, plus (b) accrued and unpaid interest, as of (but not including) the Petition Date, calculated at the rate set forth in the Northlight Loan Agreement, (c) all fees, costs and expenses, including, without limitation, reasonable attorneys' fees, incurred by Northlight through and including the Effective Date that are chargeable and reimbursable under the Northlight Loan Agreement and (d) all accrued and unpaid interest during the period from and including the Petition

Date through and including the date immediately preceding the Effective Date, calculated at the rate of 15% per annum.

1.73 **"Person"** means a "person" as defined in 11 U.S.C. § 101(41).

1.74 "**Petition Date**" means March 15, 2011, the date on which the Debtor's Chapter 11 Case was initially commenced by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code; June 9, 2011 with respect to the West End Cash Liquidity Fund I, L.P.; and July 6, 2011 with respect to the West End Dividend Strategy Fund I L.P.

1.75 "**PIMCO Claim**" means all claims and causes of action of West End Cash Liquidity LP aka West End Cash Liquidity Fund I LP and West End Special Opportunity Fund LP against Pacific Investment Management Company LLC ("PIMCO), PIMCO Commodities Litigation Settlement or any subsidiary of PIMCO.

1.76 "**Plan**" means this *Plan of Liquidation* of West End Financial Advisors LLC, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.77 **"Plan Administrator"** means the person jointly designated by the Debtor and the Committee in the Post Confirmation Estate Agreement, as the fiduciary responsible for, among other things, the matters described in Article 7 herein and in the Post Confirmation Estate Agreement. When the context requires, any reference to the Plan Administrator or the Post Confirmation Estate shall mean the Plan Administrator on behalf of the Post Confirmation Estate.

1.78 "**Plan Supplement**" means a supplement to the Plan containing any documents necessary to administer the Plan, the Post Confirmation Estate or any of the assets of the estate, which shall be filed with the Bankruptcy Court no later than five (5) business days prior to the hearing for approval of the Disclosure Statement.

1.79     "**Post Confirmation Estate**" means the grantor trust to be created on the Effective Date in accordance with the provisions of Article 7 of the Plan and the Post Confirmation Estate Agreement, for the benefit of Holders of certain Allowed Claims.

1.80     "**Post Confirmation Estate Agreement**" means the trust agreement, substantially in the form set forth in the Plan Supplement, which, among other things, describes the powers, duties and responsibilities of the Plan Administrator and the liquidation and distribution of proceeds of the Post Confirmation Estate Assets.

1.81     "**Post Confirmation Estate Assets**" means all assets of the Debtor's Estate (including without limitation, any and all rights to any insurance recoveries and any and all rights relating to insurance policies or proceeds thereof), all of which are being transferred by the Debtor to the Post-Confirmation Estate under the Post-Confirmation Estate Agreement for distribution to holders of Allowed Claims.

1.82     "**Post-Confirmation Estate Beneficiaries**" means, collectively, Northlight, CapLease, Iberia, holders of Administrative Expense Claims, holders of Priority Tax Claims, holders of Priority Non-Tax Claims, holders of Class 3 Non-Investor Unsecured Claims and holders of Class 4 Investor Unsecured Claims.

1.83     "**Post-Confirmation Estate Professionals**" means any professionals retained by the Post-Confirmation Estate in accordance with the provisions of the Post-Confirmation Estate Agreement.

1.84     "**Approved Post-Confirmation Estate Professional Fees**" means the fees and actual, out-of-pocket costs and expenses invoiced by the Post-Confirmation Estate Professionals, to the extent approved and authorized for payment by the Plan Administrator.

1.85    "**Priority Claim**" means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, a Secured Claim, an Unsecured Claim or Bankruptcy Fees, entitled to priority under Section 507 of the Bankruptcy Code.

1.86    **"Priority Non-Tax Claim"** means any Allowed Claim, other than an Administrative Claim, a Priority Tax Claim, Bankruptcy Fees or an Unsecured Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a) or (b).

1.87    "**Priority Tax Claim**" means an Allowed Claim of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.88    "**Professional**" means any professional employed by the Debtor or the Committee under Section 105, 327 or 330 of the Bankruptcy Code, or by order of the Bankruptcy Court, to render professional services in the Debtor's chapter 11 case pursuant to a Final Order.

1.89    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with Sections 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court.

1.90    "**Proof of Claim**" means a Proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.91    "**Proof of Interest**" means a Proof of an Interest filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.92    "**Pro Rata**" means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.93    **"Redemption Payment(s)"** means the redemption payment(s) (either complete or partial) made by the Debtor to an Investor prior to the Petition Date in connection with such Investors' Investment in the Debtor.

1.94    "**Rejection Claim**" means a Claim arising as a result of the Debtor's rejection of an Executory Contract pursuant to Bankruptcy Code §§ 365 and 1123, subject to the limitations provided in Bankruptcy Code § 502(b), pursuant to this Plan or otherwise.

1.95    "**Schedules**" mean the schedules of assets and liabilities and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.96    "**Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Debtor has an interest or that is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's Estate interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.97    "**Secured Tax Claim**" means a Secured Claim for taxes or assessments held by a Governmental Unit.

1.98    "**Sentinel Insurance Policy**" means that certain Directors, Officers and Private Company Liability Insurance Policy, bearing Policy No. 04-188-13-86, including all endorsements thereto, issued by Illinois National Insurance Company to Sentinel Investment Management Inc., as insured.

1.99    **"Substantive Consolidation Order"** means the order entered by the Bankruptcy Court on July 25, 2011 partially substantively consolidating the following chapter 11

cases on the terms set forth therein: West End Financial Advisors LLC (Case No. 11-11152); Amagansett Realty SPV 1 LLC (Case No. 11-11167); Benedek Development Group, LLC (Case No. 11-11155); L/C Family Limited Partnership (Case No. 11-11157); Sentinel Investment Management Corp.(Case No. 11-11153); SIMCO SPV 1 LP (Case No. 11-11158); West End Absolute Return Fund I, LP (Case No. 11-11161); West End Capital Management LLC (Case No. 11-11154); West End Fixed Income Partners LP (Case No. 11-11159); West End Income Strategies Fund LP (Case No. 11-11160); West End Mortgage Finance Fund I LP (Case No. 11-11162); West End Private Client Fund L.P.(Case No. 11-11163); West End Real Estate Fund 1 LP (Case No. 11-11164); West End Special Opportunity Fund II, LP (Case No. 11-11166); West End Special Opportunity Fund, LP (Case No. 11-11165); West End/Mercury Short-Term Mortgage Fund, LP. (Case No. 11-11156); West End Cash Liquidity Fund I L.P. (Case No. 11-12774) and West End Dividend Strategy Fund I L.P. (Case No. 11-13247).

1.100 **"Vendor"** means any Person who supplied or provided goods, supplies, parts, materials, other tangible objects, or services to the Debtor prior to the Petition Date.

1.101 **"Other Definitions"** means, unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

# ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) (1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof:

      **2.1**     **Administrative Expense Claims.** On the later to occur of (i) the Distribution Date or (ii) the date on which such Claim shall become an Allowed Claim, the Debtor or the Plan Administrator shall (a) pay to each Holder of an Allowed Administrative Claim, including Professional Fees, a Pro Rata portion of Cash reasonably determined by the Debtor or the Plan Administrator, as the case may be, to be available based on the amount of available Post Confirmation Estate Assets in the Post-Confirmation Estate at that time, and thereafter, as often as reasonable in the Plan Administrator's sole discretion, make periodic pro rata payments to the holders of Allowed Administrative Claims, until such claims are paid in full or (b) satisfy and discharge such Administrative Expense Claim in accordance with such other terms as may be agreed upon by and between the Holder thereof and the Debtor or the Plan Administrator, as the case may be. The failure to object to confirmation of this Plan by a Holder of an Allowed Administrative Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

21

**2.2 Professional Fees.** All Persons seeking an award by the Bankruptcy Court of Professional Fees shall file their respective final applications for allowance of Professional Fees for services rendered and reimbursement of expenses incurred by the date that is ninety (90) days after the Confirmation Date, and shall receive from the Plan Administrator, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such amounts as are allowed by the Bankruptcy Court  (A) within thirty (30) days of the date upon which the order relating to any such Professional Fee Claim is entered provided that the Post Confirmation Estate has  sufficient available Cash to pay such claims as determined by the Plan Administrator, or (B) upon such other terms as may be mutually agreed upon between the holder of such a Claim for Professional Fees and the Debtor and/or the Plan Administrator and the Post Confirmation Estate.

**2.3 Bankruptcy Fees.** All Bankruptcy Fees and charges assessed against the Debtor shall be paid in Cash in full as required by statute and until the closing of this Case.

**2.4 Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim, if any, shall receive from the Debtor or the Plan Administrator, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, regular installment payments, in cash, equal to the Allowed Priority Tax Claim over a period ending not later than five (5) years from the Petition Date.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or to reject the Plan in accordance with Bankruptcy Code § 1126, or (iii) deemed to reject the Plan are thus not entitled to vote to accept or to reject the Plan pursuant to

22

Bankruptcy Code § 1126:

| West End Classes of Claims | | | |
|---|---|---|---|
| **Class** | **Designation** | **Impairment** | **Entitled to Vote?** |
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2(a) | Northlight Secured Claim | Impaired | Entitled to Vote |
| Class 2(b) | Iberia Secured Claim | Impaired | Entitled to Vote |
| Class 2(c) | Caplease Secured Claim | Impaired | Entitled to Vote |
| Class 3 | Non-Investor Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Investor Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Equity Interests | Impaired | Deemed To Reject |

**3.1** **Class 1 – Priority Non-Tax Claims.** Class 1 consists of all Allowed Priority Non-Tax Claims, if any, against the Debtor. Class 1 Claims shall be Allowed Claims as and to the extent set forth in Section 4.1 hereof.

**3.2** **Class 2 (a) - Northlight Secured Claim.** Class 2(a) consists of the Allowed Northlight Secured Claim, if any, against the Debtor.

**3.3** **Class 2 (b) – Iberia Secured Claim.** Class 2(b) consists of the Allowed Iberia Secured Claim, if any, against the Debtor.

**3.4** **Class 2 (c) – Caplease Secured Claim.** Class 2 (c) consists of the Allowed Caplease Secured Claim, if any, against the Debtor.

**3.5** **Class 3 – Non-Investor Unsecured Claims.** Class 3 consists of all Allowed Non-Investor Unsecured Claims.

**3.6** **Class 4 – Investor Unsecured Claims.** Class 4 consists of all Allowed Investor Unsecured Claims. With respect to any Investor who is a Defendant and whose Adversary Proceeding is resolved, settled, or determined by a Final Order of the Bankruptcy

Court, such Person shall have an Allowed Class 4 Claim solely in an amount and to the extent such Adversary Proceeding has been so resolved, settled, or determined.

 **3.7** **Class 5 – Equity Interests**.  Class 5 consists of all Equity Interests in the Debtor.

## ARTICLE 4

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

 **4.1** **Class 1 – Priority Non-Tax Claims**.  If not paid in full pursuant to a Final Order of the Bankruptcy Court prior to the Effective Date, and except to the extent such holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Priority Non-Tax Claim, if any, against the Debtor shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, Cash equal to the amount of such Allowed Claim on the later of (a) the Effective Date and (b) the date that is 10 days after the Allowance Date.

 **4.2** **Class 2(a) – Northlight Secured Claim**. In full satisfaction, settlement and release of, and in exchange for, the Northlight Secured Claim, Northlight shall receive (a) on the Effective Date, the New Northlight Note as provided for in this Plan.  The Northlight Allowed Secured Claim as evidenced by the New Northlight Note shall be secured with the same priority in the same collateral it held prior to the Petition Date. The New Northlight Note shall bear interest only at the rate of 10% per annum which shall be payable monthly in arrears with a balloon payment consisting of the unpaid principal balance of the New Northlight Note which shall mature on the fifth (5th) anniversary of the Effective Date. The New Northlight Note may be prepaid at any time witthout premium or penalty.

**4.3** **Class 2(b) – Iberia Secured Claim.** In full satisfaction, settlement and release of, and in exchange for, the Iberia Secured Claim, Iberia shall receive (a) on the Effective Date, the New Iberia Note as provided for in this Plan. The Iberia Allowed Secured Claim as evidenced by the New Iberia Note shall be secured with the same priority in the same collateral it held prior to the Petition Date. Iberia's Allowed Secured Claim shall accrue interest at the rate of five (5%) percent per annum, payable at maturity, and shall mature on the fifth anniversary of the Effective Date. On the maturity date, the principal due with respect to the Iberia Secured Claim plus all accrued interest shall be due and payable, provided however, that the Debtor or Plan Administrator shall be permitted to prepay the Iberia Allowed Secured Claim at any time without premium or penalty. Notwithstanding the foregoing, the Debtor or the Plan Administrator shall pay to Iberia the net proceeds from the sale of any of its collateral which is sold prior to the maturity date.

**4.4** **Class 2(c) – Caplease Secured Claim.** In full satisfaction, settlement and release of, and in exchange for, the CapLease Secured Claim, CapLease shall receive (a) on the Effective Date, the New CapLease Note as provided for in this Plan. The obligations evidenced by the New CapLease Note shall be secured by senior, first-priority liens on and security interests in the Apartment Collateral. The New CapLease Note shall have a maturity date of five (5) years from the Effective Date and shall bear interest at the rate of five (5%) percent per annum, payable quarterly in arrears. The Debtor shall have the right to prepay the New CapLease Note without premium or penalty. Notwithstanding the foregoing, the Debtor or Plan Administrator shall pay to CapLease the net proceeds from the sale or other disposition of any of its collateral which is sold prior to the

Maturity Date with such net proceeds being applied first to interest outstanding on the date of such payment and the balance, if any, to reduce the then outstanding principal amount of the Caplease Secured Claim.

    **4.5**    **Class 3 – Non-Investor Unsecured Claims**.  Except to the extent a holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Non-Investor Unsecured Claim against the Debtor, shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such holder's Pro Rata Share of the Cash distributed by the Post Confirmation Estate in the time and manner set forth in this Plan and the Post Confirmation Estate Agreement.

    **4.6**    **Class 4 – Investor Unsecured Claims**.  Subject to the payment in full of, or reserve for, all Non-Investor Unsecured Claims against the Debtor, and except to the extent such holder has agreed to a less favorable treatment of its Allowed Claim, each holder of an Allowed Investor Unsecured Claim against the Debtor shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, such holder's Pro Rata Share of the Cash distributed by the Post Confirmation Estate in the time and manner as set forth in this Plan and the Post Confirmation Estate Agreement.

    **4.7**    **Class 5 – Equity Interests**.  On the Effective Date, all outstanding Equity Interests in the Debtor shall be canceled and deemed terminated and of no force and effect and the Holders of such Equity Interests shall not be entitled to retain or receive any property on account of such Equity Interest.

{00543543.DOC;2 }

**ARTICLE 5**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**5.1** **Assumption and Assignments of Executory Contracts.** On the Effective Date, all Executory Contracts to which the Debtor is a party, which have not previously been assumed or rejected pursuant to an order of the Bankruptcy Court, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code.

**5.2** **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract of the Debtor pursuant to Section 5.1 of the Plan shall be treated as a Rejection Claim.

**5.3** **Bar to Rejection Claims.** A Proof of Claim with respect to any Rejection Claim shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Confirmation Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Post Confirmation Estate or its properties.

**Article 6**

**IMPLEMENTATION OF THE PLAN**

27

**6.1** **Establishment of the Post Confirmation Estate.** On the Effective Date, the Debtor, on its own behalf and on behalf of Holders of Allowed Claims, shall execute the Post Confirmation Estate Agreement and shall take all other steps necessary to establish the Post Confirmation Estate. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtor shall assign and transfer to the Post Confirmation Estate all of the assets of the Debtor and its Estate (including without limitation all property of its estate, all rights as a trustee or debtor in possession to assert causes of action, and all rights as a trustee or debtor in possession to assert a Director and Officer Action) and all of its right, title, and interest in and to all of the Post Confirmation Estate Assets, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. In connection with the transfer of these assets, including rights and causes of action (including Avoidance Actions), any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post Confirmation Estate shall vest in the Post Confirmation Estate and its representatives, and the Debtor and the Post Confirmation Estate are authorized to take all necessary actions to effectuate the transfer of such privileges.

**6.2** **Funding Expenses of the Post Confirmation Estate.** As more fully described in the Post-Confirmation Estate Agreement, and provided such funding does not conflict with the treatment of the Northlight Secured Claim, the Iberia Secured Claim and the CapLease Secured Claim, any Cash received by the Post Confirmation Estate shall be applied <u>first</u>, for the fees, costs, expenses and liabilities of the Plan Administrator, and its professionals; <u>second</u>, to satisfy the allowed administrative expenses of the Debtor's estate; and <u>third</u>, to pay the distributions

28

provided for Classes 3 and 4 pursuant to the Plan.

      **6.3**      **Evidence of Class 4 Creditor's Interests in Post Confirmation Estate.**
As soon as practicable after the entry of the Confirmation Order, the Plan Administrator shall determine the Interests of Class 4 Claimholders in the Post-Confirmation Estate. Subject to the provisions of the Plan relating to treatment of the holders of Allowed Class 2(a) Secured Claims, 2(b) Secured Claims, 2(c) Secured Claims and Class 3 Unsecured Claims, and subject to the provisions of the Plan and the Post Confirmation Estate Agreement relating to reserves for Disputed Claims, each holder of an Allowed Class 4 Investor Unsecured Claim shall receive a pro-rata share of the Post-Confirmation Estate Assets as and when such assets are available for distribution as determined by the Plan Administrator in accordance with the provisions of the Post-Confirmation Estate Agreement after payment in full of all claims having priority over Class 4 Investor Unsecured Claims. Evidence of Allowed Class 4 Investor Unsecured Creditors interests in the Post-Confirmation Estate shall be in book entry form only and no certificates or other evidence of beneficial ownership shall be issued by the Plan Administrator.

      **6.4**      **Corporate Action.**  Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the limited liability company power of the Debtor shall be deemed authorized and approved without any requirement of further action by the Debtor, the Debtor's limited liability company members or the Debtor's boards of managers. The Debtor (and their boards of managers) shall dissolve or otherwise terminate their existence following the Effective Date.

      **6.5**      **Preservation of Claims and Causes of Action**. (a) *Avoidance Actions.*

The Plan Administrator, on behalf of the Post Confirmation Estate, retains all rights on behalf of the Debtor and the Post Confirmation Estate to commence and pursue any and all Avoidance Actions or any other claim which is property of the estate under section 541 of the Bankruptcy Code (under any theory of law or equity, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case) to the extent the Plan Administrator, on behalf of the Post Confirmation Estate, deems appropriate, in accordance with and subject to the terms of the Post Confirmation Estate Agreement. Potential Avoidance Actions, which may but need not have been pursued by the Debtor prior to the Effective Date and by the Plan Administrator, on behalf of Post Confirmation Estate, after the Effective Date to the extent warranted, include, without limitation, the following claims against third parties set forth below:

(a) Any lawsuits for, or in any way involving, the collection of accounts receivable or any matter related thereto;

(b) Any Directors and Officers Action;

(c) Any and all potential claims for prepetition breaches of fiduciary duty, negligent management and wasting of corporate assets and corporate opportunity and/or arising under the Debtor's directors and officers insurance policies against the Debtor's prepetition directors and officers, managing member or general partner, among others;

(d) Any and all potential claims against the prepetition members of the Debtor's boards of directors, managers, members, general partners, limited partners and/or shareholders, for acts or omissions occurring prior to the Petition Date, including, without limitation, the right to equitably subordinate claims held by such directors, officers, or shareholders pursuant to Section 510(c) of the Bankruptcy Code;

(e) Claims arising out of, and in connection with, the prepetition management, operation and/or reporting of financial and other

30

information against all persons and entities having any responsibility with respect thereto, whether such claims are legal, equitable or statutory in nature;

(f) Claims to recover amounts improperly awarded to employees under the terms of any prepetition employment or change in control agreement;

(g) All violations against third parties with respect to prepetition violations of applicable federal or state securities laws;

(h) All claims or causes of action arising out of or that relate to prepetition acquisitions or financings;

(i) All claims, counterclaims, cross-claims, third party claims, and affirmative defenses asserted or that could be asserted in any litigation involving the Debtor, whether arising before or after the Petition Date; and

(j) All claims or causes of action for credits; overpayments; overcharges; prepaid deposits and other amounts; adjustments; recoupment; setoffs; and other rights to payment from those Entities who have received payments or other transfers of property of the Estate during the course of the Chapter 11 Case.

(b) *Other Causes of Action.* In addition, potential Avoidance Actions or other claims or causes of action which may be pursued by the Debtor prior to the Effective Date and by the Plan Administrator, on behalf of the Post Confirmation Estate after the Effective Date, also include, without limitation the following:

(i) Any other actual or potential claims or causes of action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses or operations, including, without limitation, the following: possible claims against vendors, landlords, sublessees, assignees, customers or suppliers for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections /accounts receivable matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other entity; employee, management or operational matters; claims against landlords, sublessees and assignees arising from various leases, subleases and assignment agreements relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance and other similar charges; financial reporting; actions against insurance carriers relating to coverage, indemnity or other matters; counterclaims and defenses relating to notes or other obligations; contract or tort

31

claims which may exist or subsequently arise; and

(ii)      Except for the express waiver of certain claims in the Plan, any and all actual or potential avoidance claims pursuant to any applicable section of the Bankruptcy Code, including, without limitation Sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, arising from any transaction involving or concerning the Debtor.

(d)      *Causes of Action Unknown as of Confirmation Date.* In addition, there may be numerous other claims or causes of action belonging to the Debtor which currently exist or may subsequently arise that are not set forth herein because the facts upon which such claims or causes of action are based are not fully or currently known by the Debtor, and, as a result, cannot be raised during the pendency of the Chapter 11 Case (collectively, the "Unknown Causes of Action"). The failure to list any such Unknown Cause of Action herein is not intended to limit the rights of the Plan Administrator, on behalf of the Post Confirmation Estate, to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action become fully known to the Debtor and/or the Plan Administrator.

(e)      *No Causes of Action Waived by Omission.* The potential net proceeds from the Debtor's claims or causes of action identified herein or which may subsequently arise or be pursued, are presently speculative and uncertain and therefore no value has been assigned to such recoveries. The Debtor and the Plan Administrator do not intend, and it should not be assumed, because any existing or potential claims or causes of action have not yet been pursued or are not set forth herein that such claims have been waived.

(f)      *Vesting of Causes of Action Reserved under Plan.* Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered

into in connection with the Plan, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and causes of action that the respective Debtor or the Post Confirmation Estate may hold against any Entity, including but not limited to those claims or causes of action listed herein shall vest in the Post Confirmation Estate, and the Plan Administrator, on behalf of the Post Confirmation Estate, shall retain and may exclusively enforce, as the authorized representative of the Post Confirmation Estate, any and all such claims, rights, or causes of action, as appropriate, in accordance with the best interests of the Post Confirmation Estate and the Holders of Allowed Claims entitled to distributions under the Plan, and the terms of the Post Confirmation Estate Agreement. The Plan Administrator, on behalf of the Post Confirmation Estate, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action without the consent or approval of any third party and without any further order of the Bankruptcy Court or any other court except as otherwise provided in the Post Confirmation Estate Agreement.

**6.6     Cancellation and/or Surrender of Notes, Instruments, Debentures and Equity Securities.**     On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and all Interests in the Debtor shall be canceled and deemed terminated and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for a cancellation to the appropriate indenture trustee or other such person), except for purposes of distribution in accordance with the terms of this Plan. On the Effective Date, the indentures shall be

33

deemed canceled as permitted by Section 1123(a)(5) of the Bankruptcy Code.

6.7 **Reserves.** Any reserves maintained by the Debtor or the Plan Administrator, as the case may be, in connection with the distribution of funds on account of Allowed Claims, may be maintained by bookkeeping entries alone; the Debtor or the Plan Administrator, as the case may be, need not (but may) establish separate bank accounts for such purposes.

6.8 **Termination of Post Confirmation Estate**. The Post Confirmation Estate will terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Post Confirmation Estate for a finite period, if such extension is necessary for the liquidation of the Post Confirmation Estate Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least six (6) months prior to the expiration of each extended term; provided, however, that the Plan Administrator receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Post Confirmation Estate as a grantor trust for federal income tax purposes.

6.9 **Termination of Plan Administrator**. The duties, responsibilities and powers of the Plan Administrator shall terminate in accordance with the terms of the Post Confirmation Estate Agreement.

6.10 **The New Northlight Note and Other Northlight Transaction Documents**. On the Effective Date, the Post-Confirmation Estate shall execute and deliver to Northlight (a) the New Northlight Note, (b) the New Northlight Loan and Security Agreement, (c) customary security

{00543543.DOC;2 }

documents, including, without limitation, mortgages, security agreements, pledge agreements, deposit account control agreements and related instruments of perfection that are necessary, in Northlight's reasonable judgment, to grant, evidence and perfect the liens and security interests granted to Northlight pursuant to this Plan, and (d) such other documents and instruments as Northlight reasonably may request, all of which shall be satisfactory, in form and substance, to Northlight. The New Northlight Note shall not provide for any scheduled amortization; provided, however, that the Post-Confirmation Estate shall be obligated to reduce the then outstanding balance of the New Northlight Note by making the mandatory distributions to Northlight from the sale of other disposition of the Northlight Collateral.

6.11    **The New Iberia Note and Other Iberia Transaction Documents**. On the Effective Date, the Post-Confirmation Estate shall execute and deliver to Iberia (a) the New Iberia Note, (b) the New Iberia Loan and Security Agreement, (c) customary security documents, including, without limitation, mortgages, security agreements, pledge agreements, deposit account control agreements and related instruments of perfection that are necessary, in Iberia's reasonable judgment, to grant, evidence and perfect the liens and security interests granted to Iberia pursuant to this Plan, if any, and (d) such other documents and instruments as Iberia reasonably may request, all of which shall be satisfactory, in form and substance, to Iberia. The New Iberia Note shall not provide for any scheduled amortization; provided, however, that the Post-Confirmation Estate shall be obligated to reduce the then outstanding balance of the New Iberia Note by making the mandatory distributions to Iberia from the sale of other disposition of Iberia's Collateral.

6.12    **The New CapLease Note and Other CapLease Transaction Documents**.

On the Effective Date, the Post-Confirmation Estate shall execute and deliver to CapLease (a) the New CapLease Note, (b) the New CapLease Loan and Security Agreement, (c) customary security documents, including, without limitation, mortgages, security agreements, pledge agreements, deposit account control agreements and related instruments of perfection that are necessary, in CapLease's reasonable judgment, to grant, evidence and perfect the liens and security interests granted to CapLease pursuant to this Plan, and (d) such other documents and instruments as CapLease reasonably may request, all of which shall be satisfactory, in form and substance, to CapLease. The New CapLease Note shall not provide for any scheduled amortization; provided, however, that the Post-Confirmation Estate shall be obligated to reduce the then outstanding balance of the New CapLease Note by making the mandatory distributions to CapLease from the sale of other disposition of the CapLease Collateral.

6.13    **Transfer Taxes**.  Any transfer, assignment, conveyance or delivery of the Post Confirmation Estate Assets to the Post Confirmation Estate and the execution of any transfer documents in connection with the Plan, shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar tax to the extent permitted under section 1146(a) of the Bankruptcy Code.

6.14    **Dissolution of Committee**. Upon the completion of the transfers of the Debtor's assets to the Post-Confirmation Estate, the Committee shall be dissolved and each member and the professionals retained by the Committee will be released and discharged from their respective fiduciary obligations.

6.15    **Federal Income Tax Treatment of the Post Confirmation Estate**.  As

provided in the Post Confirmation Estate Agreement, the Post Confirmation Estate (i) will be established for the sole purpose of taking title to, protecting, conserving, reducing to cash and distributing any proceeds and recoveries from the Post Confirmation Estate Assets in accordance with Treasury Regulation § 301.7701-4(a), with no objective to continue or engage in the conduct of a trade or business. The Post Confirmation Estate is intended to qualify as a grantor trust for United States federal income tax purposes. In general, a liquidating trust is not a separate taxable entity for United States federal income tax purposes, but, instead, is treated as a grantor trust, *i.e.*, a pass-through entity. The Post Confirmation Estate Agreement will require all parties (i) to treat the transfer of the Post Confirmation Estate Assets to the Post-Confirmation Estate as a transfer of such assets directly to the Post Confirmation Estate Beneficiaries, followed by the transfer of such assets by such beneficiaries to the Post Confirmation Estate, and (ii) consistent therewith, to treat the Post-Confirmation Estate as a grantor trust of which the Post Confirmation Estate Beneficiaries are the owners and grantors. Subject to the terms of the Post Confirmation Estate Agreement, and the powers of any oversight board established thereunder, the Plan Administrator may determine the fair market value of the Post Confirmation Estate Assets as soon as possible after the Effective Date, and Post Confirmation Estate Beneficiaries and the Plan Administrator must consistently use such valuation for all United States federal income tax purposes, including for determining gain, loss or tax basis.

## ARTICLE 7

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1     Plan Administrator.**  The Plan Administrator shall distribute all Cash or other property to be distributed under the Plan through and in accordance with the terms and conditions set forth in the Post Confirmation Estate Agreement. The powers and duties of the Plan Administrator and its compensation shall be governed by the Post-Confirmation Estate Agreement. Pending the final distribution of all sums distributable under the terms of the Plan, the Plan Administrator shall be deemed to be an officer of the Debtor with full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

**7.2     Timing and Funding of Distributions Under the Plan.**  The Plan shall be funded by the Post-Confirmation Estate from several sources, including but not limited to its available cash, from the proceeds of the prosecution of Adversary Proceedings, from investment income and from the monetization of the assets transferred to the Post-Confirmation Estate by the Debtor on the Effective Date.

**7.3     Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**7.4     Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) 90 days after the Effective Date or (ii) 90 days after the date proof of such Claim or Interest is filed.  Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a

Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

7.5 **Prosecution of Objections.** After the Confirmation Date, only the Debtor or the Plan Administrator shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtor or the Plan Administrator shall have the right to litigate to judgment, settle or withdraw any objection to any Claim or Interest.

7.6 **Distributions with Respect to Disputed Claims.** During the pendency of any objection to any Claim or Interest, no distribution under the Plan will be made to the holder of such Claim or Interest. However, at the discretion of the Plan Administrator, and to the extent sufficient Cash is available to make a distribution, the Plan Administrator shall segregate Cash equal to the amount which would be distributed on account of such Disputed Claim if such Claim had been an Allowed Claim but for the pendency of the objection. The Debtor or Plan Administrator may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such disputed Claim or Interest.

7.7 **Disputed Claim Reserve.** The Plan Administrator shall maintain in his good faith judgment, in accordance with the Plan Administrator's powers and responsibilities under the Plan and the Post Confirmation Estate Agreement, a reserve for any distributable amounts required to be set aside on account of Disputed Claims. Such amounts (net of any expenses, including any taxes, of the reserve relating thereto) shall be distributed, as provided in the Post Confirmation Estate

Agreement and in the Plan, as such Disputed Claims are resolved by Final Order, and shall be distributable with respect to such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

**7.8**      **Delivery of Distributions.**  Except as provided in Sections 7.9, 7.10 and 7.11 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Plan Administrator has not received a written notice of a change of address.

**7.9**      **Undeliverable Distributions.**

(a)  If the distribution to the holder of any Claim or Interest is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 7.10 of the Plan.

(b)      Nothing contained in the Plan shall require the Debtor or the Plan Administrator to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

**7.10**      **Unclaimed Distributions.** Any Cash or other property to be distributed under the Plan shall revert to the Post-Confirmation Estate if it is not claimed by the Entity entitled thereto

before the later of (i) 180 days after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order or is otherwise Allowed, and such Entity's claim shall be deemed to be reduced to zero.

7.11 **Set-offs.** The Plan Administrator may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Plan Administrator of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Plan Administrator has or may have against such holder.

7.12 **Estimation of Claims for Purposes of Distribution.** The Debtor or the Plan Administrator, as the case may be, for cause shown, shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property, that must be segregated or escrowed on account of any Disputed Claim. Any Creditors whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim or any other Entity or property if the Allowed Claim of such creditor, as determined in a Final Order, exceeds the amount segregated or escrowed for such claim.

7.13 **Allocation of Plan Distribution Between Principal and Interest**. To the extent applicable to a particular Claim, all distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but

solely to the extent that interest is an allowable portion of such Allowed Claim).

**7.14     Interest on Claims**.  Except as otherwise provided in this Plan or as expressly set forth in a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Code § 726, as made applicable in this Case pursuant to Bankruptcy Code § 1129, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**7.15     Minimum Distributions**.  No payment of Cash less than $100.00 shall be made by the Plan Administrator or the Debtor to any holder of a Claim.  Any Post Confirmation Estate Assets or Cash of the Debtor which is undistributable in accordance with this Section  shall be paid into the Bankruptcy Court, and the holders of Allowed Claims who will not receive a payment from the Post Confirmation Estate or the Debtor as a result of this Section 7.15 may seek a recovery therefrom of any such amount in accordance with any applicable bankruptcy laws, rules, or procedures.

## ARTICLE **8**

### INJUNCTION AND EXCULPATION

**8.1     Injunction.**  Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, or interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the

Estates which is to be transferred to Post Confirmation Estate or distributed to creditors under this Plan. Pursuant to Bankruptcy Code Section 1141(d)(3), the Debtor is not receiving a discharge.

      8.2    **Limitation of Liability.**  Neither the Debtor, or its managing member, or its professionals, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Case or the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall

anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties referred to herein.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1 **Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2 **Compliance with Tax Requirements.** In connection with the Plan, the Debtor and, where applicable the Plan Administrator, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

9.3 **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

44

**9.4    Amendments.**  The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**9.5    Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor's Estate.

**9.6    Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**9.7    Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**9.8    Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**9.9    Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**9.10    Notices.**  All notices and other communications to be given or made hereunder

shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)      if to the Debtor at Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 875 Third Avenue, 9th Floor, New York, New York 10022, Attn:  A. Mitchell Greene, Esq.;

(b) if to the Committee at Klestadt & Winters LLP,  570 Seventh Avenue, 17th Floor, New York, New York 10018-6314, Attn: Fred Stevens, Esq.;

(c)      if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proof of Claim or Proof of Interest filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Plan Administrator has not received a written notice of a change of address.

(d)      if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance; and

(e)      if to the Plan Administrator, at the address set forth in the Post Confirmation Estate Agreement.

**9.11**   **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

**9.12    Other Actions.**  Nothing contained herein shall prevent the Debtor, the Plan Administrator, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

**9.13    Severability.**  In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**9.14    Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

### ARTICLE 10

### RETENTION OF JURISDICTION

**10.1    Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Plan Administrator and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)    Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any Adversary Proceeding;

(d)    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

{00543543.DOC;2 }

(e)　Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)　Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Post Confirmation Estate Agreement;

(g)　Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of the Plan;

(h)　To determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Plan Administrator or the Post Confirmation Estate after the Effective Date including but not limited to all claims and causes of action preserved for the Estates under this Plan; provided, however, that the Plan Administrator and the Post Confirmation Estate shall reserve the right to commence collection actions, actions to recover receivables and other similar actions in all appropriate jurisdictions;

(i)　Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(j)　Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)　Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)　Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)　Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)     To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Post Confirmation Estate Agreeement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(q)     To hear and determine any matters that may arise in connection with any sales of assets approved by the Bankruptcy Court prior to the Confirmation Date  or any order of the Bankruptcy Court with respect thereto; and

(r)     Enter an Order or Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order, the Post-Confirmation Estate Agreement and any final decree, including, without limitation, the enforcement of any rights of the Debtor and the right of the Plan Administrator to reopen the Case in order to seek an extension of the term of the Post Confirmation Estate.

## ARTICLE 11

### CONDITION TO CONFIRMATION HEARING AND EFFECTIVE DATE.

11.1    **Condition Precedent to Confirmation Hearing.**  The Plan shall not be confirmed unless and until the Confirmation Order is in form and substance reasonably acceptable to the Debtor and the Committee.

11.2    **Condition Precedent to the Effective Date**.  The Plan shall not become effective unless and until the Confirmation Order becomes a Final Order.

## ARTICLE 12

### CLOSING THE CASE

12.1    **Substantial Consummation.**  Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its property and Creditors shall be subject to further Orders of the Bankruptcy Court.

13.2    **Closing the Case.**  Upon the Substantial Consummation of the Plan, the Debtor or the Plan Administrator shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**DATED:**  New York, New York
August 31, 2011

West End Financial Advisors, LLC


By: /s/ Raymond J. Heslin
**Raymond J. Heslin, Managing Member**