**FOX ROTHSCHILD LLP**
John Wait
Erin Zavalkoff-Babej
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900

*Attorneys for Kevin Kramer*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| WEST END FINANCIAL ADVISORS, LLC | : Case No. 11-11152 (SMB) |
| | : |
| Debtor. | : |

---------------------------------------------------------x

## MOTION OF KEVIN KRAMER
## FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

Kevin Kramer ("Kramer"), by and through his attorneys, Fox Rothschild LLP, hereby files this motion (the "Motion") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to pursue third-party claims for indemnification and defense costs against West End Financial Advisors LLC ("West End Financial") and West End Mercury Short Term Mortgage Fund, LP, ("West End Mercury"), two of the above-captioned debtors (together, West End Financial and West End Mercury are referred to as, the "Debtors"), as more fully explained herein. In support of this Motion, Kramer represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for relief requested herein are Section 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

3. On March 15, 2011 (the "Petition Date"), West End Financial and fifteen of its subsidiaries, including West End Mercury, filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking relief under the provisions of Chapter 11 of the Bankruptcy Code.

4. On July 22, 2011, the Bankruptcy Court entered an Order Directing The Partial Substantive Consolidation of the Debtors' Chapter 11 Estates, amending the caption of debtors' cases and directing the clerk of the Court to close the docket and claims register in Case Nos. 11-11153 through 11-11167, Case No. 11-12774 and Case No. 11-13247 and to add any proofs of claim filed against those cases to the claims register of Case No. 11-1115 [DE 194].

5. West End Financial was created in 2000 by William Landberg ("Landberg") and subsequently acquired a boutique investment advisory company, Sentinel Investment Management Corp. The companies then formed approximately 42 funds.

6. Kevin Kramer served as the President and Chief Operating Officer of West End Financial from at least 2006 through June 2009 and was an officer of West End Mercury during the same period.

7. In 2008, West End Mercury entered into a loan (the "Loan") with Century Bank, F.S.B. ("Century"), the validity of which is expressly denied by Kramer for the reasons set forth below.

8. In connection with the Loan, on or about August 20, 2008, West End Mercury (the "Borrower") executed a note in favor of Century in the principal amount of $5,000,000 (the "Note") as amended and restated by Note dated August 20, 2008 in the principal amount of $5,500,000 and as further amended and restated by Note dated October 28, 2008 in the principal amount of $4,829,278.56 (the "Amended Note").

9. Principal and interest payments under the Note were required to be made monthly until August 20, 2010 however, the Borrower defaulted on its obligations under the Amended Note by failing to make the payments due March 20, 2009 and thereafter.

10. On June 9, 2009, Century formally notified the Borrower that it was in default under the Amended Note because of the Borrower's failure to make payments of principal and interest due under the Amended Note on March 20, 2009, April 20, 2009 and May 20, 2009 (collectively, the "Delinquent Payments") and demanded payment of the Delinquent Payments. The Borrower failed to make the Delinquent Payments.

11. On November 13, 2009, Century was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver. On that same date, IBERIABANK entered into a purchase and assumption agreement with the FDIC, as receiver, to acquire certain assets formerly owned by Century Bank, including the Note.

**The Validity of the Kramer Guaranty Is Expressly Denied**

12. Contemporaneously with the execution of the Note and at Landberg's insistence Kramer executed and delivered to Century a written guaranty of payment and performance with respect to any of the Borrower's obligations to Century (the "Guaranty").

13. As explained in greater detail in his Third-Party Complaint (defined below), contemporaneously with the execution of the Loan, Landberg fraudulently induced Kramer to

sign an alleged Guaranty, by representing to Kramer that the proceeds from the Loan would be used for a legitimate business purpose and that Kramer's signature was required to obtain the Loan. Kramer relied upon the fraudulent representations by Landberg in signing the Guaranty and at all relevant times was acting in good faith and in his corporate capacity on behalf of and for the benefit of West End Financial and West End Mercury.

14. It has since come to light that Landberg impermissibly diverted the Loan proceeds as part of a larger Ponzi scheme. Kramer had no knowledge of the Ponzi scheme orchestrated by Landberg, which scheme ultimately caused West End Mercury and/or West End Financial to default on the Loan. Landberg has been indicted for his criminal actions in connection with the Ponzi scheme.

15. Despite the circumstances under which the Guaranty was procured, on May 25, 2010. IBERIABANK sent Kramer a letter advising him that it has succeeded Century's rights under the Note and the Guaranty and that the Borrower continued to be in default under the Note. Further by reason of the default, IBERIABANK insisted that the Guaranteed Obligations were due and payable.

16. On June 24, 2010, IBERIABANK commenced a lawsuit against Kramer (the "IBERIABANK Action") by filing a verified complaint (the "IBERIANBANK Complaint") against Kramer seeking recovery of outstanding amounts of not less than $5,085,760.43 under the Guaranty executed and delivered by Kramer, the validity of which is expressly denied by Kramer in his Verified Answer and Affirmative Defenses filed on August 13, 2010 [DE 3].

**The Debtor is Obligated to Indemnify Kramer**

17. On August 26, 2010, Kramer, through his counsel, sent the Debtors a Request for Indemnification and Defense wherein Kramer indicated that pursuant to the Debtors' relevant

bylaws and according to relevant case law, the Debtors were required to defend, indemnify and reimburse Kramer, including reasonable attorneys' fees and costs, for the claims alleged by IBERIABANK in its lawsuit (the "August 26, 2010 Letter"). A copy of the August 26, 2010 Letter is annexed hereto as Exhibit "A".

18. The Debtors failed to respond to the August 26th Letter, as such, on January 19, 2011, Kramer filed a third-party complaint ("Third-Party Complaint") against; (i) Landberg, the former chairman of the board of directors of West End Financial and a member of West End Mercury, (ii) West End Financial, and (iii) West End Mercury [DE 5] wherein he asserted that he was, at all times acting in good faith and in his corporate capacity on behalf of and for the benefit of the Debtors (the "Third-Party Action"). Accordingly, Kramer indicated, if IBERIABANK should recover against Kramer, by reason of West End Financial's entry into the Loan, third-party defendant West End Financial should be held and adjudged liable to IBERIABANK in a like amount and should indemnify Kramer for any judgment entered in this action and any amounts paid on any such judgment and/or settlement of this action, including attorneys' fees incurred in connection with the defense and/or settlement of this action as authorized by N.Y. Bus. Corp. Laws §§ 721-26.

19. The filing of the Debtors' Chapter 11 Cases stayed Kramer's Third Party Action against the Debtors was stayed pursuant to Section 362 of the Bankruptcy Code.

## LEGAL BASIS FOR RELIEF REQUESTED

20. Through this Motion, Kramer respectfully requests that the automatic stay under Section 362(a) of the Bankruptcy Code be lifted to allow Kramer to continue his Third Party Action in New York State Supreme Court against the Debtors for indemnification and reimbursement of defense costs in connection with an action commenced by IBERIABANK

against Kramer in the Supreme Court of the State of New York, County of New York Index No. 650800/2011.

21. Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay in pertinent part as follows:

"[A] petition filed under … this title … operates as a stay … of –

> (1.) The commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (3.) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

Section 362(d) of the Bankruptcy Code provides in pertinent part as follows:

> (d.) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay …
>
> > (1.) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

22. The bankruptcy court "shall" lift the automatic stay for "cause." 11 U.S.C. § 326(d)(1). If a creditor seeking relief from the automatic stay makes a *prima facie* case of "cause" for lifting the stay, the burden going forward shifts to the debtor pursuant to Bankruptcy Code § 362(g). See In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

23. The Bankruptcy Code does not define "cause." Instead, whether "cause" exists to lift the automatic stay should be determined on a case by case basis. See Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.), 141 B.R. 574, 576 (Bankr.D.Del. 1992). See also, In re

Texas State Optical, Inc., 188 B.R. 552, 556 (Bankr. E.D.Tex. 1995) (Finding that "cause" for modification of the automatic stay is "an intentionally broad and flexible concept that permits … [a] [b]ankruptcy [c]ourt, as a court of equity, to respond to inherently fact-sensitive situations.") Courts determine what constitutes "cause" based on the totality of the circumstances in each particular case. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997).

24. In considering whether "cause" exists to grant relief from an automatic stay under Section 362(d)(1), courts in this Circuit apply a multifactor test pursuant to the Second Circuit's decision in In re Sonnax Industries, Inc., 907 F. 2d 1280 ( 2d Cir. 1990). In Sonnax, the Second Circuit identified twelve factors relevant to a "cause" determination:

> ( 1) whether relief would result in a partial or complete resolution of the issues; ( 2) lack of any connection with or interference with the bankruptcy case; ( 3) whether the other proceeding involves the debtor as a fiduciary; ( 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; ( 5) whether the debtor's insurer has assumed full responsibility for defending it; ( 6) whether the action primarily involves third parties; ( 7) whether litigation in another forum would prejudice the interests of other creditors; ( 8) whether the judgment claim arising from the other action is subject to equitable subordination; ( 9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; ( 10) the interests of judicial economy and the expeditious and economical resolution of litigation; ( 11) whether the parties are ready for trial in the other proceeding; and ( 12) impact of the stay on the parties and the balance of harms.

25. Here, the following factors weigh in favor of granting Kramer relief from the automatic stay: (i) the first factor applies because resolution of the Third Party Complaint and the IBERIABANK Action will necessarily result in a complete resolution of the issues; (ii) the second factor applies because the Third-Party Complaint filed by Kramer in the IBERIABANK Action is not connected with the Debtors' bankruptcy case; (iii) the fifth and seventh factors apply because continued litigation in state court would not prejudice the interests of other creditors. Specifically, and as discussed in greater detail below, no prejudice will befall the

Debtors' other creditors if Kramer is allowed to proceed against the Debtors for indemnification and for recovery of defense costs in the IBERIABANK Action because once discovery continues, Kramer believes he will receive documentation demonstrating that the claims at issue are covered, at least in part, by Debtors' insurance. In fact, upon information and belief, the Debtors have significant insurance coverage for the claims at issue and as such, the Debtors and their creditors will not suffer prejudice by allowing the IBERIABANK Action to go forward; (iv) the eleventh factor applies because at the time of the Petition Date, Kramer had already filed his Third Party Action against the Debtors and the parties were in the process of completing discovery. Discovery was stayed after Debtors' issued a notice of bankruptcy; (v) the twelfth factor applies because the hardship to Kramer from continuing the stay, strongly outweighs any possible hardship to the Debtors. The simple reality is that Kramer signed the Guaranty at issue under false pretenses and did so for the sole purpose of assisting the Debtors as an officer of the Debtors. Moreover, Kramer does not have the requisite funds to pay IBERIABANK the amounts due and owing under the Guaranty. Finally, in regard to the tenth factor, judicial economy strongly weighs in favor of trying the Third-Party Complaint alongside the IBERIABANK Action in New York State Court where the parties have already exchanged interrogatories and document demands and where IBERIABANK has already taken Kramer's deposition. It would be extremely inefficient to stay those proceedings at this late juncture and try Kramer's third party claims in a different court which would have to be brought up to speed on the case. It would be far more economical and expeditious to have Kramer's Third-Party Claims disposed of in New York State Supreme Court, rather than requiring this Court to re-litigate the case in the Bankruptcy Court. Accordingly, the balance of harms weighs in favor of permitting the IBERIABANK Action to go forward.

**Insurance Proceeds: Not Property of the Estate**

26. As noted herein, Kramer believes that the Debtors maintain one or more insurance policies to indemnify and pay defense costs associated with actions take by third-parties against the Debtors former officers and directors. It is anticipated that upon the Debtors' insistence one or more insurance companies will assume the costs associated with Kramer's defense in the IBERIABANK Action and if necessary any-related indemnification costs.

27. Section 362(d)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or to exercise control over property of the estate" 11 U.S.C. 362(d)(3). The purpose of this section is to "prevent dismemberment of the estate, ensure orderly liquidation, and grant the trustee time to familiarize himself with the various rights and interests involved and the property available for distribution." In re Granite Partners, L.P., 194 B.R. 318, 336 (Bankr. S.D.N.Y. 1996).

28. Property of the estate includes "all legal or equitable interest of the debtor in property." 11 U.S.C. § 541(a)(1); In re Pintlar Corp., 124 F.3d 1310 (9th Cir. 1997). With respect to insurance policies which cover directors and officers, where a debtor would not have a right to receive and keep insurance proceeds when an insurer pays a liability claim, a debtor is deemed to have no equitable interest in the proceeds of such policy. In re Edgeworth, 993 F.2d 51, 55 (5th Cir. 1993); see also In re Wetzel Services, Inc., 243 B.R. 802, 805 (Bankr. M.D. Fla. 1999) ("proceeds of the Liability Insurance Policies are not property of the estate because the Debtor would not have the right to keep the funds. Thus, the insurance proceeds are not protected by the automatic stay."). Accordingly, Bankruptcy Code § 362(d)(3)'s automatic stay is routinely lifted in these circumstances to allow a claimant to proceed against the insurance policy. Id.

With respect to the current Motion before the Court, Kramer seeks relief from the stay to pursue his state court claim for indemnification and defense costs stemming from the Guaranty that he signed under false pretenses and on behalf of the Debtors. Since the Debtor's liability insurance company(s) should pay for and conduct the defense of this indemnification suit on behalf of the Debtor, this state court action will not impact property of the Debtor's estate.

[Continues on Next Page]

## CONCLUSION

WHEREFORE, Kramer respectfully requests that the automatic stay under 11 U.S.C. Section 362(a) be lifted to allow Kramer to continue his Third-Party Claims against the Debtors for indemnification and reimbursement of defense costs in connection with the IBERIABANK Action, and granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 11, 2011

**FOX ROTHSCHILD, LLP**

*/s/ John Wait*
John Wait, Esq.
Erin Zavalkoff-Babej
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900

*Attorneys for Kevin Kramer*